**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, | |
| Plaintiff, on behalf of himself and a class of similarly situated individuals, | CIVIL ACTION |
| | CASE NO.  1:18-cv-01526 |
| v. | JURY TRIAL DEMANDED |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, RICHARD MOLINARI ("Plaintiff"), by and through one of his attorneys, James C. Vlahakis of Sulaiman Law Group, Ltd., brings this civil action as Class Action Complaint on behalf of himself and a nationwide class of similarly situated individuals, pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a), 23(b)(2) and 23(b)(3) against Defendant, FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("FAMS"):

### Jurisdiction, Parties and Venue

1.      Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq., and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

2.      Subject matter jurisdiction is conferred upon this Court by the TCPA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3.     The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.     Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

5.     Plaintiff is a "person" as defined by 47 U.S.C. §153(39) of the TCPA.

6.     FAMS is a Georgia corporation which states that offers collection services for original creditors, stating: "Instead of handling account receivables on your own, FAMS can do the job for you, giving you more time to focus on your core business function. We provide asset management, debt collection services for various companies from different industries."[1]

7.     FAMS is engaged in the practice of collecting debts across the country using the telephone, including debts allegedly owed by consumers in the State of Illinois.

8.     FAMS is headquartered at 665 Molly Lane, #110, Woodstock, Georgia 30189.

9.     FAMS is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephone to collect delinquent consumer accounts and because its collection activities commenced after the subject debt was in default.

10.    The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

11.    FAMS' website touts its use of "skip tracing" which it describes as "the process of tracking down consumers whose contact information is no longer accurate/updated."

---

[1] http://fams.net/third-party-collections/ (Last accessed on February 19, 2018.)

12.     A screen capture of FAMS' "skip-and-collect" webpage on February 19, 2018 identified below:



13.     FAMS claims that its "specialized, criteria-based skip trace waterfall process optimizes new telephone and address information on a daily basis so our team of collectors can contact your accounts expeditiously."   See http://fams.net/skip-and-collect/ (last accessed on February 19, 2018).

14.     FAMS claims that its "third party collections programs are marked by ongoing communication, sophisticated technology, disciplined processes, attention to detail, experienced staff and a relentless focus on achieving client liquidation goals."  See, http://fams.net/third-party-collections/ (last accessed on February 19, 2018).

15.     FAMS' registered agent in Illinois is Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as FAMS conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

**FACTS SUPPORTING CAUSES OF ACTION**

17.     Section (b)(1)(A)(iii) of the TCPA makes it unlawful to make any call to cellular telephone using any "automated telephone dialing system" ("ATDS") or an "artificial or prerecorded voice" message without the consent of the person being called.

18.     Section 227(a)(1) of the TCPA defines an ATDS to mean "equipment which has the capacity (A) to store or produce number to be called, using a random or sequential number generator; and (B) to dial such numbers."

19.     As set forth below, FAMS violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number 708-xxx-8132 with an ATDS without his consent.

20.     As set forth below, FAM violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number using "artificial or prerecorded voice" message without his consent.

21.     In November 2017, FAMS placed calls to Plaintiff's cellular phone ending in 8132 in an attempt to collect a debt allegedly owed by his wife.

22.     Upon information and belief, FAMS obtained Plaintiff's cellular telephone number through a method known as "skip-tracing."

4

23.    Upon information and belief, FAMS obtained Plaintiff's cellular phone number by analyzing Plaintiff's wife's credit report.

24.    Alternatively, upon information and belief, FAMS obtained Plaintiff's cellular phone number by purchasing a commercially available report.

25.    Alternatively, upon information and belief, FAMS obtained Plaintiff's cellular phone number through the review of public records.

26.    Plaintiff is not and never was on the account(s) attached to the subject debt(s).

27.    Plaintiff was not an authorized user on any of the aforementioned account(s).

28.    Upon speaking with a live agent, Plaintiff was informed that the individual from whom FAMS was attempting to collect the debt was "Nicci Campbell."[2]

29.    FAMS called Plaintiff's phone seeking to get a hold of Plaintiff's wife each time it placed calls to Plaintiff's cellular phone.

30.    FAMS never had Plaintiff's prior express consent to place these autodialed and pre-recorded calls to Plaintiff's cellular phone.

31.    FAMS placed numerous calls to Plaintiff's cellular phone which resulted in Plaintiff being greeted by an automated pre-recorded message.

32.    FAMS placed or played pre-recorded voicemail messages on Plaintiff's cellular phone.

33.    FAMS placed or played artificially generated voicemail messages on Plaintiff's cellular phone.

34.    Plaintiff's outgoing voicemail message greeting utilizes Plaintiff's name.

---

[2] Plaintiff's wife is Nicci Molinari, maiden name "Campbell."

35.     Plaintiff's outgoing voicemail message explained to FAMS that the person using Plaintiff's cellular phone number is not the person from whom FAMS was attempting to reach to collect a debt.

36.     Notwithstanding the fact that Plaintiff was not the party FAMS was seeking to collect the debt from and the fact that FAMS did not have consent to place calls to Plaintiff's cellular phone, FAMS placed phone calls to Plaintiff's cellular phone ending in 8132 between November 2017 and the present day, including, but not limited to, calls on the following dates and approximate times:[3]

    a.      November 16, 2017 at 5:47 p.m. from telephone number 866-330-2703;

    b.      November 18, 2017 at 8:07 a.m. from telephone number 866-330-2703;

    c.      November 18, 2017 at 9:41 a.m. from telephone number 866-330-2703;

    d.      November 18, 2017 at 10:40 a.m. from telephone number 866-330-2703;

    e.      November 20, 2017 at 3:52 p.m. from telephone number 866-330-2703;

    f.      November 22, 2017 at 11:38 a.m. from telephone number 866-330-2703;

    g.      November 22, 2017 at 3:44 p.m. from telephone number 866-330-2703;

    h.      November 24, 2017 at 9:26 a.m. from telephone number 866-330-2703;

    i.      November 24, 2017 at 9:30 a.m. from telephone number 866-330-2703;

    j.      November 24, 2017 at 11:08 a.m. from telephone number 866-330-2703;

    k.      November 24, 2017 at 12:58 p.m. from telephone number 866-330-2703;

    l.      November 27, 2017 at 3:25 p.m. from telephone number 866-330-2703;

    m.      November 28, 2017 at 4:03 p.m. from telephone number 866-330-2703;

---

[3] The list of calls is not exhaustive. The list includes the phone calls that were documented by Plaintiff.

n.        December 21, 2017 at 3:02 p.m. from telephone number 866-330-2703;

o.        December 27, 2017 at 12:00 p.m. from telephone number 866-330-2703;

p.        December 27, 2017 at 12:00 p.m. from telephone number 866-330-2703;

q.        January 8, 2018 at 1:34 p.m. from telephone number 866-330-2703;

r.        January 8, 2018 at 6:50 p.m. from telephone number 866-330-2703;

s.        January 10, 2018 at 11:53 a.m. from telephone number 866-330-2703;

t.        January 10, 2018 at 4:46 p.m. from telephone number 866-330-2703;

u.        January 10, 2018 at 6:33 p.m. from telephone number 866-330-2703;

v.        January 11, 2018 at 10:53 a.m. from telephone number 866-330-2703;

w.        January 11, 2018 at 1:29 p.m. from telephone number 866-330-2703;

x.        January 12, 2018 at 11:42 a.m. from telephone number 866-330-2703;

y.        January 12, 2018 at 1:45 p.m. from telephone number 866-330-2703;

z.        January 24, 2018 at 6:22 p.m. from telephone number 866-330-2703;

aa.        January 25, 2018 at 8:38 a.m. from telephone number 866-330-2703;

bb.        January 25, 2018 at 3:59 p.m. from telephone number 866-330-2703;

cc.        January 26, 2018 at 8:53 a.m. from telephone number 866-330-2703;

dd.        January 26, 2018 at 11:33 a.m. from telephone number 866-330-2703; and

ee.        January 31, 2018 at 11:41 a.m. from telephone number 866-330-2703.

37.    Because of the frequency of when FAMS called Plaintiff's cellular phone, it is highly plausible that FAMS utilized an ATDS (as defined by 47 U.S.C. §227(a)(1)) to make these calls.

38. Alternatively, because of the frequency of when FAMS called Plaintiff's cellular phone, it is highly plausible that FAMS utilized a "predictive dialer" (as defined by the Federal Communications Commission ("FCC")) to make these calls.

39. Plaintiff never consented to any of the calls placed by FAMS to his cellular phone.

40. FAMS also placed, or caused to be placed, prerecorded voicemail messages on Plaintiff's cellular phone, including, but not limited to, the following dates and times: [4]

    a. November 16, 2017 at 3:07 p.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.";

    b. November 24, 2017 at 9:33 a.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you."; and

    c. December 4, 2017 at 12:4 7 p.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you."

41. FAMS left these messages for Plaintiff's wife, not Plaintiff.

42. Because FAMS called Plaintiff's cellular phone and left these pre-recorded messages on his voicemail, it is highly plausible that FAMS utilized an ATDS (as defined by 47 U.S.C. §227(a)(1)) to deliver these messages.

---

[4] The list of voicemail messages is not exhaustive. The list includes the voicemail messages that were documented by Plaintiff.

43. Alternatively, because FAMS called Plaintiff's cellular phone and left these pre-recorded messages on his voicemail, it is highly plausible that FAMS utilized a "predictive dialer" (as defined by the FCC) to deliver these messages.

44. Plaintiff never consented to any of the prerecorded messages placed by FAMS to his cellular phone.

45. The Court may take judicial notice that the FCC released a Declaratory Ruling on January 4, 2008 ("2008 FCC Ruling") where the FCC found that a "predictive dialer" constitutes an ATDS under the TCPA.[5]

46. The 2008 FCC Ruling states that is "first sought comment on predictive dialers in 2002 and asked whether using a predictive dialer is subject to the TCPA's autodialer restrictions." *See* 2008 FCC Ruling at ¶ 13.

47. The 2008 FCC Ruling referred its prior "Notice of Proposed Rulemaking and Memorandum Opinion and Order" (the "2002 NPRM") and described the 2002 NPRM as follows:

> The Commission found that, based on the statutory definition of "automatic telephone dialing system," the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress. The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology.

2008 FCC Ruling at ¶ 13 (footnotes omitted).

---

[5] A copy of the 2008 FCC Ruling can be accessed at: https://apps.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf

48.     The 2008 FCC Ruling states that "creditors and debt collectors may use predictive dialers to call [cellular] phones," if "the [cellular] phone number was provided by the subscriber in connection with the existing debt."  2008 FCC Ruling at ¶ 14.

49.     The 2008 FCC Ruling states that creditors are "responsible for demonstrating that the consumer provided prior express consent."

50.     According to the 2008 FCC Ruling:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.

2008 FCC Ruling, ¶ 10 (footnote omitted).

51.     FAMS violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number using a "predictive dialer" without his consent because FAMS was calling Plaintiff's cellular telephone number in an effort to speak with his wife regarding a debt she allegedly incurred.

52.     The FCC issued a Report and Order on July 3, 2003, ("2003 FCC Order") which declared that that a "predictive dialer" is an ATDS.[6]

53.     The 2003 FCC Order defined a predictive dialer as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that

---

[6] The FCC's Report and Order on July 3, 2003 ("2003 FCC Order") can be accessed at: https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

"predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call.  Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because the dialer simply hangs up when no telemarketer is free to take the call.

2003 FCC Order at fn. 31.

54.     The 2003 FCC Order explained has a "company can set its predictive dialer software for a predetermined abandonment rate (i.e., the percentage of hang-up calls the system will allow)."  2003 FCC Order at fn. 32.

55.     The 2003 FCC Order explained how "[p]redictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call."  2003 FCC Order at paragraph 146:

56.     The 2003 FCC Order explained that predictive dialers result in consumers facing "dead air" rather than connecting with live operator:

In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

Paragraph 146 (footnote omitted).

57.     FAMS placed calls to Plaintiff with a predictive dialer which resulted in disconnected calls.

58.     The 2003 FCC Order explained the way that predictive dialers work results in consumers being unable "to make a do-not-call request[s]":

the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request.  Such calls are particularly burdensome for the elderly and disabled consumers.

11

Paragraph 91 (footnote omitted).

59.     Consistent with 2003 FCC Order, Plaintiff has been subjected to repeated unwanted autodialed and/or predictively dialed telephone calls without his consent.

60.     Consistent 2003 FCC Order, the manner in which FAMS operates its predictive dialer prevented Plaintiff from easily making a "do not call request."

61.     The telephone number ending in 8132 that Defendant called was assigned to cellular services for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

62.     The calls Defendant placed to Plaintiff's cellular phone were not placed for emergency purposes pursuant to 47 U.S.C. §227(b)(1)(A)(i).

63.     Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of FAMS's unlawful telephone calls and collection practices.

64.     FAMS' unwanted phone calls have severely disrupted Plaintiff's daily life and general well-being.

65.     FAMS' phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, physical harm (in the form of stress, anxiety, anguish, increased heartrate and blood pressure and nervousness), invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish and increased risk of physical injury due to the distraction caused by the phone calls.

66.     FAMS' phone harassment campaign and illegal collection activities have caused Plaintiff to suffer economic harm in the form of diminished value and utility of his telephone equipment and telephone subscription services, the wear and tear caused to his cellular telephone,

12

the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

67. Concerned about the violations of his rights and invasion of his privacy, Plaintiff sought the assistance of the undersigned counsel to cease FAMS' unlawful collection tactics.

68. In seeking the assistance of the undersigned counsel, Plaintiff incurred costs and expenses in the form of travel time and personal time.

69. In enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991), *see also Mims v. Arrow Fin*. Servs., LLC, 132 S. Ct. 740, 745 (2012).

70. As the Supreme Court has explained, Congress has the power to enact laws to elevate concrete harm "to the status of legally cognizable injuries." *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1549 (2016).

71. *Spokeo* states that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and that "both history and the judgment of Congress play important roles" in deciding whether a statutory violation is a concrete, de facto injury." *Id.*

72. In enacting the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance.

73. The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of

the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*.

74. Actions to remedy a defendant's invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states. See Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977).

75. The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent.

76. In enacting the TCPA, Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm.

77. Courts have held that TCPA alleged demonstrate concrete and legally cognizable harm. *See, e.g., Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding that Article III standing existed where a TCPA plaintiff received a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA as they "present the precise harm and infringe the same privacy interests Congress sought to protect"); <u>*Etzel v. Hooters of Am., LLC*</u>, 223 F. Supp. 3d 1306, 1311, 1312 (N.D. Ga. 2016) (rejecting application of *de minimis* rule to "a lone text message after withdrawal of consent" (internal quotation marks omitted) given "the [unambiguous] language of the TCPA . . . that a violation can occur from a single call" under §227(b)(1)(A) in contrast to § 227(c)(5) which requires more than one call); <u>*Cabiness v. Educ. Fin. Solutions, LLC*</u> 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5-6 (a violation of the TCPA "is sufficient on its own to constitute an injury in fact" because "[e]very unconsented call

through the use of an ATDS to a consumer's cellular phone results in actual harm"); *Cour v. L ife360, Inc.*, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding concrete injuries where plaintiff alleged he received one text message in violation of the TCPA); *Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) (finding concrete injuries based on one alleged violation of the TCPA); *Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS (BGS), 2012 U.S. Dist. LEXIS 101197 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) (finding "at by alleging he received a text message in violation of the TCPA, [plaintiff] has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy"); *Hossfeld v. Compass Bank*, 2017 U.S. Dist. LEXIS 182571, *14-15 (N.D. Al. Nov. 3, 2017) Mr. Hossfeld has undoubtedly cleared the particularity hurdle and asserted a personal connection to the harm claimed that is sufficient to establish this prong of the standing requirement. The two unsolicited calls described in Mr. Hossfeld's first amended complaint were made to his personal cell phone number. (Doc. 12 at ¶ 17.) Mr. Hossfeld further alleges how those automatically-dialed calls impacted him personally— they temporarily deprived him from being able to use his cell phone, invaded his privacy, wasted his time, and reduced his cell phone's battery's life. (Doc. 12 at 7 ¶ 40.)"

## COUNT I – INDIVIDUAL CLAIM FOR VIOLATIONS OF THE TCPA
### AUTODIALED AND/OR PREDICTIVELY DIALED CALLS WITHOUT CONSENT

78.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

79.    As alleged above, FAMS placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an ATDS or predictive dialer without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

80.    As pled above, Plaintiff was harmed by FAMS' calls to his cellular phone.

81.     FAMS knew its dialing practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's frustration, well-being and expense.

82.     This Court should award Plaintiff damages of at least $500 per phone call and up to treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C).

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court issue the following relief:

a.  declare FAMS' phone calls to Plaintiff to be violations of the TCPA;

b.  enjoin FAMS from contacting Plaintiff in violation of the TCPA;

c.  award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.  award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT II – CLASS BASED CLAIM FOR VIOLATIONS OF THE TCPA AUTODIALED AND/OR PREDICTIVELY DIALED CALLS WITHOUT CONSENT

83.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

84.     Similar to how FAMS called Plaintiff in violation of the TCPA, FAMS called more than forty persons with an ATDS or a predictive dialer without their consent.

85.     FAMS knew its dialing practices were in violation of the TCPA, yet continued to employ them to increase profits at class members' frustration, well-being and expense.

86.     The proposed classes can be defined as:

All persons in the United States who were called by FAMS on their cellular telephone numbers when FAMS was using an autodialer or predictive dialer system

87.     Because FAMS bears the burden of proof on whether it had consent to call Plaintiff and the proposed class members with an ATDS and/or predictive dialer, the above proposed class

definitions does not contain reference to whether FAMS had consent to call the cellular numbers in the manner described.

88. FAMS, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

89. Pursuant to 47 U.S.C. §227(b)(3)(B), FAMS is liable to Plaintiff and the putative class members for a minimum of $500 per call.

90. Moreover, FAMS's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff and the putative class members pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff RICHARD MOLINARI, on behalf of a class of similarly situated individuals, respectfully requests that this Honorable Court issue the following relief:

a. declare FAMS' phone calls to Plaintiff and similarly situated class members to be violations of the TCPA;

b. enjoin FAMS from contacting Plaintiff and similarly situated class members in violation of the TCPA;

c. award Plaintiff and class members damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d. award Plaintiff and similarly situated class members any other relief this Honorable Court deems equitable and just.

### COUNT III – INDIVIDUAL CLAIM FOR VIOLATIONS OF THE TCPA PRE-RECORDED AND/OR ARTIFICIAL VOICE MESSAGES WITHOUT CONSENT

91. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

92.     As alleged above, FAMS placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an ATDS or predictive dialer without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

93.     As pled above, Plaintiff was harmed by FAMS' messages to his cellular phone.

94.     FAMS knew its pre-recorded and artificial voice messages were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's frustration, well-being and expense.

95.     This Court should award Plaintiff damages of at least $500 for each pre-recorded and/or artificial voice message and up to treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C).

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court issue the following relief:

a.   declare FAMS' pre-recorded and/or artificial voice messages to Plaintiff to be violations of the TCPA;

b.   enjoin FAMS from contacting Plaintiff in violation of the TCPA;

c.   award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.   award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT IV – CLASS BASED CLAIM FOR VIOLATIONS OF THE TCPA PRE-RECORDED AND/OR ARTIFICIAL VOICE MESSAGES WITHOUT CONSENT

96.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

97.     Similar to how FAMS called Plaintiff in violation of the TCPA, FAMS called more than forty persons with an ATDS or a predictive dialer without their consent.

98.     FAMS knew its pre-recorded and artificial voice messages were in violation of the TCPA, yet continued to employ them to increase profits at class members' frustration, well-being and expense.

99.     The proposed classes can be defined as:

> All persons in the United States who were called by FAMS on their cellular telephone numbers when FAMS used pre-recorded or artificial voice messages during the calls

100.     Because FAMS bears the burden of proof on whether it had consent to call Plaintiff and the proposed class members with pre-recorded and/or artificial voice messages, the above proposed class definitions do not refer to revocation of consent.

101.     FAMS, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

102.     Pursuant to 47 U.S.C. §227(b)(3)(B), FAMS is liable to Plaintiff and the putative class members for a minimum of $500 per call.

103.     Moreover, FAMS' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff and the putative class members pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff RICHARD MOLINARI, on behalf of a class of similarly situated individuals, respectfully requests that this Honorable Court issue the following relief:

a.     declare FAMS's phone calls to Plaintiff and similarly situated class members to be violations of the TCPA;

b.     enjoin FAMS from calling Plaintiff and similarly situated class members in violation of the TCPA;

c. award Plaintiff and class members damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d. award Plaintiff and similarly situated class members any other relief this Honorable Court deems equitable and just.

### COUNT V – INDIVIDUAL VIOLATIONS OF THE FDCPA

104. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

105. As pled above, Plaintiff was harmed by FAMS's calls to his cellular phone.

106. FAMS continued placing the calls with knowledge that Plaintiff was not the party from whom FAMS was attempting to collect the debt.

107. FAMS' repeated and unwanted calls to Plaintiff's cellular telephone number violates the FDCPA.

108. FAMS violated § 1692b by repeatedly calling Plaintiff in an attempt to contact his wife.

109. FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(1).

110. FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(2).

111. FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(3).

112. FAMS violated § 1692c(a)(1) by repeatedly calling Plaintiff in an attempt to contact his wife.

113. FAMS violated § 1692c(b) by repeatedly calling Plaintiff in an attempt to contact his wife.

114.	FAMS violated § 1692d because calling Plaintiff with a predictive dialer and/or autodialer to contact his wife in a manner that was harassing, oppressive and abusive.

115.	FAMS violated § 1692d because calling Plaintiff with pre-recorded and/or artificial voice messages to contact his wife in a manner that was harassing, oppressive and abusive.

116.	FAMS violated § 1692d(5) by calling Plaintiff in an attempt to contact his wife "repeatedly or continuously with intent to annoy, abuse, or harass".

117.	FAMS violated §1692e because its calls to Plaintiff constitute false, deceptive, or misleading representations or means in connection with the collection of a debt allegedly owed by his wife.

118.	FAMS violated §1692e when it engaged in false, deceptive, or misleading representations or means in connection with the collection of a debt because when it called Plaintiff with an autodialer and/or predictive dialer, it had no legal right to do so.

119.	FAMS violated §1692e when it engaged in false, deceptive, or misleading representations or means in connection with the collection of a debt because when it called Plaintiff with pre-recorded and artificial voice messages, it had no legal right to do so.

120.	FAMS violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged debt. Plaintiff did owe and was not liable for the alleged debt at all times FAMS placed calls to his cellular phone attempting to collect the subject debt.

121.	FAMS violated §1692e(2) when it falsely misrepresented that it had the legal right to place autodialed and/or predictively dialed calls to Plaintiff's cellular phone without his consent.

122. FAMS violated §1692e(2) when it falsely misrepresented that it had the legal right to call Plaintiff's cellular phone with pre-recorded and/or artificial voice messages without his consent.

123. FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by placing phone calls to Plaintiff's cellular phone attempting to harass Plaintiff into paying a debt that he does not owe.

124. FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by placing autodialed and/or predictively dialed calls to Plaintiff's cellular phone without his consent.

125. FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by calling Plaintiff's cellular phone with pre-recorded and/or artificial voice messages without his consent.

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court:

a. declare that the practices complained of herein are unlawful and violate the FDCPA;

b. enjoin Defendant from contacting Plaintiff in violation of the FDCPA;

c. award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d. award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT VI – CLASS BASED VIOLATIONS OF THE FDCPA

126. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

127.     On information and belief, FAMS contacted over 40 non-debtors in the same manner as set forth in the preceding Count V.

128.     To recap, FAMS violated the FDCPA by skip tracing debtors and then placing unlawful, harassing, abusive, oppressive, false, deceptive, misleading, unfair and unconscionable debt collection calls to third-parties in violation of §§ 1692b(1), 1692b(2), 1692b(3),1692c(a)(1), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(2) and 1692f of the FDCPA.

129.     Pursuant to 15 U.S.C. § 1692k, Plaintiff and the Class are entitled to actual damages, statutory damages, attorneys' fees and costs.

130.     Plaintiff brings this Count on behalf of the following putative class.

131.     The proposed class can be provisionally defined as follows:

All persons to whom Financial Asset Management Systems, Inc. placed calls, between February 20, 2018, and February 20, 2017, where the phone calls violated §§ 1692b(1), 1692b(2), 1692b(3),1692c(a)(1), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(2) and 1692f of the FDCPA.

WHEREFORE, Plaintiff RICHARD MOLINARI requests that this Honorable Court:

a.   declare that the practices complained of herein are unlawful and violate the FDCPA;

b.   enjoin Defendant from continuing to violate the FDCPA;

c.   award Plaintiff and putative class members statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.   award Plaintiff and class members costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.   award Plaintiff and the putative class members any other relief this Honorable Court deems equitable and just.

## COUNT VII – INDIVIDUAL AND CLASS BASED CLAIM FOR VIOLATIONS OF THE ICFA

132. Plaintiff restates and reallages the above paragraphs as through fully set forth herein.

133. The ICFA states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

134. Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

135. FAMS is engaged in commerce in the State of Illinois with regard to Plaintiff. FAMS specializes in debt collection, which is an activity within the stream of commerce and utilized in its regular course of business.

136. FAMS violated 815 ILCS 505/2 by engaging in unfair acts in its attempts to collect a debt from Plaintiff that didn't belong to him without his consent.

137. It was unfair for FAMS to seek to collect a debt from Plaintiff through relentless harassing phone calls to his cellular phone attempting to induce him into paying a debt he did not owe.

138. It was unfair and deceptive for FAMS to relentlessly contact Plaintiff through means of an ATDS when it had no reason or permission to do so.

139.     It was unfair for Defendant to place or cause to be placed no less than 31 phone calls to Plaintiff's cellular phone between November 2017 through the present day, without his consent.

140.     It was unfair for FAMS to continue placing calls to Plaintiff after it knew that it was calling the wrong party.

141.     FAMS' unfair and deceptive conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to his cellular phone.

142.     Moreover, FAMS's unfair conduct is against public policy because upon information and belief FAMS has subjected more than 40 Illinois consumers to unsolicited and unwanted autodialed and/or predictively dialed calls, resulting in significant harm in the form of invasion of privacy.

143.     Moreover, FAMS's unfair conduct is against public policy because upon information and belief FAMS has subjected more than 40 Illinois consumers to unsolicited and unwanted pre-recorded and/or artificial voice messages, resulting in significant harm in the form of invasion of privacy.

144.     Upon information and belief, FAMS systematically places unsolicited and harassing phone calls to consumers in Illinois in order to aggressively collect debts to increase its profitability at the consumers' expense.

145.     Placing unsolicited and harassing phone calls to Illinois consumers is an unfair business practice willfully employed by FAMS and is done on a large scale.

146.     Moreover FAMS' unlawful and unfair collection efforts gives it an unfair competitive advantage over businesses that collect debts lawfully (companies who legally place

calls with prior consent, as authorized, and who lawfully cease calling upon realizing that they do not have consent to place such calls).

147.    As alleged above, Plaintiff was substantially harmed by FAMS' misconduct.

148.    Upon information and belief, over 40 Illinois residents have been substantially harmed by FAMS' misconduct.

149.    The class can be provisionally defined as all Illinois residents who were called by FAMS as a result of skip trace searches where the calls placed by FAMS resulted in autodialed and/or predictively dialed calls, or pre-recorded/artificial voice messages where the person called was not the debtor in question.

150.    An award of punitive damages is appropriate because FAMS' conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the harassing phone calls.

WHEREFORE, Plaintiff RICHARD MOLINARI, individually and on behalf of a class of similarly situated Illinois residents, respectfully requests that this Honorable Court:

a.    enter judgment in the class's favor and against FAMS;

b.    enjoin further unlawful conduct;

c.    award Plaintiff and the putative class members damages in an amount to be determined at trial;

d.    award punitive damages in an amount to be determined at trial;

e.    award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

f.    award Plaintiff and the putative class members any other relief this Honorable Court deems equitable and just.

## THE ELEMENTS OF FRCP 23 ARE SATISFIED

151. The proposed class members can be identified through Defendant's records. *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation,* 795 F. 3d 380, 397 (3d Cir. 2015) (finding that plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

152. For example, FAMS's records can and will be used identify the putative class members because FAMS' records identify the times and dates of calls (for a period of four years prior to the filing of this civil action for the TCPA claims) the type of call (in-bound and out-bound), the disposition of the call (recorded message left on a person's voice mail, live connection or no contact) and related notations in Defendant's records (do not call requests).

153. The proposed classes are also ascertainable because are commercially available applications and program which can identify whether telephone number have always been identified as cellular numbers, or alternatively, when a particular residential/landline telephone number was "ported" (turned into/converted to) a cellular telephone number.

154. Excluded from the proposed class(es) are counsel for the parties, Defendant's employees and agents, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

155. Numerosity is satisfied because FAMS made autodialed or predictively dialed calls to persons after FAMS was made aware that the wrong party was being dialed.

156. Numerosity is also satisfied because FAMS (a) used pre-recorded and/or artificial voice messages when calling persons who were not the debtor that FAMS was trying to call (b)

after FAMS was made aware that the person it had reached was not the person FAMS was trying to call and/or (c) where the person that FAMS had reached told FAMS to stop calling him/her.

157.    FAMS contacted over 40 persons in the manner outlined above.

158.    The joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown, the persons called by FAMS can be ascertained through discovery, and Plaintiff believes there are hundreds and possibly thousands of Class members based upon FAMS' representations regarding the scope of its business.

159.    Commonality and predominance are satisfied because FAMS acted in a common manner toward Plaintiff and the proposed class members in the manner in which FAMS placed the calls in question and the manner in which FAMS obtained Plaintiff's telephone number (via skip-tracing).

160.    There are several questions of law and fact common to the claims of Plaintiff and the proposed class members, such as:  (a) whether FAMS called Plaintiff and the proposed class members with an autodialer and/or predictive dialer, (b) whether FAMS called Plaintiff and the proposed class members utilizing pre-recorded and/or artificial messages, (c) whether FAMS lacked consent, and (e) whether FAMS' conduct in continuing to call Plaintiff and others with knowledge that it did not have the consent to place such calls constitutes part of a pattern of noncompliance.

161.    Plaintiff's claims are typical of the claims of the proposed class members, claims all arise from the same operative facts and are based on the same legal causes of action.

162.    Common questions predominate over any potential individual issues.

163.    Common questions of proof predominate over any potential individual issues.

164.     A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

165.     The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

166.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest antagonistic to those of the Class and Defendants do not have any defenses unique to Plaintiff.

167.     Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims.

168.     Mr. Vlahakis began defending TCPA class actions in 1998 and continued to do so through 2017.

169.     Mr. Vlahakis has litigated over three dozen TCPA based putative class actions.

170.     In conjunction with counsel for the class members, Mr. Vlahakis has obtained Court approval TCPA class class-bases settlements.    *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement).

171.    Mr. Vlahakis has litigated TCPA based class certification issues in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). *See also*, *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

172.    Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of FDCPA class actions.

173.    Additionally, Mr. Vlahakis has successfully ascertained the identities of putative TCPA class members – both individually and in conjunction with industry experts.

174.    Finally, to the extent this case necessitates action before the FCC by way to petitions for declaratory relief, Mr. Vlahakis has filed two petitions for declaratory relief before the FCC.

175.    Plaintiff's other counsel are highly competent and experienced class action attorneys.

**Plaintiff demands trial by jury.**

Dated: February 28, 2018

Respectfully Submitted,

*/s/ James C. Vlahakis*
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 200
Lombard, IL 60148

*Additional Counsel*
Ahmad Sulaiman
Omar T. Sulaiman
Mohammed O. Badwan
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 2500
Lombard, IL 60148