| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, Plaintiff, | 18-cv-01526 |
| v. | Honorable Judge Sara L. Ellis |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION[1]**

Plaintiff RICHARD MOLINARI, by and through his attorney, James C. Vlahakis submits this Memorandum of Law in Support of his Motion for Class Certification:

**I.    Introduction**

Plaintiff, Richard Molinari ("Plaintiff"), brings this motion to certify putative class claims that were filed pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ( "TCPA") and  the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).  FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("FAMS") is admitted a debt collector as defined by § 1692a(6) of the FDCPA because it regularly collects defaulted debts through letters and telephone calls. Dkt. 6, FAMS's Answer, ¶ 9.  Section 227(b)(1)(A)(iii) of the TCPA prohibits the use of prerecorded voices messages absent the consent of the recipient.

Plaintiff did not consent to receiving a single, let alone at least ten (10) pre-recorded voice messages identical to the below transcribed pre-recorded message:

> Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this

---

[1] Plaintiff has filed a motion for leave to file this Memorandum *instanter, nunc pro tunc*. Dkt. 51. Defendant does not opposed the relief sought. In agreement with FAMS, Plaintiff will file Exhibit D after FAMS undertakes confidentiality designations.

> process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Worse yet, in violation the TCPA, each pre-recorded message failed to identify its full legal name. *See, e.g., Sengenberger v. Credit Control Services, Inc.* 2010 WL 1791270 (N.D. Ill. May 5, 2010) (holding that collector's use of "Credit Collection Services" as opposed to "Credit Control Services, Inc." violated relying on 47 U.S.C. § 227(b)(2) and 47 C.F.R. 64.1200(b)(1)). FAMS also violated Sections 1692b(3), 1692c(b), 1692d, 1692d(5), 1692d(6) and 1692f of the FDCPA by repeatedly calling his cellular number and transmitting pre-recorded message for the purpose of collecting a debt owed to another person. Consistent with FAMS's policies and practices, FAMS treated thousands of putative class members the same way in violation of the TCPA and FDCPA.

## II. The Elements of Federal Rule of Civil Procedure 23

FRCP 23(a)(1)-(4) provides that a court may certify a class of individual were: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

FRCP 1 provides that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." In evaluating whether class certification is appropriate, a "court accepts all well-pled allegations made in support of certification as true." *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 661 (N.D. Ill. 1996). A court must conduct a rigorous analysis and determine by the preponderance of the evidence that the putative class meets the criteria set forth by Rule 23(a). *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012),

A "court maintains broad discretion in determining whether certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d, 584, 596 (7th Cir. 1993).

In addition to satisfying the elements of FRCP 23(a), a class representative must satisfy Rule 23(b). FRCP 23(b)(3) provides in relevant part that "a class action may be maintained . . . if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Certification is proper pursuant to FRCP 23(b)(3).

Finally, although not required by the text of FRCP 23, a "plaintiff must show . . . that the [proposed] class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The proposed classes are ascertainable. See Section VII.

### III. Summary of Relevant Undisputed Facts

Plaintiff did not owe the Subject Debt. Exhibit A, Pl.'s depo., p. 23, lines 1015, p. 24, line 13, p. 95, lines 8-9. The Subject Debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a student loan transaction that was incurred by Plaintiff's wife for her personal use. Complaint, ¶ 11; Exhibit C, FAMS's Response to Pl's First Set of Requests to Admit, No. 1. FAMS touts that it uses a "specialized, criteria-based skip trace waterfall process optimizes new telephone and address information on a daily basis so our team of collectors can contact your accounts expeditiously." See http://fams.net/skip-and-collect/ (last accessed on October 9, 2019). Dkt. 6, Ans. to Compl, ¶13. **Translation**: FAMS skip traces debtors and does not do it well – as evidenced by Plaintiff's circumstances which a typical of the class he seeks to represent.

FAMS called *Plaintiff's cellular number* over a hundred times using its LiveVox HCI phone system in attempting to contact Plaintiff's wife about a student loan. Exhibit B, FAMS's Response Interrogatory No. 10. *See also,* Exhibit C, FAMS's Response to Pl's

First Set of Requests to Admit, Nos. 9-10, 27. FAMS will not and cannot argue that it Plaintiff's prior express consent to place these autodialed and pre-recorded calls to Plaintiff's cellular phone. In the absence of consent, FAMS's conduct in leaving pre-recorded messages on the voicemail of Plaintiff's cellular number appears to be a blatant violation of § 227(b)(1)(A) of the TCPA.

It is not clear why FAMS called, let alone left pre-recorded messages on Plaintiff's cellular telephone number, which it admitted obtained as a result of a skip-trace. FAM skip-traced Plaintiff's telephone number and his number was never provided to FAM by Plaintiff or his wife. Exhibit C, FAMS's Response to Pl's Requests to Admit, Nos. 2-8. Plaintiff's outgoing voicemail message greeting utilizes Plaintiff's first name, Richard (Ex. A, Pl.'s depo., p. 25, lines 7-14) and explained to FAMS that the person using Plaintiff's cellular phone number is not the person from whom FAMS was attempting to reach to collect a debt. Plaintiff never consented to any of the calls placed by FAMS to his cellular phone. Notwithstanding the fact that Plaintiff was not the party FAMS was seeking to collect the debt from and the fact that FAMS did not have consent to place calls to Plaintiff's cellular phone, FAMS made well over 100 LiveVox HCI based calls to Plaintiff's cellular phone number. And despite never confirming whether Plaintiff was the debtor in question, FAMS utilized VoApps, Inc. ("VoApps"), to transmit following pre-recorded voice messages into the voice-mail box associated with Plaintiff's cellular phone number. VoApps' records show that it sent Plaintiff at least ten identical pre-recorded messages.

As alleged in the Complaint, FAMS caused the above pre-recorded voice message to be placed into the voice-mail box associated with Plaintiff's cellular phone number on November 16, 2017, November 24, 2017, and December 4, 2017, in addition to seven (7) other dates, for a total of at least ten (10) illegal pre-recorded voicemails. Ex. A, Pl.'s depo., p. 36, lines, 13-14, p. 106, lines 2-3; Exhibit D, FAMS's 30(b)(6) deposition, p.214,

lines 1-5. To recap, FAMS violated Section (b)(1)(A)(iii) of the TCPA by calling and/or otherwise causing "artificial or prerecorded voice" messages to be placed into the voicemail of Plaintiff's cellular telephone number - without his consent.

FAMS's sole defense to Plaintiff's pre-recorded TCPA class-based claim in Count IV is that "Defendant *did not make a call to a telephone number* assigned to a . . . cellular telephone service . . . for which the called party is charged for the call." Exhibit B, FAMS's Response to Pl's Interrogatory No. 22. Two courts have held otherwise. *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 912 (W.D. Mi. 2018)(where a collector was unable to argue that a "VoApps" based "voice drop" did not violate TCPA, the *identical* system utilized by FAMS); *Schaevitz v. Braman Hyundai, Inc.*, 2019 U.S. Dist. LEXIS 48906, *11-*16 (S.D. Fla. March 25, 2019)("construction of the TCPA in which a "ringless" voicemail is a "call" is consistent with Congress's purpose in enacting the TCPA."). Plaintiff's other TCPA claim-based in Count II asserts that FAMS used an automated dialing system (LiveVox HCI) to call his cellular phone without his consent. Plaintiff plausibly testified that FAMS used an ATDS to call him because FAMS called Plaintiff's cellular phone around the same time FAMS called Plaintiff's mother's land-based telephone number. Exhibit A, Pl's dep., p. 54, lines 14-24, p. 97, lines 5-13 ("They would literally call [my mother] right after me"), lines 15-16 ("So they would call my phone, not get ahold of me and go right to there [call my Mother's phone].").

To the extent FAMS wishes to argue that LiveVox HCI is not "automatic telephone dialing system" is defined by Section 227(a)(1) of the TCPA, this argument ignores the fact that FAMS's blind reliance on its LiveVox HCI calling system caused it to knowingly violate aspects of the FDCPA which serve to protect citizens from telephone harassment. For example, Counts V and VI identify numerous violations of the FDCPA. For example, Section 1692b(3) mandates that a debt collector may "not communicate with any

such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information". Section1692c(b) provides that "without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer". Section1692d states that a "collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt". In particular, § 1692d(5) makes it unlawful to "caus[e] a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" and § 1692d(6) specifically precludes "the placement of calls without meaningful disclosure of the caller's identify". Section 1692d Further, FAM's use of "voice drop" technology to circumvent the TCPA (and failing to identify its full name) constitutes the "use [of] unfair or unconscionable means to collect or attempt to collect any debt" in violation of §1692f of the FDCPA.

## IV.    Plaintiff Satisfies the Elements of FRCP 23(a)

### A. Plaintiff Has Demonstrated Numerosity

"[J]oinder is considered impractical when a class numbers at least forty members." *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506 (S.D. Ind. 2007). FAMS has produced spreadsheets of cellular telephone numbers that it obtained from LexisNexis, a third-party, skip trace vendor. FAMS has represented that it obtained the telephone numbers in question to find updated telephone numbers that it presumes

belong debtors without confirming that to be the case and that it will presume are the numbers of debtors and will continue call or use VoApps, Inc., until told otherwise.[2]

Discovery has identified at least 13,115 unique, skip-traced cellular numbers assigned to area codes for the Northern District of Illinois (area code 847, 224, 773, 312, 630, 331, 815, 779 and 708). Other spreadsheets show that VoApps successfully transmit pre-recorded messages to these skip-traced cellular numbers.[3] Accordingly, Plaintiff satisfies the element of numerosity.[4]

### B. Commonality is Satisfied

---

[2] Exhibit D, FAMS's 30(b)(6) deposition, pp. 23-37, 58, 63, 72, 94, 98, lines 21-24,113, lines 17-22, 114, lines 3-7, 126, lines 16-24, p. 127, lines 1-6 ("[f]or LexisNexis, all we purchase are the phone numbers for the person we're actually trying to call, for the debtor"; "On a lot of the student loan product, the information and the accounts are so old, and they have been through some other hands that, yes, that's -- that's one that we're more likely to try getting some information --through the LexisNexis."; "Q. Okay. And then the next step might be -- that it's an automated process by which you utilize LexisNexis to obtain, potentially, updated telephone numbers for the debtors in that large batch? A. Correct"; "Q. If we now wanted to figure out where and when you obtained the four numbers that we can see on page 258, what tab would you take me to, to see that? A. Well, for three of them, the three that say "Tier 1," we would go to the LexisNexis tab."); "What did FAMS do to determine, on an individualized basis, [to determine] whether those numbers that they had obtained from LexisNexis, in fact, belonged to the consumer?"; "A. "Called them" is the short answer."; is it FAMS' policy to continue to utilize VoApps to drop those messages until FAMS is told to stop calling that -- to stop using VoApps to drop that message? THE WITNESS: Correct.").

[3] FAMS has admitted to obtaining thousands of telephone number LexisNexis where LexisNexis performed mass, or "batch" based skip-trace searches for telephone numbers associated with debtors in the form of a file that passed from LexisNexis over a server to FAMS and uploaded to individual accounts as part of an automated process. Exhibit E, p. 184, lines 18-25, p. 185, p. 186, lines 1-12, p. 187, lines 8-16, 188, line, 18, p. 189, lines 8-16.

[4] As Plaintiff explained to this Court during the parties' last court appearance, while discovery had closed, Defendant had refused to produce certain class based discovery answers. *See, e.g.,* Exhibit B, FAMS's Response to Pl's First Set of Interrogatories, Rog. No. 13 (seeking "the total number of incidents from November 1, 2013 to the present where YOUR records show that a person answering a phone call placed by told an employee and/or agent that he/she was not the person YOU were trying to reach" and "the time, date and the total number of reports of wrong number and/or wrong person calls"); Rog. No.14 (seeking "[w]ith regard to the time, date and total number of wrong number and/or wrong person calls that YOU list in response to . . . Interrogatory [No. 13], identify the telephone number that was called where the person answering the phone said that YOU were calling the wrong person or wrong number").

The commonality requirement focuses on whether "there are questions of law or fact common to the class." FRCP 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Commonality requires a "common contention which is of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve the issue that is central to . . . each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

Courts have found commonality where defendants have used pre-recorded messages. *Birchmeier Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. 2014) (finding commonality where class "received the same calls offering a free cruise . . . made by or for one of the defendants, using the same artificial or prerecorded voice technology"); *Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 46510, *49 (N.D. Ill. March 21, 2019)("commonality exists on the question of whether using soundboard technology to deliver prerecorded messages that requires human involvement . . . violates the TCPA.")(citing *See Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320 (W.D. Okla. Oct. 15, 2018)). *See also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("[e]ach class member suffered roughly the same injury: receipt of at least one phone call . . . to her cell phone").

The crux of Plaintiff's TCPA claims are simple. FAMS has the burden of proof on the issue of whether it had Plaintiff's consent. 47 U.S.C. § 227(b)(1)(A). Plaintiff is the sole user of his cellular number, (708)288-8132. Plaintiff's wife did not provide this number to FAMS or during the life of her loan. FAMS obtained his by way of a skip-trace service performed by Lexis-Nexis to locate numbers associated with an alleged debtor (who happened to be his wife). Although FAMS knew that Plaintiff's number was as cell phone number after it obtained if from LexisNexis, FAMS did not confirm if

Plaintiff's cellular number belonged to the debtor in question before it barraged Plaintiff's voicemail with LiveVox calls and pre-recorded messages. Plaintiff testified that when FAMS used VoApps to transmit a pre-recorded message in an effort to contact the debtor, Plaintiff's phone would "ring one" and a pop up would "ding" to alert Plaintiff that he had a voice message from FAMS. Dkt. 50, Pl's Class Cert. Motion, ¶¶6-17, 19-22. The calls and voice messaged caused Plaintiff to suffer distress at work and with regard to his wife owing money. *Id.*at ¶¶23-24.

FAMS obtained the telephone numbers of thousands of persons via a skip-trace service performed by Lexis-Nexis, and just like with Plaintiff, FAMS did not attempt to confirm whether the telephone numbers obtained from Lexis-Nexis actually belonged to the debtors. Instead, it was FAMS's policy to call number obtained from LexisNexis until a person answering the phone told FAMS he/she was not the person FAMS was trying to reach. This approach is bizarre given FAMS's admission that it skip-traced debtors after FAMS essentially lost touch with the debtors. just like with Plaintiff, without confirming identifies or obtaining consent, FAMS called thousands of skip-traced (unconfirmed) cellular numbers. Finally, just like with Plaintiff, without having the required consent, FAMS used VoApps' technology to allegedly place pre-recorded messages to be placed into the voicemail boxes of these cellular numbers in question. FAMS' conduct in skip tracing debtors and calling cellular telephone *without* confirming whether the number obtained belong to the debt and transmitted pre-recorded messages. *See, e.g.,* Exhibit D, pp. p. 176, lines 6-25, 177, lines 1-13 ("But there was no effort made to confirm that that number belonged to a particular debtor, because you were utilizing Lexis's representation that a Tier 1 was a number that LexisNexis associated with the debtor; correct? A. Correct."); p. 179, lines 1-6 ("do you know why as a representative of FAMS, that FAMS using LiveVox -- sorry -- VoApps to drop

9

prerecorded messages into the voicemail boxes of debtors without confirming that that number belonged to a debtor? A. I don't know why."); 182, lines 22-25, p. 183, lines 1-25, p. 184, line 1 (FAMS's corporate representative did not have a good understanding of the differences between tier 1 and tier 2 numbers, and testified that FAMS did not have a different approach to using VoApps in terms of contacting numbers that were designated as Tier 1 versus Tier 2.).

FAMS's identified practices "raise common questions, . . . which would resolve the claims in this case in one stroke." *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 584 (N.D. Ill. 2018). Accordingly, this Court should hold that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

### C. Plaintiff's Claims Are Typical of the Classes He Proposes to Represent

The claims or defenses of the representative parties must be typical of the claims or defenses of the whole class. FED. R. CIV. P. 23(a)(3). The test for typicality closely resembles the commonality inquiry. *Lucas v. GC Services L.P.*, 226 F.R.D. 337, 341 (N.D. Ind. 2005). A "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted).

As recently recognized by the court analyzing pre-recorded messages:

> Plaintiffs['] . . . claims are typical of the class members in that they all arise from the same course of conduct—namely, CWT's use of VVT to call class members and play audio recordings marketing the Grand Celebration Vacation Package during the Class Period. They also pursue their claims based on the same legal theory of being subjected to unwanted prerecorded voice messages.

*Bakov v*, 2019 U.S. Dist. LEXIS at *51. *See also Braver,* 2018 U.S. Dist. LEXIS 218813, 2018 WL 2929590, at 7 (finding typicality where the plaintiff and the class members' claims "ar[o]se from the same operative allegation: that without express written consent,

a call was initiated, using a prerecorded voice, to [the plaintiff] and the class members' residential telephone lines, in an effort to market . . . home security systems, in violation of the TCPA").

Typicality is satisfied for essentially the same reason commonality is satisfied – FAMS's conduct in obtaining Plaintiff's cellular number from a skip trace search and then calling this number *without* his consent and transmitting pre-recorded messages – intended to be heard by someone else - is typical of FAMS's policy and practices.

### D. Plaintiff and His Counsel Are Adequate

A putative class representative must demonstrate that he/she can adequately protect the interests of the class. *See, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625-29 (1997) (holding that class representatives must be part of the class, possess the same interest, and have suffered the same injury). See also, FRCP 23(a)(4) which states "the representative parties will fairly and adequately protect the interests of the class."

The adequacy of representation requirement set forth by Rule 23(a)(4) "mandates that both the class representative and the counsel for the named plaintiff must be able to zealously represent and advocate on behalf of the class as a whole." *Lucas*, 226 F.R.D. at 341. As reflected in Paragraphs 28 through 46 of Plaintiff's Motion to Certify, it is clear that Plaintiff is an adequate, knowledgeable and zealous class representative.

Similarly, class counsel must be "experienced and qualified and generally be able to conduct the litigation." *Lucas*, 226 F.R.D. at 341. Proposed class counsel, James C. Vlahakis was a former attorney of the nationally recognized consumer class action defense firm of Hinshaw & Culbertson, LLP during the years 1998 to 2017. Mr. Vlahakis is well qualified to litigate the present matter as class counsel:

   a. defended well over a hundred consumer-based claims;
   b. obtained court approval of multi-million-dollar TCPA based class action settlements in conjunction with class counsel. *See, e.g.,In Re*

*Capital One Telephone Consumer Protection Act Litigation*, 12-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 14-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapies, Inc.* 08-cv-0837 (N.D. Ill.) ($3.5 million fax based settlement);

c. gained court approval of a dozen *FDCPA* based class action settlements in conjunction with class counsel. *See, e.g., Wood v. State Collection Service, Inc.*, 15-cv-0475 (S.D. Ind. 01/29/16); *Long v. Fenton & McGarvey Law Firm,* (S.D. Ind. 02/23/17);

d. defeated TCPA class certification in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013);

e. decertified a TCPA class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012); and

f. obtained favorable declaratory relief before the Federal Communication Commission ("FCC") relative to a TCPA junk facsimile-based cause of action (*see* FCC's Order of October 30, 2014, FCC14-164, in CG Docket Nos. 02-278 and 05-338).

Mr. Vlahakis was appointed to serve as a Steering Committee Member in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal. 5/15/18). Mr. Vlahakis represents approximately 24 class representatives in the proposed class action related to Apple's practice of "throttling" down the performance of older model iPhones.

## V. Plaintiff Satisfies the Elements of FRCP 23(b)(3)

FRCP Rule 23(b)(3) requires that a putative class representative demonstrate that common questions of law or fact "predominate over any questions affecting only individual member" and demonstrate that a "a class action is superior" to other available methods of adjudication. FED. R. CIV. P. 23(b)(3). Predominance "requires a qualitative assessment . . . [and] 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 801 (7th Cir. 2013)(quotation omitted). As noted above, common questions of law or fact predominate because FAMS violated the TCPA by calling Plaintiff's cellular phone and ATDS and pre-recorded messages without his consent. *Bakov* provided a detailed

discussion of superiority where it certified a pre-recorded message TCPA case. *Bakov,* 2019 U.S. Dist. LEXIS 46510 at *62-*63 (citations omitted).

As to the FDCPA claims, predominance is satisfied where the issue before the court was *whether the defendant's actions violated the FDCPA,* not whether that violations damaged the proposed class members. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875 (7th Cir. 2015). *See also, Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (claims arising out of standard documents present a "classic case for treatment as a class action") (citation omitted). As discussed above FAMS violated the FDCPA.

In conclusion, superiority is satisfied.

**VI.     The Proposed Classes Are Ascertainable Definable**

A proposed class should be "ascertainable," meaning that the class is clearly defined, and its parameters is based on objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A class is identifiable if the information necessary to identify class members is available through a "ministerial review" rather than an arduous individual inquiry. *Sadler v. Midland Credit Mgt., Inc.*, 2008 U.S. Dist. LEXIS 51198, 2008 WL 2692274, *3 (N.D. Ill. July 3, 2008) "[I]t is not fatal for a class definition to require some inquiry into individual records, so long as the inquiry is not 'so daunting as to make the class definition insufficient.'" *Id.* (granting cert where potential manual review to weed out false positives "might prove administratively burdensome, but a review for such straightforward objective criteria nevertheless remains ministerial").

A class action "complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy." *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015)). "Class definitions are not on that list. Instead the obligation to define the class falls on the judge's shoulders under FED. R.

CIV. P. 23(c)(1)(B)." *Id.* (citing *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011)). "The judge may ask for the parties' help, but motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint." *Id.*[5]

The TCPA utilizes a four year statute of limitations. Having said that, FAM's use of VoApps does not cover a four year time period. Accordingly, Plaintiff proposes that a *pre-recorded voice message class* be defined as follows:

> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS or a vendor transmitted pre-recorded voicemails to these numbers, from February 28, 2015, to FAMS's last transmission of a pre-recorded message to cellular numbers.

Additionally, Plaintiff proposes *ATDS based TCPA class*, defined as follows:

> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS utilized LiveVox's HCI phone system to call these numbers, from February 28, 2015, to FAMS's last transmission of a pre-recorded message to cellular numbers.

FAMS should not be allowed to avoid certification or quibble the definition by arguing that *somewhere* in its vast and disorganized records cellular number that it *obtained from a skip trace* already existed. Such an argument would amount to a "get out of jail free card" by allowing FAMS to cobble together a consent defense where it had previously determined *that it did not have a viable number for a debtor*, and that a skip trace was needed to locate the debtor's telephone number. FAMS's corporate representative testified that its records and records of third-parties could be minsterially

---

[5] Putative class plaintiffs are not required to amend their Complaint prior to filing for class certification to delineate the exact contours of their class. *See Griffith v. ContextMedia, Inc.*, 2018 U.S. Dist. LEXIS 5436, 2018 WL 372147, at *2 (N.D. Ill. Jan. 11, 2018) ("[T]he law of this circuit does not mandate denial of certification on the principle that plaintiff must stick to the definition proposed in her complaint."). A court can consider "modifications" to the proposed class "at any time prior to final judgment." *Chapman v. Wagener Equities, Inc.*, 2012 U.S. Dist. LEXIS 176857, 2012 WL 6214597, at *5-6 (N.D. Ill. Dec. 13, 2012).

searched to ascertain wrong number reports relative to skip traced individuals who received voice-drops.[6]

The FDCPA classes are subject to a one-year statute of limitations and the following class definition applies to FAMS's unlawful transmission of pre-recorded messages without consent (and where the messages did not list FAMS's full legal name):

> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS or a vendor transmitted pre-recorded voicemails to these numbers, from February 28, 2017, to FAMS's last transmission of a pre-recorded message to cellular numbers.

An *ATDS based FDCPA class* is defined as follows:

> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS utilized LiveVox's HCI phone system to call these numbers, from February 28, 2017, to FAMS's last LiveVox based calls to these cellular numbers.

As to Plaintiff's FDCPA based-class claims, FAMS cannot demand that Plaintiff demonstrate that every single person called had to be called related to a consumer debt. *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001).[7] FAMS would be hard pressed to make this argument given the fact that collects on defaulted student loans. In summary, this class action is the superior method for fair and efficient adjudication of this controversy even if additional ministerial inquiries are found to be necessary.[8]

---

[6] *See* FAMS' 30(b)(6) deposition, attached as Exhibit D, pp. 135, p. 15 to p.146, line 3; 161, lines 20-25, p. 162, p. 163, p. 164, lines 1-18; 166, lines 22-25, p. 167, lines 1-7; p. 176, lines 6-25, 177, lines 1-13; 182, lines 22-25, p. 183, lines 1-25, p. 184, line 1; p. 217, line 1-25, p. 218, lines 1-19, 23; p. 219, lines 13-25; p. 221, lines 15-25, p. 222, lines 11-20; p. 223, lines 3-19; p. 224, lines 2-19; p. 225, lines 6-25; p. 226, lines 19-25, p. 227, lines 1-5.; 229, lines 20-24, p. 230, lines 3-13; p. 230, lines 14,-25, p. 231, lines 1-12.

[7] *See also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001) ("If the need to show whether each loan transaction was a consumer rather than a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA.").

[8] Rule 23(c)(1)(C) allows a court to alter or amend an order that grants class certification before final judgment. *Alliance to End Repression v Rockford*, 565 F.2d 975, 977 (7th Cir. 1977) (stating

WHEREFORE, for the reasons set forth above, Plaintiff requests that this Court enter an order: (**a**) certifying the proposed classes; (**b**) appointing the Plaintiff as Class Representative; (**c**) appointing James C. Vlahakis as Class Counsel; and (**d**) for such other and further relief as the Court may deem appropriate.

*/s/ James C. Vlahakis*
James C. Vlahakis
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone No.: 630-581-5456
Fax No.: 630-575-8188
jvlahakis@sulaimanlaw.com

*Attorney for Plaintiff Richard Molinari and the proposed class members*

---

that the district court "has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements").

**CERTIFICATE OF SERVICE**

I, James C. Vlahakis, certify that on October 9, 2019, I caused to be filed the above referenced document via the district's ECF system, which shall serve a file stamped copy of this document on all counsel of record.

/s/ James C. Vlahakis