**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, individually and on behalf of a class of similarly situated individuals, ) ) ) ) Plaintiff, ) ) v. ) ) FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., ) ) ) ) Defendant. ) | No. 18 C 1526<br><br>Judge Sara L. Ellis |

## **OPINION AND ORDER**

Defendant Financial Asset Management Systems, Inc. ("FAMS") obtained Plaintiff Richard Molinari's cellular telephone number from LexisNexis, a company that identifies and collects individuals' telephone numbers through a process known as "skip tracing." FAMS then used a system called LiveVox HCI to call Molinari's cellular telephone number more than 100 times. FAMS also used a third-party vendor, VoApps, Inc. ("VoApps"), to deliver several direct-to-voicemail messages to the same number. Molinari contends that these actions, which FAMS undertook in an effort to collect on a student loan debt allegedly owed by Molinari's wife, violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* Molinari now moves to certify three classes under Federal Rule of Civil Procedure 23(b)(3).

Because Molinari has not demonstrated that these proposed classes satisfy Rule 23's numerosity requirement, the Court denies Molinari's motion for class certification without prejudice.[1]

## BACKGROUND

FAMS is a debt collection agency. *Gustin v. Allied Interstate LLC*, No. 2:11-cv-03795-JEO, 2014 WL 1923735, at *1 (N.D. Ala. May 13, 2014). As part of its debt collection efforts, FAMS contacts debtors to explain the status of the debt and the debtor's options. Although FAMS' clients may provide FAMS with the debtors' phone numbers, this information is not always accurate and up-to-date, especially for student loan debts. So FAMS uses a third party, LexisNexis, to obtain potentially updated telephone numbers for debtors it is trying to reach.

The process (simplified for purposes of this opinion) is as follows. FAMS sends a batch of debtors' demographic information to LexisNexis. Based on this information, LexisNexis identifies and collects telephone numbers for these debtors by "skip tracing," which is generally a process "whereby companies search credit histories and other public databases to obtain contact information for debtors listed on loan applications." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 898 (N.D. Ill. 2017). LexisNexis then sells the telephone numbers to FAMS. LexisNexis categorizes a skip-traced phone number into one of two tiers based on its "confidence" that the number is the identified debtor's phone number, with Tier 1 indicating a higher level of confidence than Tier 2. FAMS can determine whether it obtained a phone number via skip trace based on whether its records designate the number as "Tier 1" or "Tier 2."

FAMS believes that the Tier 1 and Tier 2 phone numbers it purchases from LexisNexis correspond to the debtors it wants to contact. Nonetheless, the system is not perfect: while speaking to the user of a phone number obtained from LexisNexis, an FAMS employee may

---

[1] Molinari also filed a motion for leave to cite two additional cases to support his class certification motion, which FAMS does not oppose. The Court grants this motion.

discover that the user is not the debtor he or she is trying to reach. In this case, FAMS requires the employee on the call to designate or otherwise document the phone number as a "bad" number. When FAMS determines that a phone number is "bad," it redacts the first six digits of the phone number. This signals to someone who subsequently views the number that the number should not be used, and it ensures that FAMS' system does not reload the number again if the same number is later obtained from LexisNexis.

FAMS contacts the phone numbers it receives from LexisNexis in two ways that are relevant here. First, FAMS uses a dialing system named LiveVox HCI to call the phone number. Second, FAMS contracts with VoApps for a service called DirectDROP Voicemail ("DDVM"), whereby VoApps delivers pre-recorded messages that terminate directly to a recipient's mobile voicemail service. VoApps' DDVM technology is intended to "drop" a pre-recorded message directly into a targeted individual's voicemail platform without "dialing the target's cell phone number or otherwise causing her handheld device to ring."[2] *Gurzi v. Penn Credit Corp.*, --- F. Supp. 3d ----, 2020 WL 1501893, at *1 (M.D. Fla. Mar. 30, 2020). Although the targeted individual "receive[s] a message-waiting notification as though she received a normal voicemail," VoApps delivers the message to the "target's cellular device without directly using the cellular network." *Id.*; *see also Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 909 (W.D. Mich. 2018) (describing VoApps' DDVM technology).

In March 2017, Navient placed a student loan debt for collection with FAMS. The debt belonged to Nicolette Campbell, which is the maiden name of Molinari's wife. LexisNexis performed a skip trace on "Nicolette E. Campbell" and identified a phone number ending in 8132 (the "8132 Number") as Campbell's number. FAMS obtained the 8132 Number (which

---

[2] At his deposition, Molinari testified that receiving VoApps' DDVM messages caused his phone to ring once before the message showed up in his voicemail box. Whether Molinari's phone rang or not upon receipt of a DDVM message is immaterial to the Court's analysis of Molinari's class certification motion.

3

LexisNexis had designated as "Tier 1") from LexisNexis, believing it to be Campbell's phone number.

On November 16, 2017, FAMS used the LiveVox HCI system to call the 8132 Number in an effort to collect payment from Campbell on her debt. The same day, VoApps sent a pre-recorded message using its DDVM technology to the 8132 Number's voicemail box. The message stated:

> Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Doc. 57-5 at 3–4; Doc. 68-4 at 16–17. Over the next two-plus months, FAMS called the 8132 Number 100 more times using the LiveVox HCI system. Meanwhile, VoApps continued to "drop" pre-recorded messages to the 8132 Number's voicemail box. On November 24 and December 4, 2017, VoApps sent the following message to the 8132 Number's voicemail box: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you." Doc. 57-5 at 4; Doc. 68-4 at 21, 25–26. VoApps sent approximately seven other pre-recorded voicemail messages to the 8132 Number's voicemail box, but the record does not show the content of these messages or the dates they were sent.

The 8132 Number, however, is not Campbell's telephone number; it is the cellular telephone number of Campbell's husband, Molinari, who does not owe a debt to Navient. Molinari testified that FAMS' calls and messages caused him to experience headaches, chest pains, anxiety, and marital problems; disrupted his daily life by distracting him while working, driving, and sleeping; and invaded his privacy. On or around February 6, 2018, Molinari spoke

with a FAMS employee over the phone and told the employee to stop calling him. After that conversation, FAMS designated the 8132 Number as "bad" and stopped contacting it.

Molinari brought this lawsuit on February 28, 2018. The Court originally set the fact discovery deadline for October 1, 2018, but after several extensions, fact discovery closed on May 15, 2019. During discovery, FAMS produced spreadsheets that identified the phone numbers it obtained via LexisNexis' skip-trace process (the "FAMS Spreadsheets").[3] FAMS contends that these spreadsheets include not only cellular telephone numbers, but landline and VoIP phone numbers as well. FAMS also produced spreadsheets that it obtained from VoApps (the "VoApps Spreadsheets"). These spreadsheets show FAMS' pre-recorded message campaigns with VoApps and, particularly, whether VoApps successfully delivered its pre-recorded messages to certain telephone numbers. FAMS contends, and Molinari does not dispute, that the VoApps spreadsheets identify messages that were sent to numbers that were both skip-traced and not skip-traced and that nothing in these spreadsheets alone "would indicate whether FAMS obtained the specific number via skip trace." Doc. 57 at 5. After expert discovery closed, Molinari moved for class certification.

## LEGAL STANDARD

Class certification is appropriate where the proposed class meets "all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b)(3) is at issue here, which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting

---

[3] The timeframe covered by the FAMS Spreadsheets is unclear, but FAMS implies that it produced these documents in response to a document request seeking records from November 1, 2013 through November 1, 2017. Consequently, the Court assumes that FAMS did not obtain any of the phone numbers found in the FAMS Spreadsheets before November 1, 2013.

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the class must be ascertainable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657, 659 (7th Cir. 2015); *see also Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012) ("It's not hard to see how this class lacks the definiteness required for class certification; there is no way to know or readily ascertain who is a member of the class."). The party seeking class certification bears the burden of proving every disputed prerequisite for class certification by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "Failure to meet any of [Rule 23's] requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

      The Court has broad discretion in determining whether it should certify a proposed class. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). To do so, the Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted); *Messner*, 669 F.3d at 811. At the same time, the Court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, and it may consider merits questions only to the extent they are relevant to determining whether the proposed class has met Rule 23's prerequisites, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013).

## ANALYSIS

Molinari seeks to certify the following three classes:[4]

> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS or a vendor transmitted pre-recorded voicemails to these numbers, from February 28, 2015, to FAMS'[] last transmission of a pre-recorded message to cellular numbers (the "TCPA Voicemail Class").
>
> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS or a vendor transmitted pre-recorded voicemails to these numbers, from February 28, 2017, to FAMS'[] last transmission of a pre-recorded message to cellular numbers (the "FDCPA Voicemail Class").
>
> All persons with cellular telephone numbers with Illinois area codes where the numbers were obtained by FAMS utilizing Lexis-Nexis to skip trace the subject cellular numbers where FAMS utilized LiveVox's HCI phone system to call these numbers, from February 28, 2017, to FAMS'[] last LiveVox based calls to these cellular numbers (the "FDCPA LiveVox Class").

Doc. 52 at 14–15. FAMS argues that Molinari has failed to satisfy every relevant Rule 23 requirement. The Court begins with Rule 23's numerosity requirement because it compels the Court's decision in this case.

### I. Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court can certify a class without determining its size so long as it is reasonable to believe the class is "large enough to make joinder impracticable

---

[4] Molinari proposed a fourth class for certification in his opening memorandum. This class pertained to his TCPA claim based on FAMS' use of the LiveVox HCI system to call cellular phone numbers that were identified via skip trace. But in his reply, Molinari "voluntarily dismisse[d] the aspects of his class-based TCPA claims that seek[] to certify" this class. Doc. 68 at 5. Also in his reply, Molinari identified for the first time a proposed class of cellular phone numbers in Illinois that received pre-recorded messages identifying FAMS by its initials rather than by its full name. The Court does not consider this proposed class. *See, e.g.*, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

7

and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). Nonetheless, the party seeking class certification cannot prove numerosity by relying "on 'mere speculation' or 'conclusory allegations' as to the size of the putative class." *Arreola*, 546 F.3d at 797 (quoting *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Molinari contends that numerosity exists because the FAMS Spreadsheets identify approximately 10,000 "unique, skip-traced cellular numbers assigned to" Northern District of Illinois area codes[5] and the VoApps Spreadsheets "show that VoApps successfully transmit[ted] pre-recorded messages to these skip-traced cellular numbers." Doc. 52 at 6–7; Doc. 68 at 19. FAMS counters that Molinari has not met his burden in showing numerosity.

The Court agrees with FAMS that Molinari has failed to establish numerosity. Rule 23(a)(1) is not "a mere pleading standard," and a plaintiff must put forth *evidence* demonstrating numerosity. *See Wal-Mart*, 564 U.S. at 350; *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018); *see also Messner*, 669 F.3d at 811 ("On issues affecting class certification, [] a court may not simply assume the truth of the matters as asserted by the plaintiff."). Yet Molinari did not provide the Court with the documentary evidence—the FAMS Spreadsheets and VoApps Spreadsheets—that he says demonstrates numerosity.[6] *Cf. Roe*, 909

---

[5] Molinari originally asserted that the FAMS Spreadsheets "identified at least 13,115 unique, skip-traced cellular numbers" with a relevant area code. Doc. 52 at 7. However, he revised that estimate to approximately 10,000 numbers after FAMS argued that the FAMS Spreadsheets identified landline and VoIP numbers in addition to cellular numbers. Molinari did not explain how he subsequently determined that approximately 3,115 numbers were landline and VoIP numbers.

[6] Even if submitting these spreadsheets in their entirety was impracticable (due to their number, format, size, or some other reason), Molinari could have provided the Court with portions of the spreadsheets that

F.2d at 1100 n.4 (noting an inclination to affirm the district court's denial of class certification on numerosity grounds where the plaintiff did not supply the district court with a list of class members even though "she claimed to have such a list").  Nor did Molinari submit any evidence—whether in the form of a declaration, deposition testimony, expert opinion, or written discovery response—establishing enough putative class members for numerosity purposes based on the contents of these spreadsheets or otherwise.  The Court only has conclusory assertions from Molinari's briefs, which are not evidence that satisfies Rule 23(a)(1).  *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("[A]ssertions in briefs are not evidence[.]"); *Arreola*, 546 F.3d at 797 (a plaintiff "cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove" numerosity (citation omitted)).

Molinari also cannot rely upon "common sense" to argue that the numerosity requirement is satisfied.  *See, e.g.*, Doc. 68 at 18–19 ("A putative plaintiff is not required to point to other victims.  Rather, in making the numerosity determination, 'the court is entitled to make common sense assumptions.'" (citation omitted)).  Although a "court may make common sense assumptions to determine numerosity," *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015), the Court can only do so if there is underlying evidence upon which to base these assumptions, *see Mielo*, 897 F.3d at 484–86; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596–97 (3d Cir. 2012); 1 William B. Rubenstein, Newberg on Class Actions § 3:13 (5th ed. June 2020 update) ("Generally, a plaintiff must show enough *evidence* of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members." (emphasis added)).  Otherwise, the so-called "common sense" assumptions are nothing more than speculation.  *See Mielo*, 897 F.3d at 486; *Marcus*, 687 F.3d at 596–97.

---

showed the minimum number of putative class members needed to meet the numerosity requirement.  *Cf. Mulvania*, 850 F.3d at 859 ("[A] forty-member class is often regarded as sufficient to meet the numerosity requirement.")

For instance, in *Mielo*, the district court certified as a class all individuals with "qualified mobility disabilities" who had encountered accessibility barriers at the defendant's restaurants. 897 F.3d at 475. On appeal, the plaintiffs sought to carry their numerosity burden by pointing to census data showing that there were millions of individuals with mobility disabilities living in the United States and asking the court to find numerosity based on "common sense." *Id.* at 485–86. The Third Circuit found that the plaintiffs failed to satisfy the numerosity requirement. *Id.* at 486–87. Although the census data "suggest[ed] that it [was] highly likely that at least 40 of those individuals would have experienced access violations at one of the" restaurants at issue, the plaintiffs did not present any evidence that would permit the court to use "common sense" to determine how many of the millions of disabled individuals actually patronized a relevant restaurant, let alone the number of individuals who encountered an accessibility barrier at the restaurant. *Id.* at 485–86.

The Eleventh Circuit likewise found that a class did not satisfy the numerosity requirement based on a similar lack of evidence in *Vega v. T-Mobile USA*, 564 F.3d 1256 (11th Cir. 2009). In *Vega*, the district court certified a class of T-Mobile retail associates in Florida. *Id.* at 1264, 1267. The only evidence as to the number of T-Mobile retail associates, however, was deposition testimony about the number of associates employed nationwide. *Id.* at 1267. This was insufficient. *Id.* at 1267–68. As the *Vega* court explained, "it might be tempting to assume that the number of retail associates" employed in Florida by T-Mobile (a large company with many retail outlets) met the numerosity requirement, but such an assumption was "sheer speculation" without any evidence directed to Florida alone. *Id.*

As in *Mielo* and *Vega*, it might be highly likely, and thus tempting to assume, that numerosity is met for each class Molinari proposes, i.e., that FAMS called at least forty skip-

10

traced cellular phone numbers in the Northern District of Illinois and that VoApps sent pre-recorded voicemail messages to at least forty such numbers during the relevant time frames. But Molinari has not submitted any evidence to support these assumptions, and without such evidence, these assumptions amount to speculation. Even though the numerosity requirement generally presents a "low hurdle," *Vega*, 564 F.3d at 1267, Molinari has failed to clear that hurdle here.

Because a party seeking class certification must satisfy all of Rule 23(a)'s requirements, Molinari's failure to satisfy Rule 23(a)(1) alone warrants the Court's denial of his motion. Nonetheless, the Court's denial based on Molinari's failure to meet the numerosity requirement is without prejudice. *See Van v. Ford Motor Co.*, No. 14-cv-8708, 2018 WL 4635649, at *13 (N.D. Ill. Sept. 27, 2018) (noting that denial of a class certification motion "is not uncommon, especially after one try"). The Court will therefore address certain other concerns it has regarding Molinari's class certification briefing to give guidance to the parties if Molinari chooses to file a renewed motion for class certification.

## II.     Commonality and Predominance

Under Rule 23(a)(2), a party seeking class certification must show commonality by identifying "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The key to commonality is 'not the raising of common 'questions' . . . but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Orr v. Shicker*, 953 F.3d 490, 498–99 (7th Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 350); *see also Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550 (7th Cir. 2016) ("[A] prospective class must articulate at least one common question that will actually advance all of the class members' claims."). The predominance requirement, in turn, allows for certification only if the common

11

questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement is similar to the commonality requirement but "far more demanding." *Messner*, 669 F.3d at 814 (citation omitted); *see also Pavone v. Meyerkord & Meyerkord, LLC*, 321 F.R.D. 314, 319 (N.D. Ill. 2017) (noting that commonality and predominance are "closely related" and "can 'overlap in ways that make them difficult to analyze separately'" (citation omitted)). The commonality and predominance analyses require a court to consider the elements of the plaintiff's class-based claims. *See Phillips*, 828 F.3d at 552 ("A determination of commonality often requires a precise understanding of the nature of the plaintiffs' claims."); *Messner*, 669 F.3d at 815 ("Analysis of predominance under Rule 23(b)(3) 'begins, of course, with the elements of the underlying cause of action.'" (citation omitted)).

Here, Molinari sought to certify one TCPA class to pursue claims based on a violation of 47 U.S.C. § 227(b)(1)(A)(iii) and a violation of 47 C.F.R. § 64.1200(b)(1). He also sought to certify two FDCPA classes to pursue claims based on almost a dozen FDCPA sections or subsections: 15 U.S.C. §§ 1692b(1)–(2); 1692c(a)(1), (b); 1692d and 1692d(5)–(6); 1692e and 1692e(2), (14); and 1692f.[7] Yet, in arguing commonality, Molinari only addressed the TCPA-based claims; he did not once mention any of the aforementioned FDCPA provisions or, even more generally, the FDCPA. Molinari likewise gave short shrift to his proposed FDCPA classes and FDCPA-based claims in arguing predominance. His predominance argument with respect to the FDCPA consisted of the following:

> As to the FDCPA claims, predominance is satisfied where the issue before the court was *whether the defendant's actions violated the FDCPA*, not whether that [sic] violations damaged the proposed class members. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875 (7th Cir. 2015). *See also, Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988)

---

[7] Molinari identified 15 U.S.C. § 1692b(3) in his opening motion and memorandum as well, but he withdrew any class-based claims under this provision in his reply.

> (claims arising out of standard documents present a "classic case for treatment as a class action") (citation omitted). As discussed above[,] FAMS violated the FDCPA.

Doc. 52 at 13 (emphasis in original). Notably, though, this argument does not address how Molinari's two proposed FDCPA classes relate to the various identified FDCPA provisions.

For instance, Molinari's proposed FDCPA classes do not distinguish between class members who were contacted about a debt they owe (a debtor) and those who were contacted about a debt they do not owe (a non-debtor). Indeed, Molinari has asserted that "this case is not about whether Plaintiff [or] the putative class members are or are not [the] debtors in question" and that "[w]hether the person called is the debtor (or not) is not an element or basis for certification." Doc. 68 at 1, 12. However, several of the FDCPA claims identified by Molinari do, in fact, hinge on whether the class member is a debtor or, in the language of the FDCPA, a "consumer." *See* 15 U.S.C. § 1692a(3) (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt"). Sections 1692b and 1692c(b) only apply to communications with individuals *other* than the debtor. *Id.* § 1692b ("Any debt collector communicating with any person other than the consumer . . . ."); *id.* § 1692c(b) ("[A] debt collector may not communicate . . . with any person other than the consumer . . . ."). On the other hand, § 1692c(a)(1) only applies to communications with debtors. *Id.* § 1692c(a) ("[A] debt collector may not communicate with a consumer . . . ."). Whether a particular class member owes a debt is an individualized question that, at least for claims under these statutory provisions, may predominate over any common issues. *See* 7 Newberg on Class Actions § 21:6 ("FDCPA class actions have failed the 23(b)(3) predominance inquiry when significant individualized information is required to prove a violation was committed with respect to each putative class member.").

In addition, 15 U.S.C. § 1692b(1)–(2) requires the debt collector to "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer" and prohibits the debt collector from stating that the "consumer owes any debt." But determining whether these requirements are met for the FDCPA LiveVox Class would require asking each individual class member whether the call from FAMS resulted in a conversation and, if so, whether the conversation disclosed the information required or prohibited by § 1692b(1)–(2). These too are questions that require "significant individualized information" to answer and, as such, could predominate over any issues common to the FDCPA LiveVox Class for a § 1692b claim. *See* 7 Newberg on Class Actions § 21:6.

Of course, FDCPA-based claims do often present common issues of law or fact that predominate over any issues that affect only individual members. *See* 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 2:21 (16th ed. Oct. 2019 update) ("Because FDCPA actions typically arise out of substantially similar debt collection practices, courts have frequently held that questions common to class members predominate, making Rule 23(b)(3) certification appropriate."). The same is true for TCPA-based claims. *See Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions . . . are common to all recipients."). Even so, it is still Molinari's burden to demonstrate that all his proposed classes satisfy the commonality and predominance requirements for the particular TCPA-based and FDCPA-based claims he seeks to pursue for each class. *See Priddy*, 870 F.3d at 660; *Messner*, 669 F.3d at 811. To that end, if Molinari renews his motion for class certification, he should ensure that he "connect[s] the common evidence" he proposes to use for each proposed class "to the elements required to make a *prima*

14

*facie* showing for each cause of action" that he wishes to pursue on behalf of that class. *See T.S. v. Twentieth Century Fox Television*, --- F.R.D. ----, No. 16 cv 08303, 2020 WL 247463, at *12 (N.D. Ill. Jan. 16, 2020).

### III. Adequacy of Class Counsel

Molinari seeks to have James C. Vlahakis appointed as class counsel. Under Rule 23, the class representative must "fairly and adequately protect the interests of the class," and appointed class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4), (g)(4).[8] Proposed class counsel must show that "they would prosecute the case in the interest of the class . . . rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). In determining an attorney's adequacy as class counsel, a court must consider the following factors: "the work counsel has done in identifying or investigating potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). "[B]esides the lawyer's competence, experience, and related professional qualifications," a court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014). A

---

[8] Subdivision (g) was added in 2003 "to guide the court in assessing proposed class counsel as part of the certification decision." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir. 2011) (citation omitted). The analysis under Rule 23(g) "'builds on' the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) 'rather than introducing an entirely new element into the class certification process.'" 1 Newberg on Class Actions § 3:80 (quoting Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment).

court should weigh all relevant factors, and no single factor is determinative. Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment.

The Court need not conclusively decide whether Vlahakis would be adequate class counsel, but it again notes that Rule 23 is not "a mere pleading standard" and that a plaintiff must offer evidence demonstrating that he or she has satisfied Rule 23's requirements. *See Wal-Mart*, 564 U.S. at 350; *Messner*, 669 F.3d at 811 (a plaintiff must prove each disputed Rule 23 requirement "by a preponderance *of evidence*" (emphasis added)). Here, Molinari served interrogatory responses that describe Vlahakis' qualifications, including his appointment to serve as a Steering Committee Member in a proposed class action lawsuit in the Northern District of California, *In re Apple Device Performance Litigation*. But there is no evidence from Vlahakis himself about his qualifications. For instance, Vlahakis did not provide an affidavit or declaration, i.e., testimonial evidence, attesting to his experience, qualifications, and competence in connection with Molinari's class certification briefing. True, Molinari's briefing (which is signed by Vlahakis) makes assertions regarding Vlahakis' qualifications, but "assertions in briefs are not evidence[.]" *Mitze*, 782 F.3d at 882. Nor did Vlahakis provide such evidence during discovery, even though it was responsive to interrogatories seeking information regarding the experience and knowledge of Molinari's counsel in bringing FDCPA and TCPA claims (*see* Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii)) and the resources his counsel would commit to representing a class (*see* Fed. R. Civ. P. 23(g)(1)(A)(iv)). In response to these interrogatories, Molinari claimed that his counsel would answer adequacy of representation discovery "at an appropriate time, and in the appropriate form and format." Doc. 57-5 at 16–17. Vlahakis, however, did not provide the requested discovery "in the appropriate form and format"—a declaration or affidavit—"at the appropriate time"—before the close of discovery. And while one response to these

16

interrogatories directed FAMS to two paragraphs in the complaint, these allegations are not evidence either. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) ("[M]ere allegations of a complaint are not evidence."); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 274 (N.D. Ill. 2019) (allegations in a complaint do not satisfy Rule 23).

That said, FAMS has not given the Court any reason to disbelieve the assertions made in Molinari's interrogatory responses and briefing about Vlahakis' qualifications. The Court nonetheless believes the better practice is for Vlahakis to submit a declaration attesting to his experience, competence, and qualifications if Molinari again seeks class certification.

## CONCLUSION

For the foregoing reasons, the Court denies Molinari's motion for class certification [50] without prejudice. The Court grants Molinari's motion for leave to cite additional authority in support of his motion for class certification [75].

Dated: July 29, 2020

_____
SARA L. ELLIS
United States District Judge