**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, Plaintiff, on behalf of himself and a class of similarly situated individuals, | |
| v. | 1:18-cv-01526 |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | Honorable Judge Sara L. Ellis |
| Defendant. | |

**DECLARATION OF JAMES C. VLAHAKIS**

I, James C. Vlahakis, hereby declare as follows:

**A. Professional Background**

1.     I make this declaration in connection with Plaintiff's Supplemental Filing in Support of Plaintiff Motion for Class Certification.

2.     I am senior counsel with Sulaiman Law Group, Ltd. ("SLG"). I began working at SLG in 2017. As a 1995 graduate of Loyola University Chicago, I have been licensed to practice law in the State of Illinois since November of 1995.

3.     SLG concentrates in representing consumers in both single plaintiff suits and in class action lawsuits. SLG specializes in prosecuting lawsuits against telemarketers, debt collectors and creditors pursuant to the Telephone Consumer Protection Act ("TCPA"). SLG also represents consumers against debt collectors pursuant to the Fair Debt Collection Practices Act ("FDCPA"). SLG also prosecutes violations of the Fair Credit Reporting Act against credit furnishers as well as credit reporting agencies. SLG works for consumers on a contingency basis.

4.     My work at SLG is primarily focused on prosecuting individual claims and class actions against debt collectors and telemarketers.

**B. Litigation Practice Prior to Joining SLG**

5.      Prior to working at SLG, I worked at Hinshaw Culbertson, LLP ("Hinshaw"). I began my employment at Hinshaw in 1998. While at Hinshaw, my practice involved four main types of law: (**a**) defending debt collectors accused of violating the FDCPA and the TCPA; (**b**) defending telemarketers accused of violation the TCPA; (**c**) defending civil rights cases brought against police officers, sheriff's deputies, correctional officers, prosecutors and doctors and mental health professionals employed by the Illinois Department of Human Services ("DHS"), Liberty Healthcare Corporation, Wexford Health Sources, Inc. and other entities; and (**d**) defending corporations in a variety of suits, including commercial litigation, employment law, Title VI and the Racketeer Influenced and Corrupt Organizations Act.

6.      While at Hinshaw, I represented well over three dozen debt collection agencies, including State Collection Service, Inc., Halsted Financial Services, LLC, Transworld Systems, Inc. Diversified Adjustment Service, Inc., First Credit Services, Inc., Walinski & Trunkett, Pierce & Associates and Bureau of Collection Recovery LLC. I have defended and prosecuted well over a hundred consumer-based claims.

7.      I am familiar with litigating TCPA cases involving voice-messages, having authored the amicus brief submitted by ACA International in the case of *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012).[1] In *Klueh v. Paul Vallas for All Chicago*, 2020 U.S. Dist. LEXIS 152979 (N.D. Ill. Aug. 24, 2020), the court denied a motion to dismiss where I argued that my client received unsolicited campaign based text messages.

8.      As a former defense attorney, I engaged in arms' length negotiations with class counsel where our efforts have resulted in the approval of multi-million-dollar

---

[1] The amicus brief can be found at https://www.severson.com/wp-content/uploads/2012/03/soppet-aca-amicus.pdf

TCPA based class action settlements. *See, e.g., Prater v. Medicredit, Inc.*, 14-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates vs. CSL Biotherapries, Inc.* 08-cv-0837 (N.D. Ill.) ($3.5 million fax based settlement). As a defense attorney, in conjunction with class counsel, Mr. Vlahakis has successfully settled FDCPA based class actions. *See, e.g., Wood v. State Collection Service, Inc.*, 15-cv-0475 (S.D. Ind. 01/29/16); *Long v. Fenton & McGarvey Law Firm,* (S.D. Ind. 02/23/17).

9.     On May 15, 2018, I was provisionally appointed to serve as a member of the Steering Committee in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal., Dkt. 99). I this case I have represented approximately 24 class representatives in a proposed class action related to Apple's practice of "throttling" down the performance of older model iPhones. I participated in vetting potential class representatives, preparing Rule 26(a)(1) disclosures, responding to discovery issued by Apple to each of my clients. In total, of the nine (9) of the proposed class representatives that were deposed, three (3) of my clients were deposed. On May 15, 2020, the presiding judge granted preliminary approval of a $300,000,000 to $510,000,000 settlement. Dkts. 415-16, 420, 429.

10.     Additionally, I have successfully litigated proceedings before the Federal Communication Commission ("FCC") in relation to the "junk fax" prohibitions that are contained within the TCPA. For example, in addition to causing the insurer to reverse a prior denial of insurance coverage for my client Crown Mortgage Company, I pursued declaratory relief before FCC. The FCC issued favorable declaratory relief for Crown Mortgage Company. See, FCC's Order of October 30, 2014, FCC 14-164, in CG Docket Nos. 02-278 and 05-338. The FCC's Order is located at

https://docs.fcc.gov/public/attachments/FCC-14-
164A1.pdf+&cd=1&hl=en&ct=clnk&gl=us

11.     I have also served conducted several trials, including second chairing a favorable bench trial before the Honorable Harry D. Leinenweber in the case of *Hargett, et al., v. Adams, et al*, 2005 U.S. Dist. 6240, 2005 WL 399300 (N.D. Ill. Jan. 13, 2005). After a week-long bench trial, my clients prevailed on 24 of 25 claims for declaratory relief. Leading up to the trial, I handled all aspects of fact and expert discovery, including defending or taking every deposition in the case.  I was lead (solo) counsel in two other trials which resulted in not guilty verdicts for my clients: *Hardy v. Ghosh, et al.*, Case No. (Verdict entered on 9/20/13); *Willis v. Sood et al*, Case No. 11-cv-01315 (verdict returned on 2/18/15). In a notable trial victory, I second chaired a civil rights case that resulted in a $1.1 million dollar judgment resulting from my client's wrongful suspension (with pay) for an eleven day period. *See, Woods v. City of Gary, et al,* 2000 U.S. App. LEXIS 16991 (7th. Cir. July 14, 2000).

12.     While at Hinshaw, I was primary/lead counsel in approximately three hundred civil actions. Two notable related cases, *Black, et al v. McGuffage, et al*, Case No. 01-cv-00208 and *del Valle, et al., v. McGuffage, et al*, 01-cv-00796   involved defending class action lawsuits filed against various Illinois municipalities stemming from alleged voting irregularities related to the 2000 election. While at Hinshaw, I also represented various police officers sued in relation to claims of police misconduct emanating from Area 2 police district and Commander Jon Burge.

13.     Finally, while employed at Hinshaw, I worked with Hinshaw's appellate department and obtained favorable results in the following cases: *Sain v. Wood,* 512 F.3d 886 (7th Cir. 2008).  Most recently, I obtained the reversal of a 12(b)(6) motion in the case of *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772 (7th Cir. 2020). On

February 12, 2020, a district court judge applied *Preston* to deny a 12(b)(6) motion to dismiss in *Diaz v. Credit Protection* , 2020 U.S. Dist. LEXIS 27629, *4-*8 (M.D. Fla. Feb. 12, 2020).

### C. Detailed Experience Related to Certification of TCPA Class Actions

14.     In defending a putative TCPA class action, I defeated a motion certify in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013) where the debt collector had skip-traced the putative class members and sent pre-recorded messages to telephone numbers that were obtained from skip trace results. In *Jamison*, the plaintiff claimed that a debt collector had violated the TCPA by calling him with a pre-recorded message for a debt owed by his sister. Just like the Defendant in the action before this Court, the debt collector ("FCS") admitted that it had skip-traced Plaintiff's number and the telephone numbers of 2,886 cellular numbers *in an effort to contact the debtors*.

15.     In contrast to this case, the creditor (American Honda Finance Corporation, hereafter "Honda") and FCS presented evidence to the district court that demonstrated that with regard to the 2,886 skip-traced cellular numbers, "there [was] an open question as to whether these individuals provided their consent to Honda to call their wireless numbers." *Id.* According to the court, "Honda routinely obtains phone numbers from its customers. [Yet] when Honda gave information about debtors to FCS so that FCS could attempt to collect those debts, Honda provided few, if any, wireless *numbers even when Honda had those numbers somewhere in its system.*" *Id.* (emphasis supplied).

16.     The district court found that I had submitted a meritorious defense to the class representative's argument that consent did not exist. The court agreed that "many of the numbers obtained by FCS through skip-tracing were previously provided

to Honda." *Id.* The court went on to hold that predominance did not exist based on the fact that Honda's records contained many of the number that were skip-traced by my client. Here is how the court described the evidence that was presented to by the defendants:

> Honda uses a Customer Account Servicing System ("CASS") to track its customers. CASS contains a large volume of information about the particular customer relationship such as: (1) the contact information; (2) the make and model of the car; (3) the customer's payment history; (4) account notes memorializing contact with the customer, etc. She also attested that when Honda customer service representatives speak to customers, it is common for them to obtain the customer's preferred number to be contacted at and to enter that number into the appropriate "phone" field in CASS. CASS has fields for home, work and cellphone numbers. However, the customer services representatives also sometimes enter the customer's preferred contact number in the "notes" field and do not enter it in the "phone" field. However, Honda does not provide information contained in CASS to third-party debt collectors like FCS. Rather, Honda provides FCS with the information contained in its Recovery Management System database ("RMS"). This because when a customer has not made a payment for 120 days, or if there is a balance owed after the car has been repossessed, the debt is transferred to the National Recovery Center, which uses the RMS system. CASS feeds information into the RMS system; however, this data entry is subject to certain limitations.
>
> One of those limitations is that RMS does not include a cellphone field. Instead it only has fields for work and home numbers. As a result, Honda does not provide cellphone numbers to FCS even though a customer may have consented to be called on his or her cellphone.
>
> FCS identified 2,887 wireless phone numbers that it called with an automatic dialing machine to collect a debt owed to Honda where it had obtained the number via skip trace methods. However, when Honda's IT personnel ran those numbers through the "phone" fields in CASS they found that over 1,200 of those numbers appeared in the CASS cellphone field. More cellphone numbers may also appear in CASS's "notes" field; however, Honda has no quick, automated way of searching the "notes" field. According to Metcalf, if Honda needed to determine whether a person had provided consent to be called on his or her cellphone, Honda would have to undertake a labor intensive review of CASS's notes field, the audit logs as well as running the search through the "phone" fields.

*Id.* at 106-07.

17.     In *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012), I decertified a previously certified TCPA class action where I was able to demonstrate that individual issues of consent predominated over the debt collector's general practice of skip tracking debtors' cellphone numbers and delivering autodialed and pre-record messages. I was able to decertify the provisionally certified class in Pesce as a result of me hunting for proof of consent – and demonstrating that the creditor obtained the class representative's telephone number in a consensual manner – and not from "call capturing" the class rep's cell phone number. Having defeated TCPA based class actions as a defense attorney, I believe I am well versed in the issues necessary to *certify* a TCPA class action, especially where pre-recorded messages are at issue.

### D.  The Prosecution of the Subject Case

18.     I have vigorously prosecuted the present case since its inception. I am working on this case on a contingency basis. I have invested hundreds of hours' time in litigating this matter, from preparing the complaint, researching the propriety of VoApps' messaging system, drafting case specific discovery, responding to discovery and conducting and defending deposition.

19.     In this case I have obtained critical discovery necessary to advocate for the Class Members' best interests. Most importantly, as set forth below, the proposed classes are ascertainable based upon the data that was produced by FAMS during the discovery phase of this case. In contrast to the defense of *Jamison*, Defendant has admitted that it only used its skip-trace vendor to obtain cellular numbers that it did not previously have for the debtor. By failing to produce any records of consent,

Defendant *did not* conduct the same type of zealous defense that resulted in multi-faceted defense that was mounted by Honda and FCS to undermine Mr. Jamison's argument that consent did not exist (across the board) for the telephone numbers skip-traced by FCS.

### 1. The Proposed Classes Are Ascertainable by Way of Simple, Ministerial Undertakings

20. Each of the proposed classes are ascertainable for the following reasons. **First**, the proposed class is made up thousands of known phone numbers that FAMS obtained *from skip trace results* which FAMS produced in discovery. Dkt. 57, FAMS's Opposition to Pl's Motion for Certification. ("FAMS's Opposition") p.3 ("FAMS produced a spreadsheet of telephone numbers that it obtained via skip trace . . . during a specific time period.").

21. FAMS's counsel produced an Excel spreadsheet (entitled "NON-FED-PHONE.xlsx") which reflected the universe of telephone numbers that FAMS obtained from LexisNexis.

22. The below image depicts how Plaintiff's cellular number, (708)228-8132, appears in Colum E of FAMS's spread sheet of skip traced telephone numbers, where the associated account numbers are reflected in Columns C and D, the designated Tier (1 or 2) is reflected in Column F ("PHNBR SOURCE") and the date skip trace is reflected in Column G:

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | ACCT_ACTIVE | ACCT_CLIENT2 | ACCT_ID | PHNMBR_ACCT_ID | PHNMBR_PHONE_NUMERIC | PHNMBR_SOURCE | PHNMBR_CREATEDDATE |
| 187890 | C | PVC01 | 319856448 | 319856448 | 7082288132 | TIER1 | 3/26/2017 20:00 |
| 187891 | C | PVC01 | 314481567 | 314481567 | 7082288132 | TIER1 | 8/23/2015 15:04 |
| 308406 | | | | | | | |

23. As reflected above, Column C, "ACCT_ID", lists the two account numbers associated with the debtor in question (Plaintiff's wife).

24. Acct Id. 314481567 reflects the original placement of the subject debt in 2015, and Acct. Id. 319856448 relates to FAMS's second attempt to collect the same debt. See below email from defense counsel dated April 28, 2019:



25. The data depicted in Paragraph 19 is representative of the class-wide data that FAMS has produced. For example, below is a screen capture of Plaintiff's number along with redacted phone numbers that were skip traced on August 22 and 23, 2015, and designated as "Tier 1" numbers:

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 307918 | C | PVC01 | 314500061 | 314500061 | | TIER1 | 8/22/2015 7:47 |
| 307919 | C | PVC01 | 314506285 | 314506285 | | TIER1 | 8/22/2015 7:47 |
| 307920 | C | PVC01 | 314506387 | 314506387 | | TIER1 | 8/22/2015 7:47 |
| 307921 | C | PVC01 | 314487705 | 314487705 | | TIER1 | 8/23/2015 15:04 |
| 307922 | C | PVC01 | 314487705 | 314487705 | | TIER1 | 8/23/2015 15:04 |
| 307923 | C | PVC01 | 314481567 | 314481567 | 7082288132 | TIER1 | 8/23/2015 15:04 |
| 307924 | C | PVC01 | 314475963 | 314475963 | | TIER1 | 8/23/2015 15:04 |
| 307925 | C | PVC01 | 314475963 | 314475963 | | TIER1 | 8/23/2015 15:04 |

26. A second example, depicted below, depicts Plaintiff's number along with telephone numbers that were skip traced on March 26, 2017 and designated as "Tier 1" numbers:

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 60604 | C | PVC01 | 319861747 | 319861747 | | TIER1 | 3/26/2017 20:00 |
| 60605 | C | PVC01 | 319856448 | 319856448 | | TIER1 | 3/26/2017 20:00 |
| 60606 | C | PVC01 | 319856448 | 319856448 | 7082288132 | TIER1 | 3/26/2017 20:00 |
| 60607 | C | PVC01 | 319855941 | 319855941 | | TIER1 | 3/26/2017 20:00 |
| 60608 | C | PVC01 | 319856743 | 319856743 | | TIER1 | 3/26/2017 20:00 |
| 60609 | C | PVC01 | 319854708 | 319854708 | | TIER1 | 3/26/2017 20:00 |

27. In both examples, the numbers of putative class members have been blacked-out. In summary, the above images explain how the data produced by FAMS *reflects skip traced telephone numbers* designated as Tier 1 or Tier 2 in Column F. This data demonstrates an identifiable universe of skip traced telephone numbers obtained from LexisNexis.

28. **Second**, the three (3) proposed classes are ascertainable because FAMS admits to "us[ing] a third-party vendor named VoApps, Inc. ("VoApps") to deliver [pre-recorded] messages" and "FAMS separately produced *several hundred* VoApps spreadsheets showing - *all of its* ["Successfully delivered"] prerecorded message campaigns." Dkt. 57, p.5.

29. FAMS's counsel produced several hundred VoApps spreadsheets showing all of VoApps' "Successfully delivered" prerecorded message campaigns, by

date, account number and most importantly, the telephone number that resulted in a successfully transmitted pre-recorded message.

30. **Third**, as depicted by FAMS's discovery responses, the universe of VoApps' "Successfully delivered" prerecorded messages is limited to pre-recorded messages sent to *cellular* telephone numbers. FAMS has admitted that it "contracted with VoApps, Inc. to deliver a message that terminates directly to a recipient's mobile [cellular] voicemail service." *See* Dkt 68-4, Def's Answer to Pl's Requests For Admission No. 111). Further, FAMS's contract with VoApps, Inc., states that VoApps "may deliver a recorded message which terminates directly to a recipient's mobile [cellular] voicemail service." *See* Dkt 68-4, Def's Answer to Pl's Requests For Admission No. 152.

31. Because VoApps is only configured to contact cellular numbers, the proposed classes are self-limited by the nature of the services performed by VoApps to instances where VoApps has reported that it (**a**) "Successfully delivered" pre-recorded messages to *cellular telephone numbers* that (**b**) were admitted skip traced by FAMS's vendor where the vendor (**c**) designated the skip trace results as Tier 1 and Tier 2 numbers.

32. FAMS has essentially created an ascertainable class because (**d**) "FAMS separately produced *several hundred* VoApps spreadsheets showing *all of its* ["Successfully delivered"] prerecorded message campaigns." Dkt. 57, p.5 (emphasis supplied). FAMS's counsel sent this data to me within two Zip files of hundreds of Excel spreadsheets entitled, "Non Fed Student Loans Pre 11.21.16.zip" and "Non Fed Student Loans Post 11.21.16.zip".

33. **Fourth**, as a general matter, the data, produced in Excel, was able to be sorted, filtered and computed to ascertain the putative classes.

34.    For example, each of the "hundreds" of Excel spreadsheet created by VoApps and sent to FAMS (and forwarded to the undersigned) were dated to reflect a particular day's worth of pre-recorded messages.

35.    For example, the below screen capture reflects spreadsheets from October 16, 2017, through December 4, 2017. 11/24/2017 is highlighted to denote the date of one of the pre-recorded messages sent to Plaintiff.

| Name | Type | Compressed size | Password ... | Size | Ratio | Date modified |
|---|---|---|---|---|---|---|
| Profile\TS_USERS (H:) › Desktop › Molinari v. FAM › Class related › Non Fed Student Loans Post 11.21.16.zip | | | | | | |
| pcvoapp 10162017_1 no.xlsx | Microsoft Excel Worksheet | 9 KB | No | 11 KB | 24% | 4/4/2018 1:55 PM |
| pcvoapp 10162017_2 no.xlsx | Microsoft Excel Worksheet | 76 KB | No | 79 KB | 4% | 4/4/2018 1:55 PM |
| pcvoapp 10242017_1 no.xlsx | Microsoft Excel Worksheet | 10 KB | No | 12 KB | 22% | 4/4/2018 1:54 PM |
| pcvoapp 10262017_1 no.xlsx | Microsoft Excel Worksheet | 10 KB | No | 13 KB | 23% | 4/4/2018 1:52 PM |
| pcvoapp 11072017_1 no.xlsx | Microsoft Excel Worksheet | 421 KB | No | 428 KB | 2% | 4/4/2018 1:50 PM |
| pcvoapp 11072017_2 no.xlsx | Microsoft Excel Worksheet | 41 KB | No | 43 KB | 6% | 4/4/2018 1:51 PM |
| pcvoapp 11082017_1 no.xlsx | Microsoft Excel Worksheet | 46 KB | No | 49 KB | 6% | 4/4/2018 1:49 PM |
| pcvoapp 11092017_1 no.xlsx | Microsoft Excel Worksheet | 451 KB | No | 459 KB | 2% | 4/4/2018 1:47 PM |
| pcvoapp 11092017_2 no.xlsx | Microsoft Excel Worksheet | 48 KB | No | 50 KB | 6% | 4/4/2018 1:48 PM |
| pcvoapp 11152017_1 no.xlsx | Microsoft Excel Worksheet | 31 KB | No | 34 KB | 9% | 4/4/2018 1:46 PM |
| pcvoapp 11162017_1 yes.xlsx | Microsoft Excel Worksheet | 39 KB | No | 41 KB | 7% | 4/4/2018 1:43 PM |
| pcvoapp 11162017_2 no.xlsx | Microsoft Excel Worksheet | 345 KB | No | 351 KB | 2% | 4/4/2018 1:45 PM |
| pcvoapp 11172017_1 no.xlsx | Microsoft Excel Worksheet | 329 KB | No | 334 KB | 2% | 4/4/2018 1:41 PM |
| pcvoapp 11202017_1 no.xlsx | Microsoft Excel Worksheet | 32 KB | No | 35 KB | 8% | 4/4/2018 1:40 PM |
| pcvoapp 11212017_1 no.xlsx | Microsoft Excel Worksheet | 26 KB | No | 29 KB | 9% | 4/4/2018 1:37 PM |
| pcvoapp 11212017_2 no.xlsx | Microsoft Excel Worksheet | 283 KB | No | 290 KB | 3% | 4/4/2018 1:38 PM |
| pcvoapp 11222016_1 no.xlsx.csv | Microsoft Excel Comma S... | 21 KB | No | 182 KB | 89% | 9/6/2018 5:15 PM |
| pcvoapp 11232016_1 no.xlsx.csv | Microsoft Excel Comma S... | 1 KB | No | 7 KB | 87% | 9/6/2018 5:14 PM |
| pcvoapp 11242017_1 yes.xlsx | Microsoft Excel Worksheet | 288 KB | No | 293 KB | 2% | 4/4/2018 12:30 PM |
| pcvoapp 11242017_2 no.xlsx | Microsoft Excel Worksheet | 28 KB | No | 31 KB | 9% | 4/4/2018 12:31 PM |
| pcvoapp 11252016_1 no.xlsx.csv | Microsoft Excel Comma S... | 6 KB | No | 46 KB | 89% | 9/6/2018 5:14 PM |
| pcvoapp 11272017_1 no.xlsx | Microsoft Excel Worksheet | 112 KB | No | 116 KB | 3% | 4/4/2018 12:27 PM |
| pcvoapp 11272017_2 no.xlsx | Microsoft Excel Worksheet | 31 KB | No | 34 KB | 8% | 4/4/2018 12:28 PM |
| pcvoapp 11282016_1 no.xlsx.csv | Microsoft Excel Comma S... | 2 KB | No | 8 KB | 84% | 9/6/2018 5:13 PM |
| pcvoapp 11292016_1 no.xlsx.csv | Microsoft Excel Comma S... | 23 KB | No | 202 KB | 89% | 9/6/2018 5:12 PM |
| pcvoapp 11292016_2 no.xlsx.csv | Microsoft Excel Comma S... | 5 KB | No | 34 KB | 88% | 9/6/2018 5:13 PM |
| pcvoapp 12042017_1 no.xlsx | Microsoft Excel Worksheet | 25 KB | No | 28 KB | 10% | 4/4/2018 12:29 PM |
| pcvoapp 12042017_2 yes.xlsx | Microsoft Excel Worksheet | 283 KB | No | 290 KB | 3% | 4/4/2018 5:35 PM |

36.    ***Fifth***, as reflected above and below, while FAMs produced hundreds of spreadsheets from the various dates that VoApps "Successfully delivered" pre-recorded messages to thousands of cellular numbers, I undertook the ministerial task of merging the various spreadsheets with little to no effort. This resulted in what I will

call a "Master Spreadsheet" which reflected *all of* VoApps' "Successfully delivered" pre-recorded messages.

37.     As reflected below, Column N reflects "Successfully delivered" pre-recorded messages to Plaintiff's cellular number and other cellular numbers on November 24, 2017:

| | A | B | C | D | H | I | L | M | N | O | P | Q | R |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3555 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320842666 | | Restricted geographical region | 502 | | | |
| 3556 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320523088 | | Successfully delivered | 200 | 2017-11-24 15:28:49 UTC | | |
| 3557 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 319451705 | | Successfully delivered | 200 | 2017-11-24 15:30:56 UTC | | |
| 3558 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320875560 | | Successfully delivered | 200 | 2017-11-24 15:29:52 UTC | | |
| 3559 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320457029 | | Unsuccessful delivery attempt | 400 | 2017-11-24 15:32:29 UTC | | |
| 3560 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320655705 | | Restricted geographical region | 502 | | | |
| 3561 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 312936609 | | Restricted geographical region | 502 | | | |
| 3562 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320688246 | | Restricted geographical region | 502 | | | |
| 3563 | <services><ddvm/></services> | 7082288132 | 5054 | | 866-330-2703 | | 319856448 | | Successfully delivered | 200 | 2017-11-24 15:34:12 UTC | | |
| 3564 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320672088 | | Successfully delivered | 200 | 2017-11-24 15:29:48 UTC | | |
| 3565 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320657900 | | Unsuccessful delivery attempt | 400 | 2017-11-24 15:33:14 UTC | | |
| 3566 | <services><ddvm/></services> | | 5054 | | 866-330-2703 | | 320524142 | | Successfully delivered | 200 | 2017-11-24 15:29:41 UTC | | |

38.     While the unique telephone numbers of class members listed in Column B of the Master Spreadsheet have been blacked-out, each distinct account identification number is reflected in Column L.

39.     For example, the account identification number associated with the "Successfully delivered" pre-recorded message on 11/24/2017 to Plaintiff is listed in Column L as 319856448.

40.     ***Sixth***, as reflected above, Column N in the Master Spreadsheet also reflects other designations, such as "Unsuccessful delivery attempt" or "Restricted geographic region."

41.     Each of these designations can be ministerially sorted and excluded by Excel.

42.     For example, the below image from the Master Spreadsheet reflects all ten (10) "Successfully delivered" messages to Plaintiff.

| | A | B | C | H | L | N | O | P |
|---|---|---|---|---|---|---|---|---|
| 7954 | <services><ddvm/></services> | | A13KACEN021315J0JW | 1-888-681-4326 | 315057889 | Successfully delivered | 200 | 2016-01-22 17:26:25 UTC |
| 7955 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-11-23 19:49:04 UTC |
| 7956 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-11-24 19:29:01 UTC |
| 7957 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-11-25 19:23:00 UTC |
| 7958 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-11-27 20:15:24 UTC |
| 7959 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-11-30 19:27:18 UTC |
| 7960 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-01 23:04:46 UTC |
| 7961 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-02 20:04:44 UTC |
| 7962 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-03 22:36:42 UTC |
| 7963 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-04 18:57:10 UTC |
| 7964 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-07 23:00:04 UTC |
| 7965 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-08 22:35:02 UTC |
| 7966 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-09 23:19:00 UTC |
| 7967 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-10 21:33:44 UTC |
| 7968 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-11 18:26:52 UTC |
| 7969 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-14 21:32:16 UTC |
| 7970 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-15 20:30:44 UTC |
| 7971 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-16 19:14:42 UTC |
| 7972 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-17 17:42:40 UTC |
| 7973 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-18 17:47:08 UTC |
| 7974 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-21 19:09:32 UTC |
| 7975 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-21 19:09:32 UTC |
| 7976 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-23 17:18:28 UTC |
| 7977 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-24 17:48:56 UTC |
| 7978 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-29 17:27:46 UTC |
| 7979 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-30 17:59:14 UTC |
| 7980 | <services><ddvm/></services> | | 1001 | 1-866-428-7958 | 315320782 | Successfully delivered | 200 | 2015-12-31 17:42:12 UTC |
| 7981 | <services><ddvm/></services> | | A13KACEN021315J0JW | 1-888-681-4326 | 315320782 | Successfully delivered | 200 | 2016-01-13 18:16:14 UTC |
| 7982 | <services><ddvm/></services> | | A13KACEN021315J0JW | 1-888-681-4326 | 316999625 | Successfully delivered | 200 | 2016-01-25 18:32:49 UTC |
| 7983 | <services><ddvm/></services> | | A13KACEN021315J0JW | 1-888-681-4326 | 316999625 | Successfully delivered | 200 | 2016-01-26 17:43:47 UTC |
| 7984 | <services><ddvm/></services> | 7082288132 | A13KACEN021315J0JW | 1-888-681-4326 | 314481567 | Successfully delivered | 200 | 2015-11-19 19:45:41 UTC |
| 7985 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-20 19:02:40 UTC |
| 7986 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-23 19:48:33 UTC |
| 7987 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-24 19:55:32 UTC |
| 7988 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-25 18:17:00 UTC |
| 7989 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-27 20:34:24 UTC |
| 7990 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-30 19:33:18 UTC |
| 7991 | <services><ddvm/></services> | 7082288132 | 5055 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-11-16 21:07:30 UTC |
| 7992 | <services><ddvm/></services> | 7082288132 | 5054 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-11-24 15:34:12 UTC |
| 7993 | <services><ddvm/></services> | 7082288132 | 5054 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-12-04 18:47:45 UTC |
| 7994 | <services><ddvm/></services> | | 5054 | 866-330-2703 | 320522606 | Successfully delivered | 200 | 2017-11-09 20:35:55 UTC |
| 7995 | <services><ddvm/></services> | | 5054 | 866-330-2703 | 320522606 | Successfully delivered | 200 | 2017-11-17 15:00:47 UTC |
| 7996 | <services><ddvm/></services> | | 5054 | 866-330-2703 | 320522606 | Successfully delivered | 200 | 2017-11-24 15:30:53 UTC |
| 7997 | <services><ddvm/></services> | | 5054 | 866-330-2703 | 320522606 | Successfully delivered | 200 | 2017-12-04 18:28:40 UTC |

43. The above image was created after Column N of the Master Spreadsheet was sorted to *only* reflect "Successfully delivered" messages.

44. **Seventh**, the accounts listed above and below the "Successfully delivered" pre-recorded messages to Plaintiff's cellular number demonstrate how the data can be ministerially sorted to reflect both high and low numbers of "Successfully delivered" pre-recorded messages to putative class members.

45. For example, just above the messages sent to Plaintiff, Column N reflects that Account no. 315320782 received twenty-seven (27) "Successfully delivered" pre-recorded messages between November 23, 2015 and January 26, 2016. Similarly, just

below Plaintiff, Account no. 320522606, reflects five (5) "Successfully delivered" pre-recorded messages between November 9, 2017 and December 4, 2017.

46.     After combining VoApps' spreadsheets of daily reports of "Successfully delivered" pre-recorded message to create the Master Spreadsheet, the below screen captures shows how Plaintiff's cellular number (in Column B) has been *filtered* to identify the ten (10) "Successfully delivered" pre-recorded messages to his nummber:

| | A | B | C | H | L | N | O | P |
|---|---|---|---|---|---|---|---|---|
| 1 | services | phone_numb | msg_id | caller_id | local_id | voapps_result | voapps_cod | voapps_timestamp |
| 7984 | <services><ddvm/></services> | 7082288132 | A13KACEN021315j0JW | 1-888-681-4326 | 314481567 | Successfully delivered | 200 | 2015-11-19 19:45:41 UTC |
| 7985 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-20 19:02:40 UTC |
| 7986 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-23 19:48:33 UTC |
| 7987 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-24 19:55:32 UTC |
| 7988 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-25 18:17:00 UTC |
| 7989 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-27 20:34:24 UTC |
| 7990 | <services><ddvm/></services> | 7082288132 | 1001 | 1-866-428-7958 | 314481567 | Successfully delivered | 200 | 2015-11-30 19:33:18 UTC |
| 7991 | <services><ddvm/></services> | 7082288132 | 5055 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-11-16 21:07:30 UTC |
| 7992 | <services><ddvm/></services> | 7082288132 | 5054 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-11-24 15:34:12 UTC |
| 7993 | <services><ddvm/></services> | 7082288132 | 5054 | 866-330-2703 | 319856448 | Successfully delivered | 200 | 2017-12-04 18:47:45 UTC |

47.     Column L, "local_id", lists the two account numbers associated with the debtor in question (Plaintiff's wife).

48.     Plaintiff received three (3) pre-recorded messages in relation to Account no. 319856448 and seven (7) in relation to Account no. 314481567 (the earlier placement of the same debt).

49.     As reflected in the screen capture shown on the prior page, the same data exists *relative to each cellular number that VoApps attempted to message.*

50.     The **eighth** step involved performing a ministerial task of *merging* spreadsheets of (**a**) VoApps' data of "Successfully delivered" pre-recorded messages with (**b**) spreadsheet data of skip traced Tier 1 and Tier 2 numbers that FAMS obtained from LexisNexis.

51.     The below screen capture reflects how Plaintiff's cellular number appears after (**a**) FAMS's designations of Tier 1 and Tier 2 numbers were added in Column D of the Master Spreadsheet and this data was filtered to (**b**) only list telephone numbers

that were designated as "Tier1" and Tier2ED" after which these numbers were (**c**) filtered to only list "Successfully delivered" pre-recorded messages:

| A | B | C | D | E | I | J | M | N | O | P | Q |
|---|---|---|---|---|---|---|---|---|---|---|---|
| \<services: | | 1001 | TIER1 | | 1-866-428-7958 | | 315320782 | | Successfully delivered | 200 | 2015-12-21 19:09:32 UTC |
| \<services: | | 1001 | TIER1 | | 1-866-428-7958 | | 315320782 | | Successfully delivered | 200 | 2015-12-23 17:18:28 UTC |
| \<services: | 7082288132 | 1001 | TIER1 | | 1-866-428-7958 | | 314481567 | | Successfully delivered | 200 | 2015-11-20 19:02:40 UTC |
| \<services: | 7082288132 | 1001 | TIER1 | | 1-866-428-7958 | | 314481567 | | Successfully delivered | 200 | 2015-11-23 19:48:33 UTC |
| \<services: | | 5054 | TIER2ED | | 866-330-2703 | | 320522606 | | Successfully delivered | 200 | 2017-11-17 15:00:47 UTC |
| \<services: | | 5054 | TIER2ED | | 866-330-2703 | | 320522606 | | Successfully delivered | 200 | 2017-11-24 15:30:53 UTC |
| \<services: | | A13KACEN021315J0JW | TIER1 | | 1-888-681-4326 | | 316216327 | | Successfully delivered | 200 | 2016-01-04 17:46:04 UTC |
| \<services: | | A13KACEN021315J0JW | TIER1 | | 1-888-681-4326 | | 316216327 | | Successfully delivered | 200 | 2016-01-06 17:52:58 UTC |
| \<services: | | 1002 | TIER1 | | 1-866-583-2126 | | 314781020 | | Successfully delivered | 200 | 2015-11-25 18:04:00 UTC |
| \<services: | | 1002 | TIER2ED | | 1-866-583-2126 | | 314781020 | | Successfully delivered | 200 | 2015-11-27 19:27:24 UTC |

Again, telephone numbers of the putative class members have been blacked-out.

52. As reflected above, I was able to create a Master spreadsheet to reflect "Successfully delivered" pre-recorded voice messages to reflect the universe of Tier 1 and Tier 2 numbers.

53. Performing this ministerial task ultimately *reduced* the total number of "Successfully delivered" pre-recorded voice messages.

54. The ***ninth*** step involved the ministerial task of filtering the data provided by FAMS and VoApps to only reflect *cellular numbers with Northern District of Illinois based area codes* - 224, 312, 331, 630, 708, 773, 779, 815 and 847.

55. The spreadsheets produced by VoApps allowed me to calculate the total number of "Successfully delivered" pre-recorded messages to each unique Tier 1 and Tier 2 designated telephone number.

56. A total of unique 1,287 Northern District of Illinois based cellular numbers are reflected in the data. This figure reflects the *number of class members*, not the total number of non-consensual "Successfully delivered" pre-recorded messages to skip traced telephone numbers.

57. The below images reflects the six (6) prerecorded messages where the form message is referred to as "msg_id" "1001". The numbers of putative class

members are blacked-out, but the total count for each "msg_id" "1001" send can be linked by a unique Account No. (Column M).



60. The above image highlights how the data provided by FAMS and VoApps can be used to locate Tier 1 and Tier 2 numbers from the data maintained by VoApps *to reflect* the universe of Tier 1 and Tier 2 that were sent successful voice messages.

61. The below image shows Plaintiff in Column A. This image reflects the number count of each type of the four (4) "msg_id['s]" received by Plaintiff and a handful of (redacted) Tier 1 or Tier 2 skip traced class members:



62. An examination of FAMS's records, in conjunction with records produced by VoApps, reflect that in relation to the four (4) types of messages that VoApps

"Successfully delivered" to Plaintiff, VoApps "Successfully delivered" **12,374** pre-recorded messages numbers cellular numbers that were previously designated by FAMS as skip traced Tier 1 or Tier 2 numbers. The following number counts are reflected in the spreadsheets produced by VoApps and combined with FAMS' lists of skip traced Tier 1 or Tier 2 numbers:

- 9,221 messages to Tier 1 or Tier 2 numbers reflecting "msg_id" "1001";
- 5,054 messages to Tier 1 or Tier 2 numbers reflecting "msg_id" "5054";
- 21 messages to Tier 1 or Tier 2 numbers reflecting "msg_id" "5055";
- 2,211 messages to Tier 1 or Tier 2 numbers reflecting "msg_id" ending in "JOJW".

63.     Finally, by expanding the data to include all of the "msg_id['s]" (not just the four (4) sent to Plaintiff), the total number of successful messages to each Tier 1 or Tier 2 skip class member reflects **15,560** individual, *non-consensual* pre-recorded messages.

64.     Further, This data can be filtered to reflect  the following data-points:

- the highest number of "Successfully delivered" pre-recorded messages, 67 to telephone number designated as 630-854-XXXX;

- the average number of pre-recorded messages is12.09013;

- the median number of pre-recorded messages is 6; and

- lastly, the data be sorted to reflect how many class members received a specific number of "Successfully delivered" pre-recorded messages.

65.     As reflected below, 243 class members received at least one pre-recorded message, 148 received at least two messages and 74 received at least three messages:

| Total Number of Successful Messages | How Many Class Members Received the Number of Messages in the Left Column |
|---|---|
| 1 | 243 |
| 2 | 148 |
| 3 | 74 |

| | |
|---|---|
| 4 | 63 |
| 5 | 47 |
| 6 | 94 |
| 7 | 52 |
| 8 | 28 |
| 9 | 6 |
| 10  (# of messages received by Plaintiff) | 14 (# of members, inc. Plaintiff) |
| 11 | 10 |
| 12 | 19 |
| 13 | 23 |
| 14 | 10 |
| 15 | 27 |
| 16 | 24 |
| 17 | 18 |
| 18 | 10 |
| 19 | 8 |
| 20 | 13 |
| 21 | 15 |
| 22 | 20 |
| 23 | 24 |
| 24 | 21 |
| 25 | 21 |
| 26 | 40 |
| 27 | 43 |
| 28 | 35 |
| 29 | 17 |
| 30 | 8 |
| 31 | 14 |
| 32 | 13 |
| 33 | 12 |
| 34 | 9 |
| 35 | 12 |
| 36 | 5 |
| 37 | 3 |
| 38 | 3 |
| 39 | 5 |
| 40 | 5 |
| 41 | 3 |
| 42 | 5 |
| 43 | 3 |
| 44 | 3 |

| | |
|---|---|
| 45 | 3 |
| 46 | 4 |
| 47 | 1 |
| 52 | 1 |
| 53 | 1 |
| 54 | 2 |
| 59 | 2 |
| 61 | 2 |
| 67 | 1 |
| | **Total # of Members, 1287** |

66. There are fourteen (14) class members who, counting Plaintiff, received ten (10) "Successfully delivered" pre-recorded messages (numbers have been truncated to protect the identification of class members):

| | A | B |
|---|---|---|
| 756 | 8.16E+09 | 9 |
| 757 | 2.245E+09 | 10 |
| 758 | 2.248E+09 | 10 |
| 759 | 6.307E+09 | 10 |
| 760 | 6.308E+09 | 10 |
| 761 | 7.082E+09 | 10 |
| 762 | 7.085E+09 | 10 |
| 763 | 7.086E+09 | 10 |
| 764 | 7.088E+09 | 10 |
| 765 | 7.088E+09 | 10 |
| 766 | 7.736E+09 | 10 |
| 767 | 7.736E+09 | 10 |
| 768 | 7.739E+09 | 10 |
| 769 | 7.74E+09 | 10 |
| 770 | 8.472E+09 | 10 |
| 771 | 3.13E+09 | 11 |

67. The data provided by FAMS in the form of (a) the number of Tier 1 and Tier 2 skip traced numbers obtained from LexisNexis and (b) VoApps' designated of "Successfully delivered" pre-recorded messages to cellular numbers reveals that a total

of **15,560** non-consensual pre-recorded messages were "Successfully delivered" to the sub-set of cellular numbers that were skip traced from LexisNexis.

68.    This total reflects all types of pre-recorded messages that are identified in VoApps' spreadsheets and not just the four (4) messages received by Plaintiff.

69.    As reflected by the below screen capture, on June 13, 2018 and May 10, 2019, I emailed three voicemail recording to defense counsel where the three voicemail records has been forwarded to me by Mr. Molinari. These recordings reflect the three pre-recorded voice messages that VoApps delivered to Plaintiff on the dates reflected in the Complaint:



70.    On July 24, 2018, a paralegal working for Defendant produced to recordings of voice recordings (PVC Frontline.wav and PVC PPA.wav) which are identical to the recordings that I produced to defense counsel on June 13, 2018. See below screen capture of the transmission email:



71.    In my email of June 13,  2018, as reflected below, I informed defense counsel that I believed that Defendant using "FAMS" violated 47 C.F.R. 64.1200(b)(1):



(Part 1 of 3).

> I just wanted to drive this point home because we didn't spend any time discussing it yesterday.
>
> The improper usage of FAM's name, in addition to leaving messages on the voicemail of a wrong party, are the specific reasons that I brought this case. Again VoAPPs' Petition touts that it's method of message delivery "[d]oes not run the risk of human error in dialing or mistakes made by human dialer in delivering exactly the message required to be delivered, to ensure compliance with applicable laws including the fair

(Part 2 of 3).

> FAMS's use of VoAPPs in conjunction with its use of live fox caused improper message is to be delivered to the plaintiff - and most likely others, in violation of the FDCPA.
>
> I'll send you the fourth circuit case which discusses why a similar system violated the TCPA. In light of all these factors I think my demand of $85,000 is rather generous to your client.
>
> Thanks,
>
> James
>
> **James C. Vlahakis**
> Attorney at Law
> Atlas Consumer Law – a division of Sulaiman Law Group, Ltd.

(Part 3 of 3).

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on September 22, 2020.**

/s/ James C. Vlahakis