**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, | |
| Plaintiff, | 18-cv-01526 |
| v. | Honorable Judge Sara L. Ellis |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS CERTIFICATION AND PROPOSED SETTLEMENT**

NOW COME Plaintiff RICHARD MOLINARI ("Plaintiff"), by and through his counsel James C. Vlahakis, and Defendant FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("Defendant" or "FAMS"), by and through its counsel Jonathan K. Aust, (collectively the "Parties") and jointly moving for an order granting preliminary approval of a proposed Class Action Settlement Agreement (Exhibit A), submit the following:

**I. Introduction and Brief Summary of Relevant Facts**

1.     Plaintiff, a resident of this judicial district, filed a putative Class Action Complaint (the "Complaint") against FAMS pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA")[1].

2.     Plaintiff alleges that Defendant sent pre-recorded message to Plaintiff's personal cellular telephone number without his consent. Dkt. 1, Complaint, ¶¶ 31-33, 39, 44. In particular, Paragraph 17 of the Complaint alleges that "Section (b)(1)(A)(iii) of

---

[1] The Complaint, attached as Exhibit C, alleges that FAMS is debt collector as defined by Section 1692a(6) of the FDCPA because it regularly collects defaulted debts through letters and telephone calls. Dkt. 1, ¶¶ 6, 10.

1

the TCPA makes it unlawful to make any call to cellular telephone using any 'automated telephone dialing system' ('ATDS') or an 'artificial or prerecorded voice' message without the consent of the person being called."

3.     Defendant caused the following pre-recorded messages to be sent to Plaintiff's cellular phone in an attempt to collect a debt allegedly owed by Plaintiff's wife:

- Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.
- Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Complaint, ¶¶ 40, 41. None of the messages included Defendant's full legal name. *Id.*

4.     The Complaint alleges that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by sending non-consensual pre-recorded messages to Plaintiff's cellular phone and the cellular numbers of associated with other Illinois residents.

5.     Count IV of the Complaint seeks classwide relief, alleging that FAMS violated Section 227(b)(1)(A)(iii) by sending the same or similar non-consensual pre-recorded messages to at least forty (40) cellular numbers assigned to Illinois based area codes. Complaint, Count IV, ¶¶ 97-98.[2]

6.     Just like with Plaintiff, none of the pre-recorded messages sent to putative class members included Defendant's full legal name.

---

[2] The Parties are not moving to certify Count II of the Complaint which alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used an automatic telephone dialing system ("ATDS") to call the cellular telephone numbers of putative class members without their consent. To clarify the scope of this Motion, Plaintiff is not seeking relief relative to Count I which similarly alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used an automatic telephone dialing system to call Plaintiff's cellular telephone. Similarly, Plaintiff is not seeking class relief relative to Count III of the Complaint asserts individual claims for non-consensual pre-recorded messages.

7. Discovery produced by Defendant documents that FAMS's vendor "successfully" delivered ten (10) pre-recorded messages to the voice mailbox of Plaintiff's cellular telephone number. As detailed below, spreadsheets produced by Defendant (by and through its pre-recorded voice-mail vendor) demonstrate that well over forty persons with Illinois area codes were recipients of the same or similar non-consensual pre-recorded messages as were received by Plaintiff.

8. Counts V and VI (brought as individual and class claims) assert that FAMS's phone calls and pre-recorded messages violated various provisions of the FDCPA. Plaintiff is seeking to certify Count VI on the basis that FAMS's pre-recorded messages did not identify its full legal name. Plaintiff contends that FAMS's use of its truncated name violates § 1692e(14) of the FDCPA. *See, e.g., Catencamp v. Cendant Timeshare Resort Grp. Cons. Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006) ("unsophisticated readers do not see through acronyms when the creditor's full name is missing."). Defendant denies that such action states a claim let alone violates the FDCPA.

9. Federal Rule of Civil Procedure ("FRCP") 23(e) states that the "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." As discussed below, the Parties have engaged in arms-length negotiations and submit that the proposed settlement terms satisfy all of the required elements of FRCP 23. As explained below, based upon FAMS's use to pre-recorded messages, the Parties seek to certify two distinct, but related, class definitions involving the class-based TCPA claim in Count IV and the class-based FDCPA claims in Count VI.

## II. Procedural Background Leading to the Parties' Proposed Motion to Certify

10. FAMS filed an Answer, denying that it violated the TCPA and FDCPA. Dkt. 16. FAMS has also asserted various affirmative defenses. *Id.* Thereafter, the Parties have

engaged in written and oral discovery and class certification motion practice to stake out their respective positions. Dkts. 18-19, 25, 29, 31, 34-35, 39, 41, 50, 50-1, 52-53, 57, 68, 69, 75, 81. The Parties attempted (unsuccessfully) to resolve the Litigation with the assistance of Magistrate Judge Jeffrey I. Cummings. Dkts. 36-37, 43.

11. Plaintiff filed a motion to certify on October 19, 2019. Dkt. 50, 51. The Court denied Plaintiff's motion without prejudice. Dkt. 83, 84 (*Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020)).

12. Thereafter, Plaintiff filed a *renewed* Motion for Class Certification on September 14, 2020. Dkt. 90. That motion was denied on August 17, 2020. Dkt. 114.

13. Pursuant to Count IV of the Complaint, Plaintiff has proposed to certify a class of Illinois based cellular telephone users who received non-consensual pre-recorded voice messages. The proposed class is defined to include cellular telephone numbers associated with the Northern District of Illinois: 224, 312, 331, 630, 708, 773, 779, 815 and 847. Dkt. 93, p. 25.

14. Defendant filed and the Court granted extensions of time for Defendant to respond to Plaintiff's renewed certification motion. Dkts. 100, 102-03, 105. On November 11, 2019, the Parties moved to stay briefing to allow the Parties to negotiate a class-based settlement and the Court granted the Parties' motion. Dkt. 97, 99.

15. During the course of settlement discussions, Parties expanded the proposed pre-recorded message class to include *all* Illinois area codes. In addition to the area codes noted in the above paragraph, the Parties expanded the proposed class to include area codes 309, 217 and 618. On March 22, 2021, the Parties alerted the Court that they has reached a proposed class action settlement and the Court struck the remaining class certification deadlines. Dkts. 106, 107.

16. The Parties have reached out to KCC Class Action Services LLC ("KCC" and/or "Administrator") to assist them in identifying potential class members. See, e.g., Dkt. 108-09, 112. In particular, counsel for Plaintiff worked with employees of KCC to expand on his prior efforts to cull through Excel spreadsheets that were produced by FAMS in discovery. Simply stated, FAMS produced Excel spreadsheets that identified residential and cellular telephone numbers that FAMS had obtained from a skip-trace vendor as well as spreadsheets provided by VoApps which reflected "successfully" transmitted pre-recorded messages that VoApps sent to unique Illinois based *cellular telephone* numbers.[3]

17. The data reflects that from November 17, 2015 to December 4, 2017, the time period of the proposed class definition, VoApps "successfully" delivered 16,352 pre-recorded messages to 1,419 unique cellular numbers with Illinois based area codes.

### III. Summary of Relevant Facts

18. The Parties recognize that the Court is familiar with the facts of this Litigation as set forth in the Court's prior Order, Dkt. 84, *Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020). In relevant part, the Court described this Litigation as involving the following facts:

> FAMS also used a third-party vendor, VoApps, Inc. ("VoApps"), to deliver several direct-to-voicemail messages to [Molinari's cellular telephone] number. Molinari contends that these actions, which FAMS undertook in an effort to collect on a student loan debt allegedly owed by Molinari's wife, violated the [TCPA]; [and] the [FDCPA].
>
> ***
>
> FAMS uses a third party, LexisNexis, to obtain potentially updated telephone numbers for debtors it is trying to reach.
>
> The process (simplified for purposes of this opinion) is as follows. FAMS sends a batch of debtors' demographic information to LexisNexis. Based on this information, LexisNexis identifies and collects telephone numbers

---

[3] The record reflects that VoApps' method of transmitting pre-recorded messages does not apply to residential numbers. Dkt.

for these debtors by "skip tracing," which is generally a process "whereby companies search credit histories and other public databases to obtain contact information for debtors listed on loan applications." LexisNexis then sells the telephone numbers to FAMS. LexisNexis categorizes a skip-traced phone number into one of two tiers based on its "confidence" that the number is the identified debtor's phone number, with Tier 1 indicating a higher level of confidence than Tier 2. FAMS can determine whether it obtained a phone number via skip trace based on whether its records designate the number as "Tier 1" or "Tier 2."

FAMS believes that the Tier 1 and Tier 2 phone numbers it purchases from LexisNexis correspond to the debtors it wants to contact. Nonetheless, the system is not perfect: while speaking to the user of a phone number obtained from LexisNexis, an FAMS employee may discover that the user is not the debtor he or she is trying to reach. In this case, FAMS requires the employee on the call to designate or otherwise document the phone number as a "bad" number. When FAMS determines that a phone number is "bad," it redacts the first six digits of the phone number. This signals to someone who subsequently views the number that the number should not be used, and it ensures that FAMS' system does not reload the number again if the same number is later obtained from LexisNexis.

FAMS contacts the phone numbers it receives from LexisNexis [by] contract[ing] with VoApps for a service called DirectDROP Voicemail ("DDVM"), whereby VoApps delivers pre-recorded messages that terminate directly to a recipient's mobile voicemail service. VoApps' DDVM technology is intended to "drop" a pre-recorded message directly into a targeted individual's voicemail platform without "dialing the target's cell phone number or otherwise causing her handheld device to ring." Although the targeted individual "receive[s] a message-waiting notification as though she received a normal voicemail," VoApps delivers the message to the "target's cellular device without directly using the cellular network."

In March 2017, Navient placed a student loan debt for collection with FAMS. The debt belonged to Nicolette Campbell, which is the maiden name of Molinari's wife. LexisNexis performed a skip trace on "Nicolette E. Campbell" and identified a phone number ending in 8132 (the "8132 Number") as Campbell's number. FAMS obtained the 8132 Number (which LexisNexis had designated as "Tier 1") from LexisNexis, believing it to be Campbell's phone number.

On November 16, 2017, FAMS used the LiveVox HCI system to call the 8132 Number in an effort to collect payment from Campbell on her debt. The same day, VoApps sent a pre-recorded message using its DDVM technology to the 8132 Number's voicemail box.

*** 

Over the next two-plus months, FAMS called the 8132 Number 100 more times using the LiveVox HCI system. Meanwhile, VoApps continued to "drop" pre-recorded messages to the 8132 Number's voicemail box. On

November 24 and December 4, 2017, VoApps sent the following message to the 8132 Number's voicemail box: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you." VoApps sent approximately seven other pre-recorded voicemail messages to the 8132 Number's voicemail box, but the record does not show the content of these messages or the dates they were sent.

The 8132 Number, however, is not Campbell's telephone number; it is the cellular telephone number of Campbell's husband, Molinari, who does not owe a debt to Navient. Molinari testified that FAMS' calls and messages caused him to experience headaches, chest pains, anxiety, and marital problems; disrupted his daily life by distracting him while working, driving, and sleeping; and invaded his privacy. On or around February 6, 2018, Molinari spoke with a FAMS employee over the phone and told the employee to stop calling him. After that conversation, FAMS designated the 8132 Number as "bad" and stopped contacting it.

***

During discovery, FAMS produced spreadsheets that identified the phone numbers it obtained via LexisNexis' skip-trace process (the "FAMS Spreadsheets"). FAMS contends that these spreadsheets include not only cellular telephone numbers, but landline and VoIP phone numbers as well. FAMS also produced spreadsheets that it obtained from VoApps (the "VoApps Spreadsheets"). These spreadsheets show FAMS' pre-recorded message campaigns with VoApps and, particularly, whether VoApps successfully delivered its pre-recorded messages to certain [cellular] telephone numbers.

Dkt. 84, 2020 U.S. Dist. LEXIS 134045 at *1-*7 (internal citations and citations to cases omitted).

19.     Thereafter, the Court examined the elements required by FRCP 23(a) and 23(b) and denied Plaintiff's certification motion (without prejudice) by finding that Plaintiff failed to sufficiently demonstrate numerosity, commonality and adequacy. *Id.* at *11-*23. This Joint Motion addresses these issues in addition to identifying the remaining elements of Rule 23(a) and Rule 23(b). Plaintiff argues that it is possible to ascertain "successfully" transmitted pre-recorded messages to cellular telephone numbers that were obtained from skip-trace efforts – demonstrating – for the purposes of settlement, that consent was lacking.

**IV. Summary of Settlement Negotiations**

20.     After months of arms-length settlement discussions (including previously unsuccessful negotiations lead by Magistrate Judge Cummings where Plaintiff and representatives of Defendant and Defendant's insurer were present, see Dkt. 43), the Parties have documented settlement terms to completely resolve the Litigation as a proposed class action. The Parties' proposed Settlement Agreement is attached as Exhibit A. As discussed below, the proposed settlement terms are just and equitable. [4]

**V. Standard of Review as Applied by FRCP 23**

21.     "Federal courts naturally favor the settlement of class action litigation". *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In order to certify a class in accordance with Rule 23(a), a court must conduct a rigorous analysis by a preponderance of the evidence that the putative class meets the criteria set forth by FRCP 23(a). *See also, Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012). The elements of FRCP 23(a) require the moving party or parties to sufficiently demonstrate numerosity, commonality, typicality and adequacy. As reflected herein and in Plaintiff's Memorandum of Law in Support of the Parties' Joint Motion ("Memo. of Law"), the proposed class action settlement satisfies FRCP 23(a)(1)-(4).

22.     A proposed class should be "ascertainable," meaning that the class is clearly defined, and its parameters is based on objective criteria. *Mullins v. Direct Digital,*

---

[4] As reflected by the Parties' proposed Settlement Agreement, Defendant (and its insurer) desire to settle the Litigation to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims that have been or could have been asserted by Plaintiff and the Proposed Class against Defendant in the Litigation.  Similarly, Plaintiff and his counsel (on behalf of themselves and absent class members) desire to settle the Litigation on just and reasonable terms to benefit the proposed putative Class Members at this juncture rather than delay the resolution of this Litigation or risk a potentially adverse ruling. Counsel for the Parties have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

*LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As discussed herein, the proposed classes are ascertainable. See also, Dkt. 122, Pl's Memo. of Law, Section V-D (pp. 14-15).

23.     Finally, the Court must also find that the Parties have satisfied FRCP 23(b)(3) which states that "a class action may be maintained if ... (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b).[5]

24.     Further, before a court can approve a class settlement, it must determine whether "the class has been adequately represented during the settlement talks, a conclusion which will not follow automatically from a finding of adequacy for litigation purposes." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.21 (7th Cir. 1979) (quotation omitted).  As discussed below, the proposed settlement terms are adequate.

**VI. Settlement Terms**

> **A.**     <u>**The Proposed Settlement Satisfies the Elements of FRCP 23**</u>

25.     As reflected herein and in Plaintiff's Memo. of Law, the terms of the proposed settlement satisfied the elements of numerosity, commonality and typicality as required by FRCP 23(a)(1)-(3).  Further, as explained below, in accordance with FRCP 23(a)(4), the Parties submit that Plaintiff is an adequate class representative and that attorney James C. Vlahakis should be appointed as class counsel.

> **B.**     The <u>**Class Definition Satisfies Numerosity and Ascertainability**</u>

26.     The Parties have identified a total of 1,419 potential class members where this figure represents 1,419 persons with unique Illinois based area codes who were

---

[5] Rule 23(b)(3) "was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

sent one or more pre-recorded messages by Defendant's vendor for the purposes of collecting a debt.  Accordingly, Plaintiff contends (and FAMS does not oppose for the purpose of this Motion) the class is sufficiently numerous, and ascertainable. See FRCP 23(a)(1).  See also, Dkt. 122, Pl's Memo. of Law, Section V-A-D, (pp. 10-15).

27.    For purposes of effectuating this settlement, the Parties request that this Court preliminarily and conditionally certify a **TCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

28.    The proposed Class Members are ascertainable where the combined records of Defendant and VoApps identify 16,352 "successfully" transmitted pre-recorded messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017. *Id.* at p. 13-14.

29.    For purposes of effectuating this settlement, the Parties request that this Court preliminarily and conditionally certify a **FDCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

30.    The Parties agreed that spreadsheets produced by Defendant and VoApps have been analyzed and that the spreadsheets identify 1,328 "successfully" transmitted pre-recorded messages sent to 364 distinct cellular phone numbers between December 4, 2016 and December 4, 2017. This figure has been duplicated to only show one message to each unique cellular telephone number. Excluded from the Proposed Classes

are: (a) Class members who timely exclude themselves from the Settlement Agreement; (b) employees of Defendant and its vendor VoApps, Inc.; (c) employees of the Court and the Clerk's Office; and (d) employees of the Administrator; (e) employees of proposed class counsel; (f) any person who is already subject to an existing release; and (g) any person who has filed for bankruptcy protection under Title 11 of the United States Code as of the date of the Conditional Certification Order.

### C.   **Proposed Form of Notice to Potential Class Members**

31.     The Court acts as a fiduciary of the class. *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002). *See also, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) ("It is clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice."). When a class is certified through settlement, due process and Federal Rule of Civil Procedure 23 require that the presiding court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012). Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).

32.     Fed. R. Civ. P. 23(c)(2)(B) provides that notice may take the form of "United States mail, electronic means, or other appropriate means." The Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018

Amendments to Rule 23(c)(2). The following Paragraphs describe the form of the Notice that will be provided by the Administrator to potential Class Members.

33.     There will be three (3) forms of notice: (a) post-card; (b) internet (involving a Long-Form notice); and (c) text based.

34.     ***Post Card Notice***. No later than thirty (30) days after the entry of the Conditional Certification Order, the Administrator mail a Post-Card based Notice to the Class Members at the most current address as determined by the Administrator. (Exhibit B-2). The Post-Card Notice will request address corrections. If any Post-Card Notice is returned with a new address, a new Post-Card Notice will be re-mailed to the new address. The Administrator will use its best efforts to provide prompt re-sending of any returned Post-Card Notices.

35.     ***Text Message Notice***. The Administrator will also send a short-form/Text-Based notice to the cellular telephone number of the identified Class Members where the Text Message Notice will states as follows:

> "You are receiving this court-approved text message because you may be entitled to receive settlement funds as part of a proposed class action settlement that has received preliminary approval from a court. Click on the www.FAMStextmessageclassaction.com to take you to a website that explains the details of the proposed settlement."[6]

36.     Each Text-Based Notice will refer to a dedicated website for more information and the website will display a link to a more detailed Long-Form Notice.

37.     Notice to potential class members by text messages is become commonplace as courts and attorneys respond to modern forms of communication. *Waller v. AFNI, Inc.*, 2020 U.S. Dist. LEXIS 212570, *15-*17, 2020 WL 6694298 (C.D.

---

[6] A similar text-based notice was approved by the Honorable Amy St. Eve in the case of *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 352 (N.D. Ill. 2010).

Ill. Nov. 13, 2020). "[M]any Americans use text messages as their primary contact and access text messages much more than they would email or regular mail. "The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly)." *Yates v. Checkers Drive-in Rest., Inc.*, 2020 U.S. Dist. LEXIS 205241, *9-*10, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020) (quoting *Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 U.S. Dist. LEXIS 74685, *12, 2020 WL 2042323 (S.D. Tex. Apr. 28, 2020)). Sending Text-Based notice to persons who received unsolicited text messages is entirely proper. As the court in *Yates* observed:

> The Class List of 1,890,005 unique cellular telephone numbers contains almost the entire universe of class members. Moreover, text messages are well-suited to notifying potential class members, since the alleged violations here arose out of Defendants' text messages in response to class members' texted request for a free hamburger. The potential class members are thus particularly comfortable communicating by text message and this form of communication may be more likely to effectuate notice than communicating by email.

*Yates*, 2020 U.S. Dist. LEXIS 205241 at *12-*13, *17.

38.     Courts that have approved text notice have recognized that cell phone are the "primary, point of contact for the majority of the U.S. population." *Vega v. Point Security, LLC*, 2017 U.S. Dist. LEXIS 148105, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017). Text message based notice comports with the realities of "modern society". *See also*, *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. Feb. 19, 2020) ("providing notice via text message in addition to other traditional notice methods will almost always be more appropriate in modern society.").[7]

---

[7] Another court recently described why text-based notice is more effective than e-mail notice:

39.     Notably, Rule 23(c)(2)(B) directs the Court to issue the best notice that is practicable under the circumstances, and the Notes of the Advisory Committee on the 2018 Amendments states that authorizes service by electronic means.[8]

40.     For the above reasons, the Court should approve of Text-Based notice.

41.     ***The Use of a Dedicated Website***.  Each post card and text based Notice will include a link to a dedicated website set up and maintained by the Administrator.

42.     As reflected above, the purpose of the dedicated website will ensure that potential Class Members receive access to a so-called "long form notice" which will

---

While e-mail is engrained in the fabric of our world's communication structure, there is no denying that it has become saturated and unwieldy. The cheery days of "You've got mail!" are long gone. Now, our virtual mailboxes are inundated with hundreds or thousands of messages. When it comes to our personal e-mail accounts, we have conditioned ourselves to tune the messages out, assuming they are unwanted advertisements, social-media notifications, unwelcome chain mail, a fake Nigerian prince seeking to transfer large sums of money out of the country, phishing scams, etc. The list goes on.

***

Unlike e-mail, text messages, at the very least, have eyes laid on them before being opened or ignored. And while one's e-mail account is quickly becoming inseparable from their cell phone—that is to say, most people own a smartphone on which they receive text messages and e-mails — a short vacation or busy workweek can result in literally hundreds of unread e-mails. The same cannot be said about text messages; people keep up with them. Maybe it is because texting is not as associated with work-related activities. Or maybe it is because texting is quickly becoming (if it has not already become) our primary method of communicating with friends and family. Whatever the reason, there is no denying that potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice, in addition to e-mail and mail.

*Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489-90 (S.D. Tex. Sept. 2, 2020).

[8] The Administrator will attempt to track successfully received and/or rejected text-based notices. In addition to text-based notice, a dedicated website will contain a so-called "long form notice". *See, e.g., Brashier v. Quincy Prop., LLC*, 2018 U.S. Dist. LEXIS 68948, at *19-*20, 2018 WL 1934069 (C.D. Ill. April 24, 2018) ("the notice by text message must, in addition to advising the individuals that they can seek additional information from Plaintiffs' attorney, direct them to a website with an electronic version of the class notice and consent documents. In addition, Plaintiffs' counsel must ensure that anyone who contacts him who only received the text message notice also receives the long form notice prior to submitting any consent form.").

describe opt-out rights, objection rights, and future court dates a hyper-link/claim form submission page for the purposes of submitting claims for damages

43.    If the Court preliminarily approves the proposed Settlement, a proposed dedicated website, provisionally entitled www.FAMStextmessageclassaction.com, will include: (i) a Long-Form class action notice (attached hereto as Exhibit B-1); and (ii) pdf copies of (1) the Class Action Complaint; (2) the Parties' Joint Motion For Preliminary Approval Of Class Certification; (3) the Parties' Settlement Agreement; (4) the Court's Preliminary Approval Order; and (5) the proposed Final Approval Order.

44.    The Parties further submit that the proposed forms of Class Notice gives fair notice to the class, the terms of the settlement, and the ways in which class members can participate (or not) in the settlement, thus satisfying the requirements of due process as embodied by Fed. R. Civ. P. 23(c)(1)-(2)(B).

   E.    **Summary of Notice**.

45.    The Post-Card Notice and dedicated website will include instructions on how to submit an on-line, smart-phone or paper-based claim form. The text-based notice will alert recipients to clink on a link if they are entitled to claim settlement funds resulting from allegedly unlawful pre-recorded messages. As noted above, the link attached to the proposed text-based notice will refer consumers to the above mentioned website where the website will include (**a**) a Long Form Notice and (**b**) instructions on how to submit an on-line, smart-phone or paper-based claim form to obtain settlement funds reserved for persons who received unsolicited text messages from Defendant during the proposed class period.

46.    The claim forms will require putative Class Members to attest that they were the user or subscriber of a particular cellular number at the time that pre-recorded messages were sent to a particular cellular number.

F.    **Proposed Settlement Fund and Proposed Method of Distribution**.

46.    Defendant is prepared to fund a Class Settlement Fund of $385,000.00 (the "Proposed Settlement Fund"). As detailed below, subject to Court approval, the Parties proposed that the Proposed Settlement Fund will be used to (a) pay claims, (b) provide a service award to Plaintiff and (c) compensate Plaintiff's counsel for reasonable attorney's fees and costs. Defendant shall pay all costs associated with the notice under this Agreement and the costs of administering the Class Settlement.

47.    With the assistance of the Administrator, the Proposed Settlement Fund will provide compensation to Class Members who submit online and paper/mail-based claim forms. Distribution of the Settlement Fund shall be made on a claims-made basis, meaning that putative Class Members who wish to claim their share of the Settlement Fund must submit a claim in the form/format that will accompany the Class Notice as well as a claim form submission hosted on a dedicated website, www.FAMStextmessageclassaction.com

48.    Because the total number of "successfully" delivered pre-recorded messages have been accounted for by date and time, the Administrator will be able to allocate settlement proceeds to class members based upon the total number of "successfully" delivered pre-recorded messages to each designated Illinois based cellular telephone number. As to the proposed TCPA Settlement Class, each Class Member who successfully submits a claim form shall receive compensation for an equal figure for each pre-recorded messages that are allocated to each particular cellular number for any distinct time-period. Where two persons submit claim forms associated with the same telephone number, the Administrator will undertake efforts to identify when each Class Member is or was associated as the user, owner and/or subscriber of the subject telephone numbers. Administrator will ensure that there are no duplicate claim forms

16

except where records suggest that different users/subscribers/owners exist during the time-period that pre-recorded messages were sent by Defendant.[9]

49. All distribution checks to the Class will expire after forty-five (45) days. The proceeds of any uncashed distribution checks shall be distributed to the Loyola University of Chicago Community Law Center ("LUCCLC")[10] unless the court prefers to have the sum of the uncashed checks be redistributed to class members on a pro-rata basis.

### G. Appointment of and Service Award to Plaintiff Richard Molinari.

50. The Plaintiff proposes (and FAMS does not oppose for the purpose of this Motion) that the Court appoint Plaintiff to serve as the Class Represented. Plaintiff's counsel proposes (*without* opposition from Defendant for the purpose of this Motion) that Plaintiff should be awarded a service award of up to $14,500 as a result of his role in helping cause the Litigation to reach this phase. Plaintiff submits that he is entitled to the proposed Service Award given his role in: (a) answering written discovery; (b) producing his telephone and the pre-recorded messages at issue for inspection; (c) preparing for and attending his in-person deposition; (d), attending court-mandated

---

[9] For example, if "John Doe" is identified as a subscriber/owner during a particular time-period and "Jane Doe" is also identified as a subscriber/owner during a different time period, each person would be entitled to submit a claim form limited to when the particular cellular number was assigned to that specific number. If the Administrator identifies two individuals who are identified as a subscriber/owner during the same time period, this would likely result in the Administrator providing each person with ½ of the funds that would have been provided to a single cellular owner/subscriber.

[10] According to the website maintained by LUCCLC, it "serves clients whose main source of income is public assistance or Supplemental Security Income as well as those classified as the 'working poor,' who are people struggling to meet their obligations even though they have jobs." https://www.luc.edu/law/academics/clinical-programs/communitylawcenterclinic/ LUCCLC's website further explains that "[c]ases handled by the clinic focus on family issues, landlord-tenant conflicts and benefit questions. A typical case might involve conflicting claims for Social Security or grandparents seeking custody of their grandchildren." *Id.* "Since its founding, the clinic has represented more than 3000 individuals while providing students with the opportunity to serve real clients with real problems."

settlement conferences; and (e) by actively participating in this litigation with his counsel. As detailed in Plaintiff's separately filed Memo. of Law in Support, courts have approved up to $25,000 for a service award where class representatives who have served in a similar capacity.

### H. The Proposed Settlement Funds Are Appropriate.

51.     As noted above, the Proposed Settlement Fund is $385,000.00. "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). By way of a separate motion, Plaintiff's counsel proposes to receive (and Defendant will not oppose) up 33% of the Proposed Settlement Fund to compensate Plaintiff's counsel for his legal fees and costs. *See, e.g., Bridgeview Health Care Ctr., Ltd. v. Clark*, 2015 U.S. Dist. LEXIS 95918, *3, 2015 WL 4498741, *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action). If the Court were to authorize one-third of the Proposed Settlement Fund to compensate Plaintiff's counsel, this would reduce the Proposed Settlement Fund by $127,050, leaving $243,450 to distribute to Class Members within the TCPA Class and FDCPA Class - if the Court approves Plaintiff's proposed incentive award of $14,500.

52.     There are approximately 1,419 Class Members in the TCPA Class. Based on the TCPA Class fund, it is not possible to provide each Class Member with the full statutory award of $500 per call. If each class member submitted a claim, then each class member would recover $14.27 per call. However, each class member who submits an approved claim will be entitled to $500 per successfully delivered message unless the total of such payments would exceed the $233,500 cap on the fund total. If the cap is met, then TCPA class members with approved claims will be entitled to a *pro rata* share of the fund based on the number of successfully delivered messages they received.

Counsel, however, anticipate that not every Class Members will submit a claim form and that other cases suggest that less than 10% of class members will submit claims. Counsel estimate that the average number of "successfully" delivered pre-recorded messages to Class Members are six (6) messages. If 10% of Class Members (141 persons) submit valid claim forms, and they each received six (6) messages (846 messages) each Class Member who submits a valid claim form could theoretically receive up to $276 in compensation for each "successfully" delivered pre-recorded message.

53.     The Parties agree that this potential recovery is fair considering it is possible that Defendant could prevail on liability, resulting in Class Members receiving no compensation. *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (approving TCPA settlement of $30.00 per class member).

54.     The FDCPA caps the recovery of statutory damages at "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector". 15 U.S.C. § 1692k(a)(2)(B). Further, Section 1692k(a)(3) provides that "in the case of any successful action to enforce the foregoing liability", a court is authorized to award the prevailing plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court."

55.     Unlike the FDCPA, the TCPA has no cap on class action statutory damages. Rather, a court or jury is authorized by the TCPA to award at least $500 in statutory damages for each discrete violation of the TCPA's prohibitions of non-consensual pre-recorded messages to a recipient's cellular telephone number. 47 U.S. Code § 227(b)(3)(B).

56. Defendant represents that the total FDCPA Settlement Fund ($10,000.00) is more than 1% of its net worth. Based upon this fact, the Parties believe that the Settlement Fund fair and reasonable settlement.

**I. Appointment of Class Counsel.**

57. Defendant does not oppose appointment of James C. Vlahakis as Class Counsel. As set forth in Plaintiff's separately filed Memorandum of Law, Mr. Vlahakis has diligently and zealously litigated the entirety of this case in a solo capacity. In relevant part, Mr. Vlahakis deposed two of FAMS's corporate representatives in Atlanta, Georgia, as well as the founder of VoApps who invented and patented VoApps' DDVM technology.

58. Plaintiff submits that the determined efforts of his counsel have led to the formation of the proposed resolution of this hotly contested class action. In conformity with the requirements of FRCP 23(g)(1)(A)(i)-(iv) and 23(g)(1)(B)-(C), and consistent with the declarations submitted in support, the Plaintiff requests, and Defendant does not oppose, that the Court appoint James C. Vlahakis as counsel for the Class Members. As noted above, attorney Vlahakis will petition the Court to approve up to 33% of the proposed Settlement Fund to compensate attorney Vlahakis for his attorney's fees and costs incurred in prosecuting this litigation.

**J. Compliance with the Class Action Fairness Act ("CAFA").**

59. CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" *See*, 28 U.S.C. § 1715(a)-(b). Simultaneous with the filing of this Joint Motion, the Parties shall comply with Sections 1715(a) and (b) of CAFA.

**K. <u>Right of Class Members to Seek Exclusion and to Object</u>**.

60.     Class Members who wish to exclude themselves (opt out) of the proposed Settlement must submit an online or mail a written request for exclusion to the Administrator no later than thirty (30) days from the date of mailing of the Class Notice.

61.     Thereafter, the Administrator, within 7 days of the receipt of such request, forward copies to Class Counsel and Counsel for Defendants.

62.     Class Members shall be afforded an opportunity to object to the Settlement. Subject to approval of the Court, objectors shall be required to notify the Court, Class Counsel and counsel for Defendants, in writing, of their intent to object to one or more of the terms of this Agreement or the Final Order and Judgment.

63.     Class Members who object to the Settlement may also appear at the Fairness Hearing and express their objection to the Settlement without notice to the Court and Counsel if the Court finds that good cause exists for non-compliance with the requirements of this paragraph.

**L. <u>Schedule for Class Notice, Exclusions, and Objections</u>**.

64.     The Parties proposed the following dates relative to the provision of Class Notice and the deadlines for the submissions of claim forms, exclusions and objections:

  a. Post-Card notice to be mailed by KCC to the best known addresses of the putative Class Members within 30 days of entry of the Preliminary Approval Order;

  b. Text-Based notice will be issued by KCC within 30 days of entry of the Preliminary Approval Order;

  c. Each Post-Card and Text-Based Notice will refer to a dedicated website for more information and the website will display a link to the Long-Form Notice; and

  d. Class members shall have until 45 days after the initial mailing of the notice to complete and postmark a claim form, request for exclusion or objection to the proposed settlement.

65.     The Parties propose that the Court set a date for a Final Hearing on the fairness and reasonableness of the Agreement, whether the final approval shall be given to the Agreement, whether the Court will grant Plaintiff's proposed Service Award of $14,500 and whether the Court will grant Plaintiff's counsel's request for attorney's fees and expenses. The proposed date for the Final Hearing shall take place at least ninety (90) days from notice being to provide to putative Class Members.

**WHEREFORE**, pursuant to FED. R. CIV. P. 23(c)(2), the Parties respectfully request that the Court (**a**) conditionally approve the terms of the Parties Settlement Agreement (Exhibit A), including the amount of the Proposed Settlement Fund as well as appointing Plaintiff Richard Molinari as a provisional Class Representative and appoint attorney James C. Vlahakis as provisional Class Counsel ; (**b**) approve and direct that the proposed Long-Form Notice (Exhibit B-1) be directed to the best known address of the putative Class Members; (**c**) approve and direct that the proposed Post-Card Notice (Exhibit B-2) and Text-Messages Notice be directed to the cellular telephone numbers identified in Defendant's records as having received "successfully" sent pre-recorded messages; (**d**) enter the proposed Preliminary Approval Order (Exhibit D) (where the Preliminary Approval Order adopts the terms of the proposed Settlement Agreement); (**e**) preliminarily approve awarding Plaintiff a service award of up to $14,500; (**f**) preliminarily approve awarding Class Counsel up to 1/3rd of the Settlement Fund for reasonably incurred fee's and costs (or set a date by which Class Counsel should submit his fee petition); (**g**) set the following dates for (i) putative Class Members to opt-out, object, and/or return a claim forms and (ii) set a final approval hearing date.

Respectfully submitted,

For Plaintiff

/s/ James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland
Avenue, Suite 200
Lombard, Illinois 60148
630-575-8181
jvlahakis@sulaimanlaw.com

For Defendant

/s/ Jonathan K. Aust
Bedard Law Group, P.C.
4855 River Green
Pkwy, Suite 310
Duluth, GA 30096
(678) 253-1871
jaust@bedardlawgroup.com