# Exhibit A

## Class Action Settlement Agreement

<u>Molinari v. Financial Asset Management Systems, Inc</u>.,

18-cv-01526 (N.D. IL.)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, | |
| Plaintiff, | 18-cv-01526 |
| v. | Honorable Judge Sara L. Ellis |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement ("Agreement") in the above-captioned case between Plaintiff RICHARD MOLINARI, individually, and on behalf of a Settlement Class of similarly situated persons, and Defendant FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. (the "Parties"), was reached after arms-length negotiations between counsel for the Parties, and was formally executed as of November 11, 2021.

**Table of Contents**

**Introduction and Preliminary Recitals** ................................................................3-5

**Section I- Definitions** ......................................................................................5-11

  1.1 Agreement ...............................................................................................5

  1.2 CAFA Notice............................................................................................5

  1.3 Class ........................................................................................................5

  1.3.a-d TCPA Settlement Class ......................................................................5-6

  1.3.e-f FDCPA Settlement Class....................................................................6-7

  1.4 Administrator ...........................................................................................7

  1.5 Class Members .........................................................................................7

  1.6 Class Notice.............................................................................................7

  1.7 Class Representative and Class Counsel.....................................................8

  1.8 Conditional Certification Motion ..............................................................8

  1.9 Conditional/Preliminary Certification Order .............................................8

1.10 Defendant ...........................................................................................8

1.11 Fairness Hearing ...............................................................................9

1.12 Final Approval, Order and Judgment ...............................................9

1.13 Finality Date ......................................................................................9

1.14 Initial Notice Date ............................................................................9

1.15 Litigation ...........................................................................................9

1.16 Parties ................................................................................................9

1.17 Preliminary Approval Date .............................................................10

1.18 Released Claims ........................................................................10-11

1.19 Settlement Funds ............................................................................11

**<u>Section II - Procedures and Conditions Which Govern the Settlement</u>** .......... 11-23

2.1a-f Class Action Settlement Procedures ............................................12

2.1.g Post-Card Notice ...........................................................................13

2.1.h Text Message Notice......................................................................14

2.1.i Costs of Notice ..............................................................................14

2.1.j CAFA Notice..................................................................................14

2.1.k-m Other Representations ................................................................13-14

2.2 Summary of Relief Provided by Proposed Settlement ..................16-18

2.2.a Total Monetary Relief ...................................................................16

2.2.b-j Method of Calculating Payments and Distribution..................16-18

2.2.l *Cy Pres* Distribution ......................................................................18

2.3 Opting Out of the Settlement.. .......................................................19-20

2.4 Objecting to the Settlement ...........................................................20

2.5 Class Members' Release and Exclusive Remedy .........................20-22

2.6 Distribution of Settlement Funds...................................................22

2.7 Plaintiff's Request For a Service Award .......................................22-23

2.8 Class Counsel's Attorney's Fees and Expenses ...........................23

**<u>Section III - Conditions Necessary to Consummate the Settlement</u>** .............. 22-25

3.1 Accuracy of Representations and Warranties ...............................23-24

3.2 Conditions Precedent .....................................................................24

3.3 Appeals (23) ...................................................................................24

3.4 Rights of Termination .....................................................................24

**<u>Section IV – Miscellaneous Provisions</u>** ........................................................... 24-26

5.1 Entire Agreement and Modification ................................................................ 25

5.2 Notices .................................................................................................... 25-26

5.3 Execution in Counterparts & E-signatures ..................................................... 26

5.4 Governing Law and Place of Performance ...................................................... 26

5.5 Co-Drafting and Headings ............................................................................ 26

5.6 Benefit of Agreement .................................................................................... 27

**Index of Exhibits**

| | |
|---|---|
| **Exhibit A** | Class Action Complaint |
| **Exhibit B-1** | Proposed Long-Form Class Notice |
| **Exhibit B-2** | Proposed Post-Card Notice |
| **Exhibit C** | Joint Motion For Preliminary Approval of Class Certification and Proposed Settlement |
| **Exhibit D** | Proposed Conditional/Preliminary Certification Order |
| **Exhibit E** | Proposed Final Order and Judgment |

## Introduction and Preliminary Recitals

For the sole purpose of facilitating the resolution of this Civil Action, the Parties have agreed to the following Introduction and Preliminary Recitals:

a. Plaintiff, a resident of this judicial district, filed a putative Class Action Complaint (the "Complaint") against FAMS pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA").[1] The Complaint is attached as **Exhibit A**. Plaintiff alleges that FAMS is a debt collector as defined by § 1692a(6) of the FDCPA because it regularly collects defaulted debts through letters and telephone calls. Dkt. 1, ¶ 9.

---

[1] Plaintiff also alleged class and individual claims under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 et seq.

b.    The Complaint alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA by sending pre-recorded message to Plaintiff's personal cellular telephone number without his consent. Dkt. 1, Complaint, ¶¶ 31-33, 39, 44.

c.    Although not specifically alleged in the Complaint, Plaintiff also asserts that Defendant's use of pre-recorded messages violated Section 1692e(14) of the FDCPA. Defendant denies that such act states a claim let alone violates the FDCPA. The Complaint asserts that Defendant's alleged violations of the FDCPA entitles Plaintiff and class members statutory damages, costs, and reasonable attorneys' fees.

d.    Defendant denies that it is liable in any way to Plaintiff or the putative class members, denies that its actions violated state or federal law in any manner and denies that Plaintiff or the class members that Plaintiff seeks to represent are entitled to any damages[2]. Despite denying liability, Defendant concludes that the further conduct of this Litigation by them would be protracted and expensive, and that it is desirable that this Litigation be fully, finally and forever settled in the manner set forth in this Agreement. Defendant is willing to enter into this Agreement to avoid the further expense and inconvenience of this Litigation and to buy peace and resolve and settle all claims which have been made or could be made against it by Plaintiff.

e.    Plaintiff and his counsel, on the other hand, are mindful of the limitations on any possible statutory damages recovery to the proposed classes and recognize that a finding of liability against Defendant is not a foregone conclusion.[3]

f.    The Parties, by and through their counsel, have analyzed the facts and law relevant to this Litigation, and they recognize the substantial expense and delay

---

[2] Defendant is represented by counsel who has considerable experience in defending class actions and consumer protection cases involving the TCPA and FDCPA.

[3] Plaintiff's counsel has considerable experience in handling class actions and consumer protection cases involving the TCPA and FDCPA from the defense and consumer side.

associated with the continued prosecution of this Litigation against each other through trial and through appeals. Further, both Parties recognize that protracted Litigation is unlikely to serve the best interests of the Class.

g.      Based upon the Parties' analysis of the facts and the legal issues involved in this Litigation, factors impacting the potential entitlement to statutory damages under the FDCPA (which contains a maximum recovery for class-action based statutory damages) and the TCPA (which does not contain a maximum class-action based statutory damages other than capping willful damages at no more than $1,500 per violation) the Parties believe that a settlement on the terms set forth herein is fair, adequate, and reasonable, and thus in the best interest of both sides.

h.      Wherefore, for these reasons, pursuant to FED. R. CIV. P. 23, in order to fully and finally resolve all claims and disputes arising out of or related to Plaintiff's claims of violations of the FDCPA and TCPA by Defendant and any claims that Plaintiff could have brought, the Parties desire to resolve this Litigation and present the Court with fair and equitable settlement terms embodied by this Agreement. To further outline the Parties' areas of agreement, the Parties have identified and agree to the following definitions, terms and conditions.

### Section I - Definitions

When used in this Agreement, the following terms shall mean:

1.1      "**Agreement**" (at times "Settlement Agreement") shall refer to this proposed Class Action Settlement Agreement.

1.2      "**CAFA Notice**" means the form of the notice that the Parties intend to provide to the Illinois Attorney General's Office and the Attorney General of the United States and as required by 28 U.S. Code § 1715.

1.3      "**Class**" (or "Classes") means a class or classes conditionally certified for purposes of settlement only as described in Paragraphs 1.3.a and 1.3.e.

a. For purposes of effectuating this settlement, the Parties ask that the Court preliminarily and conditionally certify a **TCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

b. The Plaintiff contends that the telephone number associated with the proposed TCPA Settlement Class are ascertainable. At this time, Defendant does not oppose Plaintiff's contention.

c. The Parties agreed that spreadsheets produced by Defendant and VoApps have been analyzed and the spreadsheets identify 16,352 "successfully" transmitted pre-recorded messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017.

d. The Parties have agreed to utilize a class action claims administrator (KCC Class Action Services LLC) to (i) conduct reverse number look ups to confirm the name or names and postal addresses associated with the above-mentioned cellular phone numbers and (ii) transmit notice of the proposed settlement to the persons associated with the subject cellular phone numbers.

e. For purposes of effectuating this settlement, the Parties ask that the Court preliminarily and conditionally certify a **FDCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

f. The Parties agreed that spreadsheets produced by Defendant and VoApps have been analyzed and that the spreadsheets identify 1,328 "successfully"

transmitted pre-recorded messages sent to 364 distinct cellular phone numbers between December 4, 2016 and December 4, 2017. This figure has been duplicated to only show one message to each unique cellular telephone number.

1.4    "**Class Administrator**" or "**Administrator**" shall refer to a third-party class action claims administrator (provisionally designated as KCC Class Action Services LLC) to undertake the following tasks: (i) conduct reverse number look ups to confirm the name or names and postal addresses associated with the above mentioned cellular phone numbers; (ii) transmit notice of the proposed settlement to the persons associated with the subject cellular phone numbers who will be tasked with locating Class Members, providing Notice to Class Members; (iii) and providing settlement proceeds to eligible Class Members

1.5    "**Class Members**" means those persons who are a part of the Class and who do not fall within the above-stated exclusions set forth in Paragraphs 1.3.a and 1.3.e. Excluded from the two proposed Classes are: (a) Class members who timely exclude themselves from the Settlement Agreement; (b) employees of Defendant and its vendor VoApps, Inc.; (c) employees of the Court and the Clerk's Office; (d) employees of the Administrator; and (e) employees of proposed Class Counsel; (f) any person who is already subject to an existing release; and (g) any person who has filed for bankruptcy protection under Title 11 of the United States Code as of the date of the Conditional Certification Order.

1.6    "**Class Notice**" collectively means (a) the Court-approved Long-Form Notice, discussed below in Sections 2.1.g and 2.1.h and in a form substantially similar to that attached hereto as **Exhibit B-1** as well as (b) a Post-Card Notice (**Exhibit B-2**) and (c) a Text-Message notice.

1.7 "**Class Representative**" shall refer to Plaintiff Richard Molinari and "**Class Counsel**" shall refer to James C. Vlahakis (to the extent the Court approves of his appointment).

1.8 "**Conditional Certification Motion**". As described in Section 2.1.a of this Agreement, the Parties shall file a "Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement" with the Court (the "Conditional Certification Motion", attached as **Exhibit C**) for the purpose of having the Court enter an Order Conditionally Certifying the Class and Granting Preliminary Approval of Settlement (the "Conditional/Preliminary Certification Order").

1.9 "**Conditional/Preliminary Certification Order**". As explained in Section 2.1.a) of this Agreement, the Parties intend to: (1) certify, for settlement purposes only, a class pursuant to FED. R. CIV. P. 23; (2) preliminarily approve this Agreement; (3) approve the proposed notices to the Class (the "Class Notice"); (4) direct that the Class Notice be distributed to the Class in the manner described below; and (5) describe and approve the amount and manner in which certain "Settlement Funds" (as defined below) are earmarked for distribution to Class Members, Plaintiff and Class Counsel. The Proposed Conditional/Preliminary Certification Order is attached hereto as **Exhibit D**.

1.10 "**Defendant**" is intended to include FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. (hereafter "FAMS" or "Defendant") and all of Defendant's officers, directors, shareholders, members, general and limited partners, owners, principals, agents, current and former employees, representatives, attorneys, parents, subsidiaries, affiliates, and insurers (in their capacities as such) of Defendant. Defendant is also intended to include its third-party vendor, VoApps, Inc. (at times "VoApps") and all of VoApps' officers, directors, shareholders, members, general and limited partners, owners, principals, agents, current and former employees, representatives, attorneys, parents, subsidiaries, affiliates and insurers (in their capacities as such) of VoApps.

1.11  "**Fairness Hearing**" means the hearing to be conducted by the Court pursuant to FED. R. CIV. P. 23 to consider the fairness, adequacy, and reasonableness of the settlement reflected in this Agreement at which time the Parties shall desire the Court to enter a "Final Approval, Order and Judgment" as defined by Section 1.12.

1.12  "**Final Approval, Order and Judgment**" means the final order and judgment to be entered by the Court approving this Agreement as fair, adequate, and reasonable under FED. R. CIV. P. 23, confirming certification of the Class for settlement purposes only, enjoining future legal claims by the Class Members which were raised in this Litigation, and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement, which shall be in substantially the same form as the Proposed Final Approval, Order and Judgment attached hereto **Exhibit E.**

1.13  "**Finality Date**", as explained in Section 4.1 and 5.1 of this Agreement, means one (1) business day after the Court has entered the "Final Order and Judgment" (as defined below), and the time for perfecting an appeal of such Final Order and Judgment has expired with no appeal taken; final dismissal of any appeal taken; or affirmance of the Final Order which is not subject to further review by any court with appellate jurisdiction over the Litigation.

1.14  "**Initial Notice Date**" means the deadline set by the Court for the mailing of the Class Notice, which shall be not fewer than thirty (30) days after the Preliminary Approval Date.

1.15  "**Litigation**" means the above-captioned case which involves alleged violations of the FDCPA, TCPA and the ICFA in relation to Defendant's debt collection activities.

1.16  "**Parties**" means the Class Members (including Plaintiff), and Defendant.

1.17 "**Preliminary Approval Date**" means the date that the Court enters its order provisionally granting the Joint Motion for Conditional Certification and Preliminary Approval of Class Action Settlement Agreement, in a form substantially similar to that attached hereto as **Exhibit C**.

1.18 "**Released Claims**" shall refer to the scope of the claims released by Plaintiff and the Class Members as detailed below:

a. <u>Plaintiff's Release</u>. For Plaintiff, all claims, actions, causes of action, demands, rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever that he or his heirs, executors, administrators, successors, assigns, clients, and attorneys (in their respective capacities as such) may have against Defendant or any of Defendant's principals, subsidiaries, and affiliate entities, owners, partners, officers, directors, shareholders, members, managers, general and limited partners, owners, principals, agents, current and former employees, heirs, executors, administrators, agents, representatives, successors, assigns, insurance carriers, clients, and attorneys (in their respective capacities as such) as of the date of this Agreement, it being Plaintiff's intent to release all claims of any kind or nature, known or unknown, arising pursuant to contract, tort, common law, statute, or regulation, that they may have against the parties herein released from the beginning of time up to the date of this Agreement.

b. <u>Class Member Release</u>. For the Class, all claims, actions, causes of action, demands, rights, damages, costs, attorneys' fees, expenses, and compensation whatsoever that the Class or the Class Members' respective heirs, executors, administrators, successors, assigns, and attorneys could assert against Defendant or any of Defendant's principals, subsidiaries, and affiliate entities, owners, partners, officers, directors, shareholders, members, managers, general and limited partners, owners, principals, agents, current and former employees,

heirs, executors, administrators, agents, representatives, successors, assigns, insurance carriers, clients, and attorneys (in their respective capacities as such) as a result of alleged violations of the FDCPA, TCPA or ICFA based upon Defendant's sending of allegedly unsolicited pre-recorded voice messages to Illinois cellular telephone numbers.

1.19    "**Settlement Funds**" shall refer to the monies that have been allocated to compensate Class Members, Plaintiff and Class Counsel as provided by the terms of this Agreement. As detailed below, Defendant's insurer has agreed to allocate a total amount of $385,000 to provide compensation to Class Members, Plaintiff and Class Counsel. This amount is subject to Court approval. The funds required to provide the Class Notice to Class Members and administer and distribute funds to Class Members shall be paid/reimbursed separately by Defendant and/or its insurer. See Section II, 2.2b-j (pp. 15-16).  However, Plaintiff's Counsel, bv and through Sulaiman Law Group, Ltd. has agreed to be personally responsible for paying for the proposed Text-Message Notice. Neither Defendant nor Defendant's insurer are in any way responsible for paying for or covering the costs associated with sending the proposed Text-Message Notice. Furthermore, Sulaiman Law Group, Ltd., agrees to defend and indemnify Defendant and Defendant's insurer regarding any claims resulting from the proposed Text-Message Notice.

### Section II – Procedures and Conditions Which Govern the Settlement

The Parties agree to the following settlement, subject to the terms and conditions of this Agreement and the terms and conditions of the incorporated documents. The relief provided for under this Agreement is in full satisfaction of all of Defendant's liability for all Released Claims, as defined above in Section 1.18.

## 2.1 **Class Action Settlement Procedures**

a.     The Parties shall file a Joint Motion for Conditional Certification and Preliminary Approval of Class Action Settlement Agreement with the Court (the "Conditional Certification Motion") seeking entry of an Order Conditionally Certifying the Class and Granting Preliminary Approval of Settlement (the "Conditional Certification Order") which would (1) certify, for settlement purposes only, a class pursuant to FED. R. CIV. P. 23; (2) preliminarily approve this Agreement, the proposed Class Notice to the Class regarding the settlement terms and Final Fairness Hearing; and (3) direct that the Class Notice be sent to the Class in the manner described below.

b.     The Long-Form Class Notice shall inform the Class of the nature of Litigation, the proposed settlement, and the right of Class Members to object or opt out, and shall be in a form substantially similar to that attached hereto and incorporated herein by reference as **Exhibit B-1** and **Exhibit B-2**. The Class Notice shall be distributed by mailing a copy of the notice to each class member as described below.

c.     The Conditional Certification Order shall be in a form substantially similar to those attached hereto as **Exhibit C**.

d.     Subject to Court approval, the Parties mutually propose that KCC Class Action Services LLC ("KCC") serve as Class Administrator ("the Administrator") and further propose that KCC take the following actions.

e.     KCC will transmit (3) forms of Class Notice: Post-Card Notice; Text-Message Notice[4]; and the Long-Form Notice.

f.     Prior to the Final Fairness Hearing, the Administrator shall submit a sworn declaration attesting to service of the Class Notice upon the Class, the numbers of opt-outs/exclusions, the number of claims submitted and claims approved.

---

[4] As stated in 1.19, Plaintiff's Counsel is responsible for sending, paying for and covering the costs associated with any text-based notice.

g.   **<u>Post-Card Notice</u>**:

i.   No later than thirty (30) days after the entry of the Conditional Certification Order, the Administrator shall prepare and transmit the Class Notice via Post-Card to potential Class Members at the most current address obtained by the Administrator (including, but not limited to the Administrator's use of the National Change of Address database), with a notation on the envelopes requesting address correction.

ii.   The Post-Card notices will contain a summary of the litigation, the fact that a settlement has been reached (subject to Court approval), a summary of the proposed relief, along with reference to a web address that will contain additional information in the form of a so-called long form notice that will describe opt-out rights, objection rights, future court dates and a hyper-link/claim form submission page for the purposes of submitting claims for damages.

iii.   If any Post-Card notice is returned with a new address, an additional Post-Card notice will be re-mailed to the new address.

iv.   As to any Class Member whose notice is returned without a forwarding address the Administrator shall run such Class Member through the National Change of Address database to seek a good address and it shall re-send Post-Card notices to any Class Member for whom it is able to obtain a new address as a result of such search.

v.   The Administrator will use its best efforts to provide prompt re-sending of any returned Post-Card notices.

h.   **Text-Message Notice**.[5] The Administrator will also send a Text-Message Notice to the cellular telephone number of the identified Class Members.

    i.   The Administrator will attempt to track successfully received and/or rejected Text-Message notices.

    ii.   Each Text-Message Notice will contain a link to dedicated website which will contain additional information in the form of a so-called Long notice that will describe opt-out rights, objection rights, future court dates and a hyper-link/claim form submission page for the purposes of submitting claims for damages.

    iii.   The Plaintiff contends that Text-Message Notice is appropriate under the circumstances and for the reasons set forth in the Parties' Joint Motion For Preliminary Approval of Class Certification and Settlement. Defendant does not have an objection to Plaintiff and Plaintiff's Counsel providing Text-Message Notice to Class Members. Defendant and its insurer are not responsible for sending such notice or paying for or covering any costs associated with such notice.

i.   **Costs of Notice Shall be Paid by Defendant**. Except as discussed in 1.19, the cost of providing notice, administrating the notice and distributing checks to the Class shall be borne by Defendant and/or its insurer.

j.   **CAFA Notice**. The Parties and/or the Administrator will distribute notice to the Illinois Attorney General and the Attorney general of the United States within the statutory period set forth by 28 U.S.C. § 1715(b).

k.   **Other Representations**. The Parties shall file a Joint Motion for Approval of the Final Order and Judgment (the "Final Settlement Motion") seeking the entry of

---

[5] As stated in 1.19, Plaintiff and Plaintiff's Counsel are responsible for sending, paying for and covering the costs associated with any text-based notice.

the Final Order and Judgment, finally approving the Agreement following the Fairness Hearing before the Court. Among other things, the Final Order and Judgment shall include provisions which dismiss the Litigation with prejudice, approve the terms of this Agreement including the proposed relief to the Class, and grant the individual and class releases described in this Agreement.

l.      Within 10 (ten) days after the date of the Final Approval Order, the Settlement Administrator will provide Class Counsel and Defendant's Counsel with an updated list of claimants including any updated address information received. If final approval is granted, the Parties shall retain the class list and a list of Class Members who opted in or excluded themselves for six months following the Effective Date, and may destroy them after that period.

m.      Defendant's agreement to support the Preliminary and Final Settlement Motions, for purposes of this Agreement only, shall be without prejudice to any *status quo ante* defenses, rights, or positions in the Class Actions. In the event this Agreement is not approved by the Court, or if approval of this Agreement, including the entry of the Conditional Certification Order or the Final Order and Judgment, is reversed or modified on appeal (except for the modification of any attorney's fee award), or any one of the conditions precedent set forth in Section III of this Agreement is not met or any rights of termination under this Agreement is exercised, then the Conditional Certification Order and the Final Order and Judgment, including, but not limited to, the conditional class certification entered to effectuate this Agreement, and all findings of fact and conclusions of law therein, shall be automatically dissolved without further order of the Court, null and void and of no force and effect, and in such event all *status quo ante* rights of Defendant to, among other things, (i) oppose any subsequent efforts by Plaintiff to certify the actions as class actions, and (ii) assert all other defenses, rights, and positions shall in all respects be unaffected and preserved as shall those rights of

Plaintiff and the Class Members. The Conditional Certification Order and the Final Order and Judgment shall so provide.

    2.2   **Summary of Relief Provided by the Proposed Settlement**. Subject to the terms of this Agreement, Defendant (by and through its insurer) agrees to provide the following relief to Plaintiff and the Class:

    a.   **Total Monetary Relief**. Defendant shall pay to the Class a total Settlement Fund of $385,000.00, subject to Court approval, (minus certain amounts described below) which shall be distributed as follows:

    b.   **Method of Calculating Payouts & Distribution**. Distribution of the Settlement Funds for both Classes shall be made on a claims-made basis. Class Members who wish to claim their share of the Settlement Fund must submit a claim in the form that will accompany the Class Notice.

    c.   Monies from the Settlement Fund will paid out to Class Members of both the *TCPA Settlement Class* and *FDCPA Settlement Class* who timely submit claim forms by the deadlines set by the Court (anticipated to be 45 days after Class Notice is provided to Class Members).

    d.   In relation to the *TCPA Settlement Class*, as to the Class Members who submit valid claims, the Settlement Fund will result in Class Members being paid funds on a per-message basis based upon records of "successfully" delivered pre-record messages. For example, where a telephone number assigned to a particular Class Member reflects ten (10) "successfully" delivered pre-recorded messages, the Class Member will be compensated for the (10) "successfully" transmitted pre-recorded messages.

    e.   In relation to the *FDCPA Settlement Class*, as to the Class Members who submit valid claims, the Settlement Fund will result in Class Members being

the same amount, regardless of the number to pre-recorded messages "successfully" delivered.

      f.     In relation to payouts of both Classes, the amount that will be paid shall be calculated by first reducing the Settlement Fund by the amount that the Court shall approve to reimburse Class Counsel for his reasonable attorney's fees and costs. Class Counsel intends to seek up to 1/3rd ($127,050) of the settlement funds to reimburse Class Counsel for reasonable attorney's fees and costs. If the Court grants Class Counsel's request, this would result in $257,950 in remaining settlement funds.

      g.     Next, subject to Court approval, the Settlement Fund shall be reduced by the amount of statutory damages and a service award to compensate Plaintiff for his services as a class representative. Plaintiff intends to seek up to $14,450. If this amount is awarded by the Court, this would result in a total settlement fund of $243,500.

      h.     The Parties represent that $10,000.00 is more than 1% of FAMS's net worth, therefore, it exceeds the maximum class recovery for a FDCPA class. The FDCPA class would share $10,000.00. If this amount is awarded by the Court, this would result in a total remaining settlement fund of $233,500. The Administrator shall identify the total number of valid claims submitted by members of the *FDCPA Settlement Class* and award a pro rata share of the $10,000 to each Class Member who has submitted a valid claim. Under no circumstance shall any single Class Member receive more than $1,000 for recovery under the *FDCPA Settlement Class*.

      i.     The TCPA Class would share the remaining settlement fund of $233,500. Based on the TCPA Class fund, it is not possible to provide each Class Member with the full statutory award of $500 per call. If each class member

submitted a claim, then each class member would recover $14.27 per call. However, each class member who submits an approved claim will be entitled to $500 per successfully delivered message unless the total of such payments would exceed the $233,500 cap on the fund total. If the cap is met, then TCPA class members with approved claims will be entitled to a *pro rata* share of the fund based on the number of successfully delivered messages they received.. Counsel, however, anticipate that not every Class Members will submit a claim form and that other cases suggest that less than 10% of class members will submit claims. Counsel estimate that the average number of "successfully" delivered pre-recorded messages to Class Members are six (6) messages. If 10% of Class Members (141 persons) submit valid claim forms, and they each received six (6) messages (846 messages) each Class Member who submits a valid claim form could theoretically receive up to $276 in compensation for each "successfully" delivered pre-recorded message.

j.      Under no circumstance shall a Class Members receive more than $500 *for each* successfully delivered pre-recorded message claimed in relation to the alleged TCPA violations. After disbursement of the funds, any remaining undistributed funds will be sent to the *cy pres* per Section 2.2l. The Parties agree that this recovery is fair considering the fact that it is possible that Defendant could prevail on liability, resulting in Class Members receiving no compensation.

k.      All distribution checks to the Class will expire after forty-five (45) days.

l.      **Cy Pres Payments**. Any funds remaining in the fund after the distribution, will be distributed as a *cy pres* distribution in equal sums to the

Loyola University of Chicago Community Law Center ("LUCCLC")[6] unless the Court prefers to have the sum of the uncashed checks be redistributed to class members on a pro-rata basis.

### 2.3 **Opting Out of the Settlement**.

a.     The Preliminary Approval Order that is submitted to the Court shall provide that Class Members who wish to exclude themselves (opt out) of the Class and the proposed Settlement must mail a written request for exclusion to the Administrator no later than forty-five (45) days from the date of mailing of the Class Notice.  The Administrator, within five (5) business days of the receipt of such request, shall forward copies to Class Counsel and Counsel for Defendant.

b.     In any such written request for exclusion, the Class Member must set forth his or her full name and address, together with a statement to the effect that he or she wishes to be excluded from or opt out of the Class.

c.     Any Class Member who submits a valid request for exclusion at any time prior to the expiration of the opt-out period shall not be bound by the terms of this Agreement and shall not receive any of the benefits of the Settlement.

d.     If more than ten (10) percent of the Class Members timely send written requests for exclusion (opt out of the Class Action Settlement), Defendant shall have the right, but not the obligation, to withdraw from the Settlement. Such an election by Defendant shall be made in writing and sent to Class Counsel

---

[6] According to the website maintained by LUCCLC, it "serves clients whose main source of income is public assistance or Supplemental Security Income as well as those classified as the 'working poor,' who are people struggling to meet their obligations even though they have jobs." https://www.luc.edu/law/academics/clinical-programs/communitylawcenterclinic/ LUCCLC's website further explains that "[c]ases handled by the clinic focus on family issues, landlord-tenant conflicts and benefit questions. A typical case might involve conflicting claims for Social Security or grandparents seeking custody of their grandchildren." *Id.* "Since its founding, the clinic has represented more than 3000 individuals while providing students with the opportunity to serve real clients with real problems."

within ten (10) days after the deadline for submitting requests for exclusion specified above.

2.4 **Objecting to the Settlement**.

a. Class Members shall be afforded an opportunity to object to the Settlement. Subject to approval of the Court, objectors shall be required to notify the Court, Class Counsel and counsel for Defendant, in writing, of their intent to object to one or more of the terms of this Agreement or the Final Order and Judgment.[7]

b. Subject to Court approval, the Conditional Certification Order will require that such notice of objections shall include:

    i. a statement of each objection being made;

    ii. a detailed description of the facts underlying each objection;

    iii. a detailed description of the legal authorities underlying each objection;

    iv. a statement of whether the objector intends to appear at the Fairness Hearing;

    v. a list of witnesses whom the objector may call by live testimony, oral deposition testimony or affidavit during the Fairness Hearing; and

    vi. a list of exhibits which the objector may offer during the Fairness Hearing, along with copies of all of the exhibits.

2.5 **Class Members' Release and Exclusive Remedy**.

a. Upon entry of the Final Order and Judgment, Plaintiff and all Class Members shall be deemed to have expressly agreed to be bound by the Release as set forth in this Agreement in Paragraph 1.18.

---

[7] Class Members who object to the Settlement may also appear at the Fairness Hearing and express their objection to the Settlement without notice to the Court and Counsel if the Court finds that good cause exists for non-compliance with the requirements of this paragraph.

b.      Upon entry of the Final Order and Judgment, each Class Member who does not timely request to be excluded from this Settlement, shall be deemed to have expressly agreed to be bound by the terms of the Release.

c.      Upon entry of the Final Order and Judgment, Defendant agrees to be bound by the terms of the Release.

d.      The relief described herein is the exclusive method of recovery and exclusive remedy for all Class Members who do not submit a valid and timely request for exclusion, for any, and all of the Released Claims and shall be in lieu of any other remedy or right of action against the Released Persons for the Released Claims. Accordingly, the Released Persons shall not be subject to liability of any kind to any Class Member who does submit a valid and timely request for exclusion, with respect to any of the Released Claims, other than as set forth in this Agreement.

e.      Each Class Member, who does not timely exclude themselves, shall, upon the Court's entry of a Final Order and Judgment, be enjoined by that Order from instituting or maintaining any action for the Released Claims against the Released Persons. The Court's Final Order and Judgment shall enjoin such actions for the Released Claims.

f.      Furthermore, for the purposes of 15 U.S.C. § 1692c(a)(2), Plaintiff's counsel expressly represents that unless he or his firm (Sulaiman Law Group, Ltd.) has given notice to Defendant of individual representation of potential Class Members with regard to Defendant's collection activities as to a particularized account, Plaintiff's counsel and his firm does not represent any such potential Class Members with regard to the validity of any particularized account.

g.      Accordingly, to the extent Plaintiff's counsel representation is *limited* solely to his role as Class Counsel in this Litigation in connection with the

specific FDCPA and TCPA claims that are the subject of this Settlement Agreement, Defendant is entitled to communicate directly with any such consumers not expressly represented by Plaintiff's counsel and his firm for purposes of attempting to collect an alleged debts.

2.6 **Distribution of Settlement Funds**. Subject to Approval of the Court, the settlement funds will be distributed as follows:

a. At least fourteen (14) days after the Fairness Hearing, Defendant shall wire the Settlement Funds to the Administrator to be held in trust until the Finality Date.

b. Within twenty-one (21) days after the Finality Date, checks representing the distribution due to Plaintiff and Class Counsel described above will be mailed by the Administrator to Class Counsel.

c. Within twenty-one (21) days after the Finality Date, checks representing the distribution due to the Class will be mailed by the Administrator in accordance with the terms of this Agreement. Each such check will bear a notation indicating that it expires forty-five (45) days after the date of the check.

2.7 **Plaintiff's Request For a Service Award**.

a. Unless preliminarily approved by the Court by way of the Parties' Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement, within twenty (21) days after the entry of the Conditional Certification Order, Class Counsel will seek Court approval to provide Plaintiff with statutory damages and a service award.

b. Defendant will not oppose Plaintiff receiving up to $14,500 to compensate Plaintiff for his role as a class representative.

c. In return, Plaintiff represents and warrants that as of the execution of this Agreement Plaintiff is the owner of the individual claims asserted in the

Lawsuits, that Plaintiff has not assigned, pledged (except to his counsel), sold or otherwise transferred such claims (or an interest in such claims), and that on the Finality Date, he will own such claims free and clear of any and all liens, claims, charges, security interests or other encumbrances of any nature whatsoever, except for any contingent legal fees and expenses. Plaintiff further acknowledges that Defendant has always and consistently expressly denied any liability or wrongdoing whatsoever in connection with matters that are the subject of the Class Actions.

2.8 **Class Counsel's Attorney's Fees and Expenses**.

a. Unless preliminary approved by the Court by way of the Parties' Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement, within twenty (21) days after the entry of the Conditional Certification Order, Class Counsel will seek from the Court an award of their reasonable attorney's fees and costs, to be paid by Defendant and/or Defendant's insurer.

b. Should the Court approve a lesser amount of fees and costs, such approval shall not be a basis for any party to withdraw from this Agreement.

c. Regardless of the amount of fees approved by the Court, in no event will Defendant and/or Defendant's insurer pay a total amount in excess 1/3rd of the Settlement Fund, which is $127,050, for attorney's fees and costs.

d. Any Class Member who does not submit a valid and timely request for exclusion or other person may be represented by counsel of his or her choice, but all fees and expenses of such counsel, if other than Class Counsel paid under Section 2.6 above, shall be paid by the Class Member or other person.

**Section III - Conditions Necessary to the Consummation of the Settlement**

3.1 **Accuracy of Representations and Warranties**. The foregoing duties agreements of Plaintiff and Defendant are subject to the accuracy of the representations

and warranties contained in this Agreement and to the performance by the parties hereto of their obligations under this Agreement in all material respects.

3.2 **Conditions Precedent**. Additionally, Defendant and its insurer's obligation to provide the class relief described herein shall be subject to the satisfaction of each of the following conditions to on or prior to the Consummation Date[8] (unless such conditions are waived by Defendant):

a. the Finality Date shall have occurred;

b. the Court shall have approved and signed a Final Judgment in substantially the same form as the attached **Exhibit E** that includes a release of all of the Released Claims; and

c. the representations and warranties contained in Section II of this Agreement shall be true and correct as of the date of execution of this Agreement.

3.3 **Appeals**. In the event that an appeal is taken by a Class Member or any other person from the Conditional Certification Order or the Final Order and Judgment, the parties to this Agreement agree to support the position on such appeal that the order or orders appealed from should be affirmed in its or their entirety, and to Defendant will not oppose a file brief or other appropriate court papers in support of that position filed by Plaintiff. Nothing contained herein, however, shall prejudice the rights of Plaintiff, Class Counsel, or Defendant to appeal from any order of the Court that is inconsistent with the orders contemplated by this Agreement.

3.4 **Rights of Termination**. This Agreement shall be terminable by Plaintiff, Class Counsel and Defendant upon five (5) Business Days written notice in the event that any of the terms, conditions, or representations of the Agreement are not adhered to by the Court or by the Plaintiff or Class Counsel. If this Agreement is terminated,

---

[8] "Consummation Date" means the date upon which all obligations and duties of the Parties have been effectuated and the Agreement has been consummated.

Plaintiff, Defendant, and each of the Class Members shall be deemed to be in the same position as existed prior to its execution, with the same *status quo ante* rights and interests as they may have had absent the entry by Defendant and Plaintiff into these settlement discussions, and this Agreement and all other understandings and agreements between the parties and their respective counsel relating to the settlement, shall be deemed to be null and void and of no force and effect. In that event, the Plaintiff will notify the Court of Plaintiff's need file a Second Renewed Motion for Class Certification.

<b>Article IV</b> - <b>Miscellaneous Provisions</b>

4.1 **Entire Agreement and Modification**. This Agreement, including all referenced Exhibits, is the entire agreement of the Parties. All antecedent or contemporaneous extrinsic representations, warranties, or collateral provisions concerning the negotiation and preparation of this Agreement are intended to be discharged and nullified. No modification of this Agreement may be made, except by written agreement executed by Plaintiff, Class Counsel, and Defendant and its counsel, and approved by the Court.

4.2 **Notices**. All notices between and to Class Counsel and Defendant required under this Agreement shall be sent by first class U.S. mail or by e-mail to the recipient designated in this Agreement. The timeliness of all submissions and notices shall be measured by the date that is three (3) days after the date of the postmark (if sent by mail), or by the date of receipt (if hand delivered or sent by facsimile or e-mail). The persons designated to receive notice are as follows:

> James C. Vlahakis
> Sulaiman Law Group, Ltd.
> 2500 South Highland Avenue, Suite 200
> Lombard, Illinois 60148
> 630-575-8181
> jvlahakis@sulaimanlaw.com

CLASS COUNSEL

and:

Jonathan K. Aust
Bedard Law Group, P.C.
4855 River Green Parkway, Suite 310
Duluth, Georgia 30096
(678) 253-1871
jaust@bedardlawgroup.com

ATTORNEY FOR DEFENDANT

4.3    **Execution in Counterparts & E-signatures**. This Agreement may be executed in any number of counterparts and each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same Agreement. Audited and web-based E-signatures (for example, DocuSign and HelloSign) have the force of ink signatures.

4.4    **Governing Law and Place of Performance**. This Agreement and the rights and obligations of the Parties shall be governed by and shall be construed and enforced in accordance with the laws of the United States and the State of Illinois without regard to any conflict of law provision in said laws of the State of Illinois that might otherwise require the application of the laws of a jurisdiction other than that of the State of Illinois to the performance, validity, construction, or enforcement of this Agreement. This Agreement shall be performed in the Northern District of Illinois.

4.5    **Co-Drafting and Headings**. The parties shall be deemed to have drafted this agreement equally, and the settlement documents shall not be construed strictly against Plaintiff or Defendant. Paragraph numbering and Article and/or Section headings in this Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Agreement, nor to control or affect meanings, constructions or the effect of the same.

5.6   **Benefit of Agreement**. The Agreement shall be binding upon and inure to the benefit of the parties hereto, the Class Members, the Released Persons, and their respective successors, heirs, and assigns. Nothing in this Agreement is intended or shall be construed to give any other person or entity any legal or equitable right, remedy or claim under or in respect to this Agreement or any provision herein entered.

**PLAINTIFF**

/s/ *richard molinari*       Dated: __November 12, 2021__
Richard Molinari

**PROPOSED CLASS COUNSEL**

/s/ *James C. Vlahakis*       Dated: __November 12, 2021__
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Ave.
Suite 200
Lombard, Illinois 60148
630-575-8181
jvlahakis@sulaimanlaw.com

**DEFENDANT**

FINANCIAL ASSET MANAGEMENT
SYSTEMS, INC.

/s/_____       Dated: __November 12, 2021__

By and through

_____

Title: _____

Doc ID: bbaa5233d3e0c7b85465a96cd5595843aec31573

5.6    **Benefit of Agreement**. The Agreement shall be binding upon and inure to the benefit of the parties hereto, the Class Members, the Released Persons, and their respective successors, heirs, and assigns. Nothing in this Agreement is intended or shall be construed to give any other person or entity any legal or equitable right, remedy or claim under or in respect to this Agreement or any provision herein entered.

**PLAINTIFF**

/s/ _____          Dated:  November 12, 2021
Richard Molinari

**PROPOSED CLASS COUNSEL**

/s/ *James C. Vlahakis*                Dated:  November 12, 2021
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Ave.
Suite 200
Lombard, Illinois 60148
630-575-8181
jvlahakis@sulaimanlaw.com

**DEFENDANT**

FINANCIAL ASSET MANAGEMENT
SYSTEMS, INC.

/s/ _____          Dated:  November 12, 2021

By and through

_____Tim Farmer_____

Title: _____CFO_____

# Exhibit A

## Class Action Complaint

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD MOLINARI,

    Plaintiff, on behalf of himself and a class of similarly situated individuals,

v.

FINANCIAL ASSET MANAGEMENT SYSTEMS, INC.,

    Defendant.

CIVIL ACTION

CASE NO. 1:18-cv-01526

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, RICHARD MOLINARI ("Plaintiff"), by and through one of his attorneys, James C. Vlahakis of Sulaiman Law Group, Ltd., brings this civil action as Class Action Complaint on behalf of himself and a nationwide class of similarly situated individuals, pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a), 23(b)(2) and 23(b)(3) against Defendant, FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("FAMS"):

### JURISDICTION, PARTIES AND VENUE

1.     Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq., and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

2.     Subject matter jurisdiction is conferred upon this Court by the TCPA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3.      The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.      Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

5.      Plaintiff is a "person" as defined by 47 U.S.C. §153(39) of the TCPA.

6.      FAMS is a Georgia corporation which states that offers collection services for original creditors, stating: "Instead of handling account receivables on your own, FAMS can do the job for you, giving you more time to focus on your core business function. We provide asset management, debt collection services for various companies from different industries."[1]

7.      FAMS is engaged in the practice of collecting debts across the country using the telephone, including debts allegedly owed by consumers in the State of Illinois.

8.      FAMS is headquartered at 665 Molly Lane, #110, Woodstock, Georgia 30189.

9.      FAMS is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephone to collect delinquent consumer accounts and because its collection activities commenced after the subject debt was in default.

10.     The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

11.     FAMS' website touts its use of "skip tracing" which it describes as "the process of tracking down consumers whose contact information is no longer accurate/updated."

---

[1] http://fams.net/third-party-collections/ (Last accessed on February 19, 2018.)

12.     A screen capture of FAMS' "skip-and-collect" webpage on February 19, 2018 identified below:



13.     FAMS claims that its "specialized, criteria-based skip trace waterfall process optimizes new telephone and address information on a daily basis so our team of collectors can contact your accounts expeditiously."   See http://fams.net/skip-and-collect/ (last accessed on February 19, 2018).

14.     FAMS claims that its "third party collections programs are marked by ongoing communication, sophisticated technology, disciplined processes, attention to detail, experienced staff and a relentless focus on achieving client liquidation goals."  See, http://fams.net/third-party-collections/ (last accessed on February 19, 2018).

15.     FAMS' registered agent in Illinois is Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as FAMS conducts business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

### FACTS SUPPORTING CAUSES OF ACTION

17.     Section (b)(1)(A)(iii) of the TCPA makes it unlawful to make any call to cellular telephone using any "automated telephone dialing system" ("ATDS") or an "artificial or prerecorded voice" message without the consent of the person being called.

18.     Section 227(a)(1) of the TCPA defines an ATDS to mean "equipment which has the capacity (A) to store or produce number to be called, using a random or sequential number generator; and (B) to dial such numbers."

19.     As set forth below, FAMS violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number 708-xxx-8132 with an ATDS without his consent.

20.     As set forth below, FAM violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number using "artificial or prerecorded voice" message without his consent.

21.     In November 2017, FAMS placed calls to Plaintiff's cellular phone ending in 8132 in an attempt to collect a debt allegedly owed by his wife.

22.     Upon information and belief, FAMS obtained Plaintiff's cellular telephone number through a method known as "skip-tracing."

23.     Upon information and belief, FAMS obtained Plaintiff's cellular phone number by analyzing Plaintiff's wife's credit report.

24.     Alternatively, upon information and belief, FAMS obtained Plaintiff's cellular phone number by purchasing a commercially available report.

25.     Alternatively, upon information and belief, FAMS obtained Plaintiff's cellular phone number through the review of public records.

26.     Plaintiff is not and never was on the account(s) attached to the subject debt(s).

27.     Plaintiff was not an authorized user on any of the aforementioned account(s).

28.     Upon speaking with a live agent, Plaintiff was informed that the individual from whom FAMS was attempting to collect the debt was "Nicci Campbell."[2]

29.     FAMS called Plaintiff's phone seeking to get a hold of Plaintiff's wife each time it placed calls to Plaintiff's cellular phone.

30.     FAMS never had Plaintiff's prior express consent to place these autodialed and pre-recorded calls to Plaintiff's cellular phone.

31.     FAMS placed numerous calls to Plaintiff's cellular phone which resulted in Plaintiff being greeted by an automated pre-recorded message.

32.     FAMS placed or played pre-recorded voicemail messages on Plaintiff's cellular phone.

33.     FAMS placed or played artificially generated voicemail messages on Plaintiff's cellular phone.

34.     Plaintiff's outgoing voicemail message greeting utilizes Plaintiff's name.

---

[2] Plaintiff's wife is Nicci Molinari, maiden name "Campbell."

35.     Plaintiff's outgoing voicemail message explained to FAMS that the person using Plaintiff's cellular phone number is not the person from whom FAMS was attempting to reach to collect a debt.

36.     Notwithstanding the fact that Plaintiff was not the party FAMS was seeking to collect the debt from and the fact that FAMS did not have consent to place calls to Plaintiff's cellular phone, FAMS placed phone calls to Plaintiff's cellular phone ending in 8132 between November 2017 and the present day, including, but not limited to, calls on the following dates and approximate times: [3]

     a.    November 16, 2017 at 5:47 p.m. from telephone number 866-330-2703;

     b.    November 18, 2017 at 8:07 a.m. from telephone number 866-330-2703;

     c.    November 18, 2017 at 9:41 a.m. from telephone number 866-330-2703;

     d.    November 18, 2017 at 10:40 a.m. from telephone number 866-330-2703;

     e.    November 20, 2017 at 3:52 p.m. from telephone number 866-330-2703;

     f.    November 22, 2017 at 11:38 a.m. from telephone number 866-330-2703;

     g.    November 22, 2017 at 3:44 p.m. from telephone number 866-330-2703;

     h.    November 24, 2017 at 9:26 a.m. from telephone number 866-330-2703;

     i.    November 24, 2017 at 9:30 a.m. from telephone number 866-330-2703;

     j.    November 24, 2017 at 11:08 a.m. from telephone number 866-330-2703;

     k.    November 24, 2017 at 12:58 p.m. from telephone number 866-330-2703;

     l.    November 27, 2017 at 3:25 p.m. from telephone number 866-330-2703;

     m.    November 28, 2017 at 4:03 p.m. from telephone number 866-330-2703;

---

[3] The list of calls is not exhaustive. The list includes the phone calls that were documented by Plaintiff.

n.      December 21, 2017 at 3:02 p.m. from telephone number 866-330-2703;

o.      December 27, 2017 at 12:00 p.m. from telephone number 866-330-2703;

p.      December 27, 2017 at 12:00 p.m. from telephone number 866-330-2703;

q.      January 8, 2018 at 1:34 p.m. from telephone number 866-330-2703;

r.      January 8, 2018 at 6:50 p.m. from telephone number 866-330-2703;

s.      January 10, 2018 at 11:53 a.m. from telephone number 866-330-2703;

t.      January 10, 2018 at 4:46 p.m. from telephone number 866-330-2703;

u.      January 10, 2018 at 6:33 p.m. from telephone number 866-330-2703;

v.      January 11, 2018 at 10:53 a.m. from telephone number 866-330-2703;

w.      January 11, 2018 at 1:29 p.m. from telephone number 866-330-2703;

x.      January 12, 2018 at 11:42 a.m. from telephone number 866-330-2703;

y.      January 12, 2018 at 1:45 p.m. from telephone number 866-330-2703;

z.      January 24, 2018 at 6:22 p.m. from telephone number 866-330-2703;

aa.      January 25, 2018 at 8:38 a.m. from telephone number 866-330-2703;

bb.      January 25, 2018 at 3:59 p.m. from telephone number 866-330-2703;

cc.      January 26, 2018 at 8:53 a.m. from telephone number 866-330-2703;

dd.      January 26, 2018 at 11:33 a.m. from telephone number 866-330-2703; and

ee.      January 31, 2018 at 11:41 a.m. from telephone number 866-330-2703.

37.    Because of the frequency of when FAMS called Plaintiff's cellular phone, it is highly plausible that FAMS utilized an ATDS (as defined by 47 U.S.C. §227(a)(1)) to make these calls.

38.     Alternatively, because of the frequency of when FAMS called Plaintiff's cellular phone, it is highly plausible that FAMS utilized a "predictive dialer" (as defined by the Federal Communications Commission ("FCC")) to make these calls.

39.     Plaintiff never consented to any of the calls placed by FAMS to his cellular phone.

40.     FAMS also placed, or caused to be placed, prerecorded voicemail messages on Plaintiff's cellular phone, including, but not limited to, the following dates and times: [4]

  a.  November 16, 2017 at 3:07 p.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.";

  b.  November 24, 2017 at 9:33 a.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you."; and

  c.  December 4, 2017 at 12:4 7 p.m. from telephone number 866-330-2703. This message stated: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you."

41.     FAMS left these messages for Plaintiff's wife, not Plaintiff.

42.     Because FAMS called Plaintiff's cellular phone and left these pre-recorded messages on his voicemail, it is highly plausible that FAMS utilized an ATDS (as defined by 47 U.S.C. §227(a)(1)) to deliver these messages.

---

[4] The list of voicemail messages is not exhaustive. The list includes the voicemail messages that were documented by Plaintiff.

43.     Alternatively, because FAMS called Plaintiff's cellular phone and left these pre-recorded messages on his voicemail, it is highly plausible that FAMS utilized a "predictive dialer" (as defined by the FCC) to deliver these messages.

44.      Plaintiff never consented to any of the prerecorded messages placed by FAMS to his cellular phone.

45.     The Court may take judicial notice that the FCC released a Declaratory Ruling on January 4, 2008 ("2008 FCC Ruling") where the FCC found that a "predictive dialer" constitutes an ATDS under the TCPA.[5]

46.     The 2008 FCC Ruling states that is "first sought comment on predictive dialers in 2002 and asked whether using a predictive dialer is subject to the TCPA's autodialer restrictions." *See* 2008 FCC Ruling at ¶ 13.

47.     The 2008 FCC Ruling referred its prior "Notice of Proposed Rulemaking and Memorandum Opinion and Order" (the "2002 NPRM") and described the 2002 NPRM as follows:

> The Commission found that, based on the statutory definition of "automatic telephone dialing system," the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress.  The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology.

2008 FCC Ruling at ¶ 13 (footnotes omitted).

---

[5] A copy of the 2008 FCC Ruling can be accessed at: https://apps.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf

48.   The 2008 FCC Ruling states that "creditors and debt collectors may use predictive dialers to call [cellular] phones," if "the [cellular] phone number was provided by the subscriber in connection with the existing debt." 2008 FCC Ruling at ¶ 14.

49.   The 2008 FCC Ruling states that creditors are "responsible for demonstrating that the consumer provided prior express consent."

50.   According to the 2008 FCC Ruling:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.

2008 FCC Ruling, ¶ 10 (footnote omitted).

51.   FAMS violated Section (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number using a "predictive dialer" without his consent because FAMS was calling Plaintiff's cellular telephone number in an effort to speak with his wife regarding a debt she allegedly incurred.

52.   The FCC issued a Report and Order on July 3, 2003, ("2003 FCC Order") which declared that that a "predictive dialer" is an ATDS.[6]

53.   The 2003 FCC Order defined a predictive dialer as follows:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that

---

[6] The FCC's Report and Order on July 3, 2003 ("2003 FCC Order") can be accessed at: https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

> "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because the dialer simply hangs up when no telemarketer is free to take the call.

2003 FCC Order at fn. 31.

54.    The 2003 FCC Order explained has a "company can set its predictive dialer software for a predetermined abandonment rate (i.e., the percentage of hang-up calls the system will allow)." 2003 FCC Order at fn. 32.

55.    The 2003 FCC Order explained how "[p]redictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call." 2003 FCC Order at paragraph 146:

56.    The 2003 FCC Order explained that predictive dialers result in consumers facing "dead air" rather than connecting with live operator:

> In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

Paragraph 146 (footnote omitted).

57.    FAMS placed calls to Plaintiff with a predictive dialer which resulted in disconnected calls.

58.    The 2003 FCC Order explained the way that predictive dialers work results in consumers being unable "to make a do-not-call request[s]":

> the widespread use of predictive dialers now results in many "dead air" or hang-up calls in which consumers do not even have the opportunity to make a do-not-call request. Such calls are particularly burdensome for the elderly and disabled consumers.

11

Paragraph 91 (footnote omitted).

59.     Consistent with 2003 FCC Order, Plaintiff has been subjected to repeated unwanted autodialed and/or predictively dialed telephone calls without his consent.

60.     Consistent 2003 FCC Order, the manner in which FAMS operates its predictive dialer prevented Plaintiff from easily making a "do not call request."

61.     The telephone number ending in 8132 that Defendant called was assigned to cellular services for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

62.     The calls Defendant placed to Plaintiff's cellular phone were not placed for emergency purposes pursuant to 47 U.S.C. §227(b)(1)(A)(i).

63.     Plaintiff has suffered and continues to suffer from emotional distress, mental anguish, and anxiety as a direct result of FAMS's unlawful telephone calls and collection practices.

64.     FAMS' unwanted phone calls have severely disrupted Plaintiff's daily life and general well-being.

65.     FAMS' phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, physical harm (in the form of stress, anxiety, anguish, increased heartrate and blood pressure and nervousness), invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish and increased risk of physical injury due to the distraction caused by the phone calls.

66.     FAMS' phone harassment campaign and illegal collection activities have caused Plaintiff to suffer economic harm in the form of diminished value and utility of his telephone equipment and telephone subscription services, the wear and tear caused to his cellular telephone,

12

the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

67.     Concerned about the violations of his rights and invasion of his privacy, Plaintiff sought the assistance of the undersigned counsel to cease FAMS' unlawful collection tactics.

68.     In seeking the assistance of the undersigned counsel, Plaintiff incurred costs and expenses in the form of travel time and personal time.

69.     In enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991), *see also Mims v. Arrow Fin*. Servs., LLC, 132 S. Ct. 740, 745 (2012).

70.     As the Supreme Court has explained, Congress has the power to enact laws to elevate concrete harm "to the status of legally cognizable injuries." *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1549 (2016).

71.     *Spokeo* states that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and  that "both history and the judgment of Congress play important roles" in deciding whether a statutory violation is a concrete, de facto injury." *Id.*

72.     In enacting the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance.

73.     The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of

the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*.

74.　　Actions to remedy a defendant's invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states. See Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977).

75.　　The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent.

76.　　In enacting the TCPA, Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm.

77.　　Courts have held that TCPA alleged demonstrate concrete and legally cognizable harm. *See, e.g., Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding that Article III standing existed where a TCPA plaintiff received a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA as they "present the precise harm and infringe the same privacy interests Congress sought to protect"); *Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1311, 1312 (N.D. Ga. 2016) (rejecting application of *de minimis* rule to "a lone text message after withdrawal of consent" (internal quotation marks omitted) given "the [unambiguous] language of the TCPA . . . that a violation can occur from a single call" under §227(b)(1)(A) in contrast to § 227(c)(5) which requires more than one call); *Cabiness v. Educ. Fin. Solutions, LLC* 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5-6 (a violation of the TCPA "is sufficient on its own to constitute an injury in fact" because "[e]very unconsented call

14

through the use of an ATDS to a consumer's cellular phone results in actual harm"); *Cour v. Life360, Inc.*, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding concrete injuries where plaintiff alleged he received one text message in violation of the TCPA); *Meyer v. Bebe Stores, Inc.*, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) (finding concrete injuries based on one alleged violation of the TCPA); *Smith v. Microsoft Corp.*, No. 11-CV-1958 JLS (BGS), 2012 U.S. Dist. LEXIS 101197 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) (finding "at by alleging he received a text message in violation of the TCPA, [plaintiff] has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy"); *Hossfeld v. Compass Bank*, 2017 U.S. Dist. LEXIS 182571, *14-15 (N.D. Al. Nov. 3, 2017) Mr. Hossfeld has undoubtedly cleared the particularity hurdle and asserted a personal connection to the harm claimed that is sufficient to establish this prong of the standing requirement. The two unsolicited calls described in Mr. Hossfeld's first amended complaint were made to his personal cell phone number. (Doc. 12 at ¶ 17.) Mr. Hossfeld further alleges how those automatically-dialed calls impacted him personally— they temporarily deprived him from being able to use his cell phone, invaded his privacy, wasted his time, and reduced his cell phone's battery's life. (Doc. 12 at 7 ¶ 40.)"

### COUNT I – INDIVIDUAL CLAIM FOR VIOLATIONS OF THE TCPA
### AUTODIALED AND/OR PREDICTIVELY DIALED CALLS WITHOUT CONSENT

78.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

79.     As alleged above, FAMS placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an ATDS or predictive dialer without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

80.     As pled above, Plaintiff was harmed by FAMS' calls to his cellular phone.

81.    FAMS knew its dialing practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's frustration, well-being and expense.

82.    This Court should award Plaintiff damages of at least $500 per phone call and up to treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C).

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court issue the following relief:

a.    declare FAMS' phone calls to Plaintiff to be violations of the TCPA;

b.    enjoin FAMS from contacting Plaintiff in violation of the TCPA;

c.    award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.    award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT II – CLASS BASED CLAIM FOR VIOLATIONS OF THE TCPA AUTODIALED AND/OR PREDICTIVELY DIALED CALLS WITHOUT CONSENT

83.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

84.    Similar to how FAMS called Plaintiff in violation of the TCPA, FAMS called more than forty persons with an ATDS or a predictive dialer without their consent.

85.    FAMS knew its dialing practices were in violation of the TCPA, yet continued to employ them to increase profits at class members' frustration, well-being and expense.

86.    The proposed classes can be defined as:

All persons in the United States who were called by FAMS on their cellular telephone numbers when FAMS was using an autodialer or predictive dialer system

87.    Because FAMS bears the burden of proof on whether it had consent to call Plaintiff and the proposed class members with an ATDS and/or predictive dialer, the above proposed class

16

definitions does not contain reference to whether FAMS had consent to call the cellular numbers in the manner described.

88.     FAMS, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

89.     Pursuant to 47 U.S.C. §227(b)(3)(B), FAMS is liable to Plaintiff and the putative class members for a minimum of $500 per call.

90.     Moreover, FAMS's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff and the putative class members pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff RICHARD MOLINARI, on behalf of a class of similarly situated individuals, respectfully requests that this Honorable Court issue the following relief:

a.  declare FAMS' phone calls to Plaintiff and similarly situated class members to be violations of the TCPA;

b.  enjoin FAMS from contacting Plaintiff and similarly situated class members in violation of the TCPA;

c.  award Plaintiff and class members damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.  award Plaintiff and similarly situated class members any other relief this Honorable Court deems equitable and just.

### COUNT III – INDIVIDUAL CLAIM FOR VIOLATIONS OF THE TCPA PRE-RECORDED AND/OR ARTIFICIAL VOICE MESSAGES WITHOUT CONSENT

91.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

92.     As alleged above, FAMS placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an ATDS or predictive dialer without his consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

93.     As pled above, Plaintiff was harmed by FAMS' messages to his cellular phone.

94.     FAMS knew its pre-recorded and artificial voice messages were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's frustration, well-being and expense.

95.     This Court should award Plaintiff damages of at least $500 for each pre-recorded and/or artificial voice message and up to treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C).

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court issue the following relief:

a.  declare FAMS' pre-recorded and/or artificial voice messages to Plaintiff to be violations of the TCPA;

b.  enjoin FAMS from contacting Plaintiff in violation of the TCPA;

c.  award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

d.  award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT IV – CLASS BASED CLAIM FOR VIOLATIONS OF THE TCPA
### PRE-RECORDED AND/OR ARTIFICIAL VOICE MESSAGES WITHOUT CONSENT

96.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

97.     Similar to how FAMS called Plaintiff in violation of the TCPA, FAMS called more than forty persons with an ATDS or a predictive dialer without their consent.

98.     FAMS knew its pre-recorded and artificial voice messages were in violation of the TCPA, yet continued to employ them to increase profits at class members' frustration, well-being and expense.

99.     The proposed classes can be defined as:

> All persons in the United States who were called by FAMS on their cellular telephone numbers when FAMS used pre-recorded or artificial voice messages during the calls

100.    Because FAMS bears the burden of proof on whether it had consent to call Plaintiff and the proposed class members with pre-recorded and/or artificial voice messages, the above proposed class definitions do not refer to revocation of consent.

101.    FAMS, through its agents, representatives and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

102.    Pursuant to 47 U.S.C. §227(b)(3)(B), FAMS is liable to Plaintiff and the putative class members for a minimum of $500 per call.

103.    Moreover, FAMS' willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff and the putative class members pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff RICHARD MOLINARI, on behalf of a class of similarly situated individuals, respectfully requests that this Honorable Court issue the following relief:

a.  declare FAMS's phone calls to Plaintiff and similarly situated class members to be violations of the TCPA;

b.  enjoin FAMS from calling Plaintiff and similarly situated class members in violation of the TCPA;

    c.   award Plaintiff and class members damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

    d.   award Plaintiff and similarly situated class members any other relief this Honorable Court deems equitable and just.

## COUNT V – INDIVIDUAL VIOLATIONS OF THE FDCPA

104.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

105.    As pled above, Plaintiff was harmed by FAMS's calls to his cellular phone.

106.    FAMS continued placing the calls with knowledge that Plaintiff was not the party from whom FAMS was attempting to collect the debt.

107.    FAMS' repeated and unwanted calls to Plaintiff's cellular telephone number violates the FDCPA.

108.    FAMS violated § 1692b by repeatedly calling Plaintiff in an attempt to contact his wife.

109.    FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(1).

110.    FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(2).

111.    FAMS violated § 1692b by repeatedly calling Plaintiff without complying with § 1692b(3).

112.    FAMS violated § 1692c(a)(1) by repeatedly calling Plaintiff in an attempt to contact his wife.

113.    FAMS violated § 1692c(b) by repeatedly calling Plaintiff in an attempt to contact his wife.

114.    FAMS violated § 1692d because calling Plaintiff with a predictive dialer and/or autodialer to contact his wife in a manner that was harassing, oppressive and abusive.

115.    FAMS violated § 1692d because calling Plaintiff with pre-recorded and/or artificial voice messages to contact his wife in a manner that was harassing, oppressive and abusive.

116.    FAMS violated § 1692d(5) by calling Plaintiff in an attempt to contact his wife "repeatedly or continuously with intent to annoy, abuse, or harass".

117.    FAMS violated §1692e because its calls to Plaintiff constitute false, deceptive, or misleading representations or means in connection with the collection of a debt allegedly owed by his wife.

118.    FAMS violated §1692e when it engaged in false, deceptive, or misleading representations or means in connection with the collection of a debt because when it called Plaintiff with an autodialer and/or predictive dialer, it had no legal right to do so.

119.    FAMS violated §1692e when it engaged in false, deceptive, or misleading representations or means in connection with the collection of a debt because when it called Plaintiff with pre-recorded and artificial voice messages, it had no legal right to do so.

120.    FAMS violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged debt. Plaintiff did owe and was not liable for the alleged debt at all times FAMS placed calls to his cellular phone attempting to collect the subject debt.

121.    FAMS violated §1692e(2) when it falsely misrepresented that it had the legal right to place autodialed and/or predictively dialed calls to Plaintiff's cellular phone without his consent.

21

122.     FAMS violated §1692e(2) when it falsely misrepresented that it had the legal right to call Plaintiff's cellular phone with pre-recorded and/or artificial voice messages without his consent.

123.     FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by placing phone calls to Plaintiff's cellular phone attempting to harass Plaintiff into paying a debt that he does not owe.

124.     FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by placing autodialed and/or predictively dialed calls to Plaintiff's cellular phone without his consent.

125.     FAMS violated §1692f by using unfair and unconscionable means to collect the alleged debt by calling Plaintiff's cellular phone with pre-recorded and/or artificial voice messages without his consent.

WHEREFORE, Plaintiff RICHARD MOLINARI respectfully requests that this Honorable Court:

a.   declare that the practices complained of herein are unlawful and violate the FDCPA;

b.   enjoin Defendant from contacting Plaintiff in violation of the FDCPA;

c.   award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.   award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.   award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT VI – CLASS BASED VIOLATIONS OF THE FDCPA

126.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

22

127.    On information and belief, FAMS contacted over 40 non-debtors in the same manner as set forth in the preceding Count V.

128.    To recap, FAMS violated the FDCPA by skip tracing debtors and then placing unlawful, harassing, abusive, oppressive, false, deceptive, misleading, unfair and unconscionable debt collection calls to third-parties in violation of §§ 1692b(1), 1692b(2), 1692b(3),1692c(a)(1), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(2) and 1692f of the FDCPA.

129.    Pursuant to 15 U.S.C. § 1692k, Plaintiff and the Class are entitled to actual damages, statutory damages, attorneys' fees and costs.

130.    Plaintiff brings this Count on behalf of the following putative class.

131.    The proposed class can be provisionally defined as follows:

All persons to whom Financial Asset Management Systems, Inc. placed calls, between February 20, 2018, and February 20, 2017, where the phone calls violated §§ 1692b(1), 1692b(2), 1692b(3),1692c(a)(1), 1692c(b), 1692d, 1692d(5), 1692e, 1692e(2) and 1692f of the FDCPA.

WHEREFORE, Plaintiff RICHARD MOLINARI requests that this Honorable Court:

a.    declare that the practices complained of herein are unlawful and violate the FDCPA;

b.    enjoin Defendant from continuing to violate the FDCPA;

c.    award Plaintiff and putative class members statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.    award Plaintiff and class members costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.    award Plaintiff and the putative class members any other relief this Honorable Court deems equitable and just.

### COUNT VII – INDIVIDUAL AND CLASS BASED CLAIM FOR VIOLATIONS OF THE ICFA

132.    Plaintiff restates and reallages the above paragraphs as through fully set forth herein.

133.    The ICFA states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

134.    Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

135.    FAMS is engaged in commerce in the State of Illinois with regard to Plaintiff. FAMS specializes in debt collection, which is an activity within the stream of commerce and utilized in its regular course of business.

136.    FAMS violated 815 ILCS 505/2 by engaging in unfair acts in its attempts to collect a debt from Plaintiff that didn't belong to him without his consent.

137.    It was unfair for FAMS to seek to collect a debt from Plaintiff through relentless harassing phone calls to his cellular phone attempting to induce him into paying a debt he did not owe.

138.    It was unfair and deceptive for FAMS to relentlessly contact Plaintiff through means of an ATDS when it had no reason or permission to do so.

139.    It was unfair for Defendant to place or cause to be placed no less than 31 phone calls to Plaintiff's cellular phone between November 2017 through the present day, without his consent.

140.    It was unfair for FAMS to continue placing calls to Plaintiff after it knew that it was calling the wrong party.

141.    FAMS' unfair and deceptive conduct is inherently oppressive as Plaintiff had no choice but to submit to the relentless harassing phone calls to his cellular phone.

142.    Moreover, FAMS's unfair conduct is against public policy because upon information and belief FAMS has subjected more than 40 Illinois consumers to unsolicited and unwanted autodialed and/or predictively dialed calls, resulting in significant harm in the form of invasion of privacy.

143.    Moreover, FAMS's unfair conduct is against public policy because upon information and belief FAMS has subjected more than 40 Illinois consumers to unsolicited and unwanted pre-recorded and/or artificial voice messages, resulting in significant harm in the form of invasion of privacy.

144.    Upon information and belief, FAMS systematically places unsolicited and harassing phone calls to consumers in Illinois in order to aggressively collect debts to increase its profitability at the consumers' expense.

145.    Placing unsolicited and harassing phone calls to Illinois consumers is an unfair business practice willfully employed by FAMS and is done on a large scale.

146.    Moreover FAMS' unlawful and unfair collection efforts gives it an unfair competitive advantage over businesses that collect debts lawfully (companies who legally place

25

calls with prior consent, as authorized, and who lawfully cease calling upon realizing that they do not have consent to place such calls).

147.    As alleged above, Plaintiff was substantially harmed by FAMS' misconduct.

148.    Upon information and belief, over 40 Illinois residents have been substantially harmed by FAMS' misconduct.

149.    The class can be provisionally defined as all Illinois residents who were called by FAMS as a result of skip trace searches where the calls placed by FAMS resulted in autodialed and/or predictively dialed calls, or pre-recorded/artificial voice messages where the person called was not the debtor in question.

150.    An award of punitive damages is appropriate because FAMS' conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the harassing phone calls.

WHEREFORE, Plaintiff RICHARD MOLINARI, individually and on behalf of a class of similarly situated Illinois residents, respectfully requests that this Honorable Court:

a.    enter judgment in the class's favor and against FAMS;

b.    enjoin further unlawful conduct;

c.    award Plaintiff and the putative class members damages in an amount to be determined at trial;

d.    award punitive damages in an amount to be determined at trial;

e.    award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

f.    award Plaintiff and the putative class members any other relief this Honorable Court deems equitable and just.

### THE ELEMENTS OF FRCP 23 ARE SATISFIED

151. The proposed class members can be identified through Defendant's records. *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation,* 795 F. 3d 380, 397 (3d Cir. 2015) (finding that plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

152. For example, FAMS's records can and will be used identify the putative class members because FAMS' records identify the times and dates of calls (for a period of four years prior to the filing of this civil action for the TCPA claims) the type of call (in-bound and out-bound), the disposition of the call (recorded message left on a person's voice mail, live connection or no contact) and related notations in Defendant's records (do not call requests).

153. The proposed classes are also ascertainable because are commercially available applications and program which can identify whether telephone number have always been identified as cellular numbers, or alternatively, when a particular residential/landline telephone number was "ported" (turned into/converted to) a cellular telephone number.

154. Excluded from the proposed class(es) are counsel for the parties, Defendant's employees and agents, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

155. Numerosity is satisfied because FAMS made autodialed or predictively dialed calls to persons after FAMS was made aware that the wrong party was being dialed.

156. Numerosity is also satisfied because FAMS (a) used pre-recorded and/or artificial voice messages when calling persons who were not the debtor that FAMS was trying to call (b)

27

after FAMS was made aware that the person it had reached was not the person FAMS was trying to call and/or (c) where the person that FAMS had reached told FAMS to stop calling him/her.

157. FAMS contacted over 40 persons in the manner outlined above.

158. The joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown, the persons called by FAMS can be ascertained through discovery, and Plaintiff believes there are hundreds and possibly thousands of Class members based upon FAMS' representations regarding the scope of its business.

159. Commonality and predominance are satisfied because FAMS acted in a common manner toward Plaintiff and the proposed class members in the manner in which FAMS placed the calls in question and the manner in which FAMS obtained Plaintiff's telephone number (via skip-tracing).

160. There are several questions of law and fact common to the claims of Plaintiff and the proposed class members, such as: (a) whether FAMS called Plaintiff and the proposed class members with an autodialer and/or predictive dialer, (b) whether FAMS called Plaintiff and the proposed class members utilizing pre-recorded and/or artificial messages, (c) whether FAMS lacked consent, and (e) whether FAMS' conduct in continuing to call Plaintiff and others with knowledge that it did not have the consent to place such calls constitutes part of a pattern of noncompliance.

161. Plaintiff's claims are typical of the claims of the proposed class members, claims all arise from the same operative facts and are based on the same legal causes of action.

162. Common questions predominate over any potential individual issues.

163. Common questions of proof predominate over any potential individual issues.

164.     A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

165.     The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

166.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest antagonistic to those of the Class and Defendants do not have any defenses unique to Plaintiff.

167.     Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims.

168.     Mr. Vlahakis began defending TCPA class actions in 1998 and continued to do so through 2017.

169.     Mr. Vlahakis has litigated over three dozen TCPA based putative class actions.

170.     In conjunction with counsel for the class members, Mr. Vlahakis has obtained Court approval TCPA class class-bases settlements.   *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement).

171.    Mr. Vlahakis has litigated TCPA based class certification issues in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013).  *See also*, *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

172.    Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of FDCPA class actions.

173.    Additionally, Mr. Vlahakis has successfully ascertained the identities of putative TCPA class members – both individually and in conjunction with industry experts.

174.    Finally, to the extent this case necessitates action before the FCC by way to petitions for declaratory relief, Mr. Vlahakis has filed two petitions for declaratory relief before the FCC.

175.    Plaintiff's other counsel are highly competent and experienced class action attorneys.

**Plaintiff demands trial by jury.**

Dated: February 28, 2018

Respectfully Submitted,

*/s/ James C. Vlahakis*
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 200
Lombard, IL 60148

*Additional Counsel*
Ahmad Sulaiman
Omar T. Sulaiman
Mohammed O. Badwan
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue,
Suite 2500
Lombard, IL 60148

# Exhibit B-1

## Long-Form Notice

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

**THIS IS A NOTICE OF A SETTLEMENT OF A CLASS ACTION LAWSUIT.**
**THIS IS <u>NOT</u> A NOTICE OF A LAWSUIT AGAINST YOU.**

This Notice is being sent to you because a Court granted preliminary approval of a proposed class action settlement in the case of RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals and against FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. (known together as "the Parties"), Case no. 18-cv-01526 (filed in the United States District Court for the Northern District of Illinois).

**If you received pre-recorded messages from a debt collector named Financial Asset Management Systems, Inc. where the pre-recorded messages used the name "FAMS", you may benefit from this proposed class action settlement.**

*This is not a solicitation from a lawyer.*

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| COMPLETE A CLAIM FORM TO RECEIVE A PORTION OF SETTLEMENT PROCEEDS | If you wish to receive a portion of the class settlement proceeds, you must complete and return the claim form on or before [60 days from mailing of notice]. |
| EXCLUDE YOURSELF | You will receive no benefits, but you will retain your legal claims, if any, against the Defendant. |
| OBJECT | Write to the Court explaining why you don't like the settlement. You may also appear at the fairness hearing. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |

**1.       What is the Litigation about?**

This Litigation was filed against Defendant Financial Asset Management Systems, Inc. ("FAMS") where the Complaint asserted violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA") and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") 815 ILCS 505/1, *et seq.*, resulting from FAMS's causing pre-recorded messages to be sent to certain Illinois based cellular telephone numbers. Two of the messages received by Plaintiff Richard Molinari stated the following:

- Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

- Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Section 227(b)(1)(A)(iii) of the TCPA prohibits any person from calling a cell phone number "using an automatic telephone dialing system or an artificial or prerecorded voice. Plaintiff has also alleged contends that FAMS's use of its shortened name violates § 1692e(14) of the FDCPA which requires debt collectors to utilize their full legal names.

**2.       Why did you get this Notice?**

You are receiving this Notice because you were identified by Defendant/FAMS as someone who may have received a pre-recorded message from FAMS in potential violation of the TCPA and FDCPA. For settlement purposes, the Court has defined Class Members as follows:

- a **TCPA Settlement Class** consisting of:

   All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and

December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

- a **FDCPA Settlement Class** consisting of:

  All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

For the purposes of this Notice, persons potentially included in both proposed classes will be referred to as "Class Members".

### 3. Why is this a class action?

In a class action, one or more persons, called a "Class Representative" (in this case, Plaintiff Richard Molinari), sued Defendant/FAMS on behalf of people (proposed "Class Members") who received similar pre-recorded messages. All of these people together are a referred to as "Class Members." The Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a settlement?

Plaintiffs, on the one hand, and Defendant, on the other have agreed to settle the Litigation to avoid the time, risk, and expense of defending the Litigation, and to achieve a final resolution of the disputed claims. Under the proposed settlement, Class Members will have the opportunity to obtain a payment in full settlement of the claims raised in the Litigation. The Class Representatives and their attorneys, who are experienced consumer and class action attorneys, think the settlement is best for all Class Members.

### 5. How do the Parties know if I was contacted by FAMS?

You received this notice because Defendant's records identified you as a Class Member because Defendant's records show "successfully" delivered pre-recorded messages to your cellular phone number. Defendant's records suggest that you might be a Class Member of the proposed Class Action Settlement that the Court has certified for settlement purposes.

### 6. What does the Class Action Settlement provide?

Defendant has agreed to establish a Settlement Fund of (1) $385,000 to compensate Class Members, Plaintiff Richard Molinari and Class Counsel. Proceeds of the Settlement Fund will be distributed to each Class Member who submits an on-line claim form or the attached claim form, by the deadline stated below, subject to validation of the claim forms by an independent third-party claims administrator.

Defendant has also agreed and/or will not oppose using part of the Settlement Fund to Compensate Plaintiff for his service as a Class Representative and to compensate him for Defendant's alleged violations of the TCPA and the FDCPA. The amount to be awarded to the Plaintiff is subject to Court approval.

Also in addition to the Settlement Fund, and *subject to approval by the Court,* Defendants will pay to Plaintiffs' counsel the sum of up to 1/3rd ($127,050) of the Settlement Funds to reimburse Class Counsel for the attorney's fees and costs her incurred with respect to the Plaintiffs and the Class' claims.

### 7. How am I able to receive a portion of the Settlement Fund?

If you wish to claim your share of the Settlement Fund you must submit a claim form that is referenced in this Notice. In order to receive a settlement check, you must complete and mail the claim form attached hereto or submit and on-line claim form. The Parties are proposing two methods of providing settlement funds to Class Members, the first involves a **TCPA Settlement Fund** and the second involves an **FDCPA Settlement Fund**. Each Fund is described below.

With regard to the proposed **TCPA Settlement Fund**, the TCPA is a federal statute that provides for a recovery of $500 for each TCPA violation that can be proven by a plaintiff. A court, in its discretion, may award between $501 and up to $1,500 for willful violations of the TCPA. If you submit a valid and timely claim form for the proposed **TCPA Settlement Fund**, you will receive a share of the Settlement Fund that is related to how many "successfully" delivered pre-recorded messages were sent to the voice-mail box of your cellular telephone. Here, Defendant disputes that its pre-recorded messages violated the TCPA because Defendant claims that it did not initial a "call" to the cellphone numbers in question. Rather, Defendant claims that it used third-party technology that "drops" pre-recorded messages into the voice-box associated with a particular cellular telephone number. Based, in part on this defense, Defendant contends that the calls do not fall under the TCPA and there is no liability. Defendant's records identify how many "successfully" transmitted pre-recorded messages were sent to the voice-mail box of your cellular telephone. The exact amount that each Class Member will receive will depend upon the number of Class Members that submit claim forms. The Parties believe that 16,352 "successfully" delivered pre-recorded

2

messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017. The proposed **TCPA Settlement Fund**, would involve a settlement fund of $233,500. Based on the TCPA Class fund, it is not possible to provide each Class Member with the full statutory award of $500 per call. If each class member submitted a claim, then each class member would recover $14.27 per call. However, each class member who submits an approved claim will be entitled to $500 per successfully delivered message unless the total of such payments would exceed the $233,500 cap on the fund total. If the cap is met, then TCPA class members with approved claims will be entitled to a *pro rata* share of the fund based on the number of successfully delivered messages they received. Counsel, however, anticipate that not every Class Members will submit a claim form and that other cases suggest that less than 10% of class members will submit claims. Counsel estimate that the average number of "successfully" delivered pre-recorded messages to Class Members are six (6) messages. If 10% of Class Members (141 persons) submit valid claim forms, and they each received six (6) messages (846 messages) each Class Member who submits a valid claim form could theoretically receive up to $276 in compensation for each "successfully" delivered pre-recorded message.

With regard to the proposed **FDCPA Settlement Fund**, he FDCPA is a federal statute which provides for both individual actions and class actions. In an individual action, the person bringing the suit may recover (i) any actual damages sustained as a result of the alleged violation; and (ii) statutory damages of between $0 and $1,000.00. In a class action, the maximum possible recovery is (i) any actual damages sustained as a result of the alleged violation by the class members and (ii) the lesser of 1% of Defendants' net worth or $500,000.00 (whichever is less). The Court, in its discretion, may award anything up to the maximum amount to a prevailing party. The Parties represent that $10,000.00 is more than 1% of FAMS's net worth, therefore, it exceeds the maximum class recovery for a FDCPA class. The FDCPA Settlement Fund would share $10,000.00. If you submit a valid and timely claim form, the Administrator shall identify the total number of valid claims submitted by members of the *FDCPA Settlement Class* and award a pro rata share of the $10,000 to each Class Member who has submitted a valid claim. Under no circumstance shall any single Class Member receive more than $1,000 for recovery under the *FDCPA Settlement Class.* Unlike the TCPA recovery, the FDCPA recovery will pay the same amount to each Class Member who submits a valid claim. Because the proposed Settlement Fund far exceeds the maximum recovery that would be allowed by the FDCPA if this Litigation went to trial, Class Counsel believes that the Settlement is a fair and reasonable settlement.

You may submit an online claim form located at www.FAMStextmessageclassaction/claimform.com or you may fill out the form included at the end of this document.

**8.     When will I be paid?**

You will receive these benefits approximately 45 days after the Court enters a Final Approval Order. This estimation is premised on the assumption that no objections are received.

**9.     What rights am I giving up if I submit a claim form to receive a portion of the proposed Settlement Funds?**

Unless you exclude yourself from this settlement, all of the Court's orders will apply to you, and you give Defendant a release of claims. A release of claims means you cannot sue Defendant for any of the claims or issues involved in this Litigation. This description of the effect of a "release of claims" is in general terms and does list the full release language that is contained in the Settlement Agreement signed by Plaintiff and Defendant. For a complete statement of all the contentions, proceedings and settlement terms in this case, you should consult the files relating to the Litigation, which are available for your inspection at the Clerk of the United States District Court for the Northern District of Illinois, 219 S. Dearborn Street, 20th Floor, Chicago, Illinois, 60604.

**10.    You may exclude yourself from the proposed settlement.**

If you do not want to receive the benefits of the settlement but you want to keep your legal claims against Defendant, then you must take steps to *exclude yourself* from this proposed settlement. To exclude yourself from the Settlement, you must send a letter which states:

> I hereby exclude myself from the proposed settlement in the case of <u>Richard Molinari vs. Financial Asset Management Systems, Inc.</u>, no. 18-cv-01526 (N.D. Ill.).

**Be sure to include your name, address, telephone number, and your signature**. You must mail your exclusion request so that it is postmarked no later than <mark>December – ,2021 [or January -- 2022]</mark> to:

KCC
PO Box 43501
Providence RI 02940-3501

Alternatively, you may submit an exclusion request by filling out the information located at www.FAMStextmessageclassaction/exclusionform.com

**If you exclude yourself you will NOT receive a portion of the Settlement Funds**

3

Further, if you exclude yourself, the time you have in which to file your own lawsuit (called the "statute of limitations") will begin to run again.

**11.     Who represents the rights of class members?**

You are a potential Class Member in this Litigation. The Court has named the attorney James C. Vlahakis as provisional Class Counsel. You will not be charged Mr. Vlahakis' services. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you choose to hire your own lawyer, he or she must file an appearance by ____, 2022 [5 days prior to fairness hearing].

**12.     What can you do if you do want the Court to approve the proposed settlement?**

You can tell the Court that you do not agree with the settlement or some part of it, by filing an "objection." In order to object to the settlement or any part of the settlement, you must send a letter stating that you object and the reasons why you think the Court should not approve the settlement. You must include the case: your name, address, telephone number, and signature and include the case name:

> Richard Molinari vs. Financial Asset Management Systems, Inc., no. 18-cv-01526 (N.D. Ill.).

If you plan to object to the settlement, you may also appear at the fairness hearing (explained below in Paragraph 14). You must mail your objection so that it is postmarked no later than [insert date] to:

> Clerk of the Court,
> United States District Court for the Northern District of Illinois,
> 219 South Dearborn Street,
> Chicago, IL 60604

**You must also mail or email a copy of your objection to these attorneys**:

| **Class Counsel** | **Counsel for Defendant** |
|---|---|
| James C. Vlahakis | Jonathan K. Aust |
| Sulaiman Law Group, Ltd. | Bedard Law Group, P.C. |
| 2500 South Highland Ave., Suite 200 | 4855 River Green Parkway, Suite 310 |
| Lombard, Illinois 60148 | Duluth, Georgia 30096 |
| jvlahakis@sulaimanlaw.com | jaust@bedardlawgroup.com |

**13.     What happens if you do nothing?**

If you do nothing, you will not receive any portion of the Settlement Fund. Unless you exclude yourself from the settlement, you will not be able to sue or Defendant over the released claims.

**14.     When and where will the Court decide whether to approve the settlement?**

The Court will hold a hearing to decide whether to approve the settlement ("Final Fairness Hearing") on _____, 2022, at _____ a.m./p.m. You may attend if you wish, but you are not required to do so. The hearing will be held before the **Honorable Sara L. Ellis in Courtroom 1403** of the United States District Court for the Northern District of Illinois, located at the Everett McKinley Dirksen United States Courthouse, **219 South Dearborn Street, Chicago, IL 60604**.

At the Final Fairness Hearing the Court will consider whether the proposed settlement is fair, reasonable, and adequate and, if so, whether it should be granted final approval. The Court will hear objections to the settlement, if any. The Court may decide, postpone, or continue the hearing.

YOU ARE <u>NOT</u> REQUIRED TO ATTEND THIS HEARING TO BENEFIT FROM THIS SETTLEMENT. The hearing may be postponed to a later date without notice.

**15.     What will happen if the Court does not approve the settlement?**

If the Court does not approve the settlement, or if the settlement does not become final for some reason, you will receive no benefits from the Settlement and the case will continue or be dismissed.

**16.     This notice is only a summary of the proposed settlement of the Litigation.**

All pleadings and documents filed in Court, including the Class Action Settlement Agreement, may be reviewed or copied in the Clerk of Court, United States District Court for the Northern District of Illinois, Eastern Division. Please do not call the Judge about this case. Neither the Judge, nor the Clerk of Court, will be able to give you advice about this case.

4

**17.     If you want to receive additional information contact provisional Class Counsel at:**

James C. Vlahakis
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
jvlahakis@sulaimanlaw.com

■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■-■

<u>**CLAIM FORM**</u>

I certify that before filing out this Claim From that I read or had the opportunity to read the Notice attached to this Claim Form which detail a proposed class action settlement and/or I have read or had the opportunity to read the Long-Form Notice hosted as www.FAMStextmessageclassaction.com com

With regard to the proposed settlement in the case of <u>Richard Molinari vs. Financial Asset Management Systems, Inc.</u>, no. 18-cv-01526 (N.D. Ill.), I hereby make a claim for my share of the settlement in the above-captioned case.

I further certify under penalty of perjury that I was the subscriber, owner or primary user of the below listed cellular telephone number during one or more of the following years, 2015, 2016 and/or 2017.

X_____ (<-- sign your name)

Print or type your full name here →_____

_____
Address
_____
City                       State              Zip

Cellular telephone number: _____

Identify the month and year that you obtained the cellular number.

_____
Month          Year

**THIS CLAIM FORM MUST BE MAILED TO KCC BY [INSERT DATE] AT:**

KCC
PO Box 43501
Providence RI 02940-3501

# Exhibit B-2

## Post-Card Notice

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

*Molinari v. Financial Asset Management Systems, Inc.*
Settlement Administrator

KCC
PO Box 43501
Providence RI 02940-3501

First Class Mail

Postage Paid

**COURT AUTHORIZED NOTICE OF POTENTIAL CLASS ACTION SETTLEMENT ("NOTICE")**

**[Postal Service Bar Code]**

**To:** [insert name]
　　　[insert street]
　　　[insert City, IL and ZIP-CODE]

**Claim Number:** [insert number]

**-You May Be Entitled to Receive Payment From a Potential Class Action Settlement-**

**See reverse side or go to** www.FAMStextmessageclassaction.com **for more information**

**Why Are You Receiving this NOTICE?** Your cellular number appears on records related to a proposed Class Action Settlement involving a federal lawsuit filed in the Northern District of Illinois as case no. 18-cv- 1526 involving Plaintiff Richard Molinari ("Plaintiff") and Defendant Financial Asset Management Systems, Inc. ("FAMS"). Plaintiff and FAMS are seeking court approval of a class action settlement involving certain pre-recorded messages that FAMS sent to voice-mail of Plaintiff's cellular phone where Plaintiff claims that the messages violated the Telephone Consumer Protection Act, 47 U.S.C. §227 and the Fair Debt Collection Practices Act, 15 U.S.C. §1692. Records indicate that FAMS sent pre-recorded voice-mail(s) to your cellular phone in the years 2015, 2016 and/or 2017. The Court has preliminarily appointed attorney James C. Vlahakis ("Class Counsel") to represent Class Members like yourself.  Complete details regarding the lawsuit and the settlement terms (including certain court documents) can be found at www.FAMStextmessageclassaction.com. If you do not have access to the internet, you may request details about the settlement terms by writing to the claims administrator at P.O. Box _____, Chicago, IL [insert ZIP]. ***Make sure to list your Claim Number on your request.***

**What Are Your Options?** The Court has granted *preliminary* approval of a class action Settlement Funds of a maximum of $233,500.00 for the TCPA Class and $10,000.00 for the FDCPA Class. You have three (3) options. **First**, you can submit a claim form to receive compensation. You must submit a valid claim from by going to www.FAMStextmessageclassaction/claimform.com and following the instructions. If you do not have access to the internet, you may request a claim form from the claims administrator (KCC) at  PO Box 43501 Providence RI 02940-3501. ***Make sure to include you Claim Number*** *on your request*. If you do not want to receive any compensation, you do not need to do anything else. **Second**, if you do not want to receive any compensation from FAMS, you do not need to do anything.  **Third**, you are free to exclude yourself from the proposed settlement by attempting to negotiate your own settlement with FAMS. For more details, on how to exclude yourself, see the below section "**Excluding Yourself From The Settlement**".

**What Are You Entitled to Receive if You Submit a Claims Form?** FAMS has agreed to set aside funds to compensate Class Members. Class Members who file valid claims will be eligible to receive a portion of the Settlement Funds. The amount you may receive will depend on the number of valid claims submitted by Class Members, the amount of messages you received, the amount of any court-approved service award to Plaintiff and the amount of court-approved attorney's fees, costs and expenses.  See the attached claim form at the end of this document.

**Excluding Yourself From The Settlement**. If you prefer to seek compensation from FAMS on your own or through your own attorney, you may exclude yourself from the settlement terms by going to www.FAMStextmessageclassaction/exclusionform.com and following the instructions.

**Objecting to the Settlement**. You object to the amount of the proposed settlement fund, the amount of compensation that the Court *may* award to Plaintiff for his role as a Class Representative and the amount of fees that the Court may provide to Class Counsel.

**When Will the Court Approve the Settlement?** On November __, 2021, the Court granted <u>preliminary</u> approval of the proposed settlement. A <u>final</u> "fairness hearing" has been scheduled for _____, 2022, at __ a.m./p.m. in Courtroom 1403 located at 219 N. Dearborn Ave., Chicago, IL 60604. During this hearing the court will hear objections, determine if the proposed settlement is fair and consider how to fairly compensate Plaintiff and Class Counsel.

**How Can You Receive More Information?** If you want to learn more information about the proposed settlement and/or you want to read various court documents, go to www._____.com

## CLAIM FORM

I certify that before filing out this Claim From that I read or had the opportunity to read the Notice attached to this Claim Form which detail a proposed class action settlement and/or I have read or had the opportunity to read the Long-Form Notice hosted as www.FAMStextmessageclassaction.com com

With regard to the proposed settlement in the case of Richard Molinari vs. Financial Asset Management Systems, Inc., no. 18-cv-01526 (N.D. Ill.), I hereby make a claim for my share of the settlement in the above-captioned case.

I further certify under penalty of perjury that I was the subscriber, owner or primary user of the below listed cellular telephone number during one or more of the following years, 2015, 2016 and/or 2017.

X_____ (<-- sign your name)

Print or type your full name here →_____

_____

Address

_____

City                        State             Zip

Cellular telephone number: _____

Month _____and year_____ that you obtained the cellular number.

**THIS CLAIM FORM MUST BE MAILED TO KCC BY [<mark>INSERT DATE</mark>] AT:**

KCC
PO Box 43501
Providence RI 02940-3501

# Exhibit C

## Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, | |
| Plaintiff, | 18-cv-01526 |
| v. | Honorable Judge Sara L. Ellis |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS CERTIFICATION AND PROPOSED SETTLEMENT**

NOW COME Plaintiff RICHARD MOLINARI ("Plaintiff"), by and through his counsel James C. Vlahakis, and Defendant FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("Defendant" or "FAMS"), by and through its counsel Jonathan K. Aust, (collectively the "Parties") and jointly moving for an order granting preliminary approval of a proposed Class Action Settlement Agreement (Exhibit A), submit the following:

## I. Introduction and Brief Summary of Relevant Facts

1. Plaintiff, a resident of this judicial district, filed a putative Class Action Complaint (the "Complaint") against FAMS pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA")[1].

2. Plaintiff alleges that Defendant sent pre-recorded message to Plaintiff's personal cellular telephone number without his consent. Dkt. 1, Complaint, ¶¶ 31-33, 39, 44. In particular, Paragraph 17 of the Complaint alleges that "Section (b)(1)(A)(iii) of

---

[1] The Complaint, attached as Exhibit C, alleges that FAMS is debt collector as defined by Section 1692a(6) of the FDCPA because it regularly collects defaulted debts through letters and telephone calls. Dkt. 1, ¶¶ 6, 10.

1

the TCPA makes it unlawful to make any call to cellular telephone using any 'automated telephone dialing system' ('ATDS') or an 'artificial or prerecorded voice' message without the consent of the person being called."

3.      Defendant caused the following pre-recorded messages to be sent to Plaintiff's cellular phone in an attempt to collect a debt allegedly owed by Plaintiff's wife:

- Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

- Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Complaint, ¶¶ 40, 41. None of the messages included Defendant's full legal name. *Id.*

4.      The Complaint alleges that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by sending non-consensual pre-recorded messages to Plaintiff's cellular phone and the cellular numbers of associated with other Illinois residents.

5.      Count IV of the Complaint seeks classwide relief, alleging that FAMS violated Section 227(b)(1)(A)(iii) by sending the same or similar non-consensual pre-recorded messages to at least forty (40) cellular numbers assigned to Illinois based area codes. Complaint, Count IV, ¶¶ 97-98.[2]

6.      Just like with Plaintiff, none of the pre-recorded messages sent to putative class members included Defendant's full legal name.

---

[2] The Parties are not moving to certify Count II of the Complaint which alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used an automatic telephone dialing system ("ATDS") to call the cellular telephone numbers of putative class members without their consent. To clarify the scope of this Motion, Plaintiff is not seeking relief relative to Count I which similarly alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used an automatic telephone dialing system to call Plaintiff's cellular telephone. Similarly, Plaintiff is not seeking class relief relative to Count III of the Complaint asserts individual claims for non-consensual pre-recorded messages.

7.     Discovery produced by Defendant documents that FAMS's vendor "successfully" delivered ten (10) pre-recorded messages to the voice mailbox of Plaintiff's cellular telephone number.  As detailed below, spreadsheets produced by Defendant (by and through its pre-recorded voice-mail vendor) demonstrate that well over forty persons with Illinois area codes were recipients of the same or similar non-consensual pre-recorded messages as were received by Plaintiff.

8.     Counts V and VI (brought as individual and class claims) assert that FAMS's phone calls and pre-recorded messages violated various provisions of the FDCPA. Plaintiff is seeking to certify Count VI on the basis that FAMS's pre-recorded messages did not identify its full legal name. Plaintiff contends that FAMS's use of its truncated name violates § 1692e(14) of the FDCPA. *See, e.g., Catencamp v. Cendant Timeshare Resort Grp. Cons. Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006) ("unsophisticated readers do not see through acronyms when the creditor's full name is missing."). Defendant denies that such action states a claim let alone violates the FDCPA.

9.     Federal Rule of Civil Procedure ("FRCP") 23(e) states that the "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." As discussed below, the Parties have engaged in arms-length negotiations and submit that the proposed settlement terms satisfy all of the required elements of FRCP 23. As explained below, based upon FAMS's use to pre-recorded messages, the Parties seek to certify two distinct, but related, class definitions involving the class-based TCPA claim in Count IV and the class-based FDCPA claims in Count VI.

**II. Procedural Background Leading to the Parties' Proposed Motion to Certify**

10.     FAMS filed an Answer, denying that it violated the TCPA and FDCPA. Dkt. 16. FAMS has also asserted various affirmative defenses. *Id.* Thereafter, the Parties have

engaged in written and oral discovery and class certification motion practice to stake out their respective positions. Dkts. 18-19, 25, 29, 31, 34-35, 39, 41, 50, 50-1, 52-53, 57, 68, 69, 75, 81. The Parties attempted (unsuccessfully) to resolve the Litigation with the assistance of Magistrate Judge Jeffrey I. Cummings. Dkts. 36-37, 43.

11.    Plaintiff filed a motion to certify on October 19, 2019. Dkt. 50, 51. The Court denied Plaintiff's motion without prejudice. Dkt. 83, 84 (*Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020)).

12.    Thereafter, Plaintiff filed a *renewed* Motion for Class Certification on September 14, 2020. Dkt. 90. That motion was denied on August 17, 2020. Dkt. 114.

13.    Pursuant to Count IV of the Complaint, Plaintiff has proposed to certify a class of Illinois based cellular telephone users who received non-consensual pre-recorded voice messages. The proposed class is defined to include cellular telephone numbers associated with the Northern District of Illinois: 224, 312, 331, 630, 708, 773, 779, 815 and 847. Dkt. 93, p. 25.

14.    Defendant filed and the Court granted extensions of time for Defendant to respond to Plaintiff's renewed certification motion. Dkts. 100, 102-03, 105. On November 11, 2019, the Parties moved to stay briefing to allow the Parties to negotiate a class-based settlement and the Court granted the Parties' motion. Dkt. 97, 99.

15.    During the course of settlement discussions, Parties expanded the proposed pre-recorded message class to include *all* Illinois area codes. In addition to the area codes noted in the above paragraph, the Parties expanded the proposed class to include area codes 309, 217 and 618. On March 22, 2021, the Parties alerted the Court that they has reached a proposed class action settlement and the Court struck the remaining class certification deadlines. Dkts. 106, 107.

4

16.     The Parties have reached out to KCC Class Action Services LLC ("KCC" and/or "Administrator") to assist them in identifying potential class members. See, e.g., Dkt. 108-09, 112. In particular, counsel for Plaintiff worked with employees of KCC to expand on his prior efforts to cull through Excel spreadsheets that were produced by FAMS in discovery. Simply stated, FAMS produced Excel spreadsheets that identified residential and cellular telephone numbers that FAMS had obtained from a skip-trace vendor as well as spreadsheets provided by VoApps which reflected "successfully" transmitted pre-recorded messages that VoApps sent to unique Illinois based *cellular telephone* numbers.[3]

17.     The data reflects that from November 17, 2015 to December 4, 2017, the time period of the proposed class definition, VoApps "successfully" delivered 16,352 pre-recorded messages to 1,419 unique cellular numbers with Illinois based area codes.

### III. Summary of Relevant Facts

18.     The Parties recognize that the Court is familiar with the facts of this Litigation as set forth in the Court's prior Order, Dkt. 84, *Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020). In relevant part, the Court described this Litigation as involving the following facts:

> FAMS also used a third-party vendor, VoApps, Inc. ("VoApps"), to deliver several direct-to-voicemail messages to [Molinari's cellular telephone] number. Molinari contends that these actions, which FAMS undertook in an effort to collect on a student loan debt allegedly owed by Molinari's wife, violated the [TCPA]; [and] the [FDCPA].
>
> ***
>
> FAMS uses a third party, LexisNexis, to obtain potentially updated telephone numbers for debtors it is trying to reach.
>
> The process (simplified for purposes of this opinion) is as follows. FAMS sends a batch of debtors' demographic information to LexisNexis. Based on this information, LexisNexis identifies and collects telephone numbers

---

[3] The record reflects that VoApps' method of transmitting pre-recorded messages does not apply to residential numbers. Dkt.

for these debtors by "skip tracing," which is generally a process "whereby companies search credit histories and other public databases to obtain contact information for debtors listed on loan applications." LexisNexis then sells the telephone numbers to FAMS. LexisNexis categorizes a skip-traced phone number into one of two tiers based on its "confidence" that the number is the identified debtor's phone number, with Tier 1 indicating a higher level of confidence than Tier 2. FAMS can determine whether it obtained a phone number via skip trace based on whether its records designate the number as "Tier 1" or "Tier 2."

FAMS believes that the Tier 1 and Tier 2 phone numbers it purchases from LexisNexis correspond to the debtors it wants to contact. Nonetheless, the system is not perfect: while speaking to the user of a phone number obtained from LexisNexis, an FAMS employee may discover that the user is not the debtor he or she is trying to reach. In this case, FAMS requires the employee on the call to designate or otherwise document the phone number as a "bad" number. When FAMS determines that a phone number is "bad," it redacts the first six digits of the phone number. This signals to someone who subsequently views the number that the number should not be used, and it ensures that FAMS' system does not reload the number again if the same number is later obtained from LexisNexis.

FAMS contacts the phone numbers it receives from LexisNexis [by] contract[ing] with VoApps for a service called DirectDROP Voicemail ("DDVM"), whereby VoApps delivers pre-recorded messages that terminate directly to a recipient's mobile voicemail service. VoApps' DDVM technology is intended to "drop" a pre-recorded message directly into a targeted individual's voicemail platform without "dialing the target's cell phone number or otherwise causing her handheld device to ring." Although the targeted individual "receive[s] a message-waiting notification as though she received a normal voicemail," VoApps delivers the message to the "target's cellular device without directly using the cellular network."

In March 2017, Navient placed a student loan debt for collection with FAMS. The debt belonged to Nicolette Campbell, which is the maiden name of Molinari's wife. LexisNexis performed a skip trace on "Nicolette E. Campbell" and identified a phone number ending in 8132 (the "8132 Number") as Campbell's number. FAMS obtained the 8132 Number (which LexisNexis had designated as "Tier 1") from LexisNexis, believing it to be Campbell's phone number.

On November 16, 2017, FAMS used the LiveVox HCI system to call the 8132 Number in an effort to collect payment from Campbell on her debt. The same day, VoApps sent a pre-recorded message using its DDVM technology to the 8132 Number's voicemail box.

***

Over the next two-plus months, FAMS called the 8132 Number 100 more times using the LiveVox HCI system. Meanwhile, VoApps continued to "drop" pre-recorded messages to the 8132 Number's voicemail box. On

6

November 24 and December 4, 2017, VoApps sent the following message to the 8132 Number's voicemail box: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you." VoApps sent approximately seven other pre-recorded voicemail messages to the 8132 Number's voicemail box, but the record does not show the content of these messages or the dates they were sent.

The 8132 Number, however, is not Campbell's telephone number; it is the cellular telephone number of Campbell's husband, Molinari, who does not owe a debt to Navient. Molinari testified that FAMS' calls and messages caused him to experience headaches, chest pains, anxiety, and marital problems; disrupted his daily life by distracting him while working, driving, and sleeping; and invaded his privacy. On or around February 6, 2018, Molinari spoke with a FAMS employee over the phone and told the employee to stop calling him. After that conversation, FAMS designated the 8132 Number as "bad" and stopped contacting it.

***

During discovery, FAMS produced spreadsheets that identified the phone numbers it obtained via LexisNexis' skip-trace process (the "FAMS Spreadsheets"). FAMS contends that these spreadsheets include not only cellular telephone numbers, but landline and VoIP phone numbers as well. FAMS also produced spreadsheets that it obtained from VoApps (the "VoApps Spreadsheets"). These spreadsheets show FAMS' pre-recorded message campaigns with VoApps and, particularly, whether VoApps successfully delivered its pre-recorded messages to certain [cellular] telephone numbers.

Dkt. 84, 2020 U.S. Dist. LEXIS 134045 at *1-*7 (internal citations and citations to cases omitted).

19.     Thereafter, the Court examined the elements required by FRCP 23(a) and 23(b) and denied Plaintiff's certification motion (without prejudice) by finding that Plaintiff failed to sufficiently demonstrate numerosity, commonality and adequacy. *Id.* at *11-*23. This Joint Motion addresses these issues in addition to identifying the remaining elements of Rule 23(a) and Rule 23(b). Plaintiff argues that it is possible to ascertain "successfully" transmitted pre-recorded messages to cellular telephone numbers that were obtained from skip-trace efforts – demonstrating – for the purposes of settlement, that consent was lacking.

### IV. Summary of Settlement Negotiations

20.     After months of arms-length settlement discussions (including previously unsuccessful negotiations lead by Magistrate Judge Cummings where Plaintiff and representatives of Defendant and Defendant's insurer were present, see Dkt. 43), the Parties have documented settlement terms to completely resolve the Litigation as a proposed class action. The Parties' proposed Settlement Agreement is attached as Exhibit A. As discussed below, the proposed settlement terms are just and equitable. [4]

### V. Standard of Review as Applied by FRCP 23

21.     "Federal courts naturally favor the settlement of class action litigation". *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In order to certify a class in accordance with Rule 23(a), a court must conduct a rigorous analysis by a preponderance of the evidence that the putative class meets the criteria set forth by FRCP 23(a). *See also, Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012). The elements of FRCP 23(a) require the moving party or parties to sufficiently demonstrate numerosity, commonality, typicality and adequacy. As reflected herein and in Plaintiff's Memorandum of Law in Support of the Parties' Joint Motion ("Memo. of Law"), the proposed class action settlement satisfies FRCP 23(a)(1)-(4).

22.     A proposed class should be "ascertainable," meaning that the class is clearly defined, and its parameters is based on objective criteria. *Mullins v. Direct Digital,*

---

[4] As reflected by the Parties' proposed Settlement Agreement, Defendant (and its insurer) desire to settle the Litigation to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims that have been or could have been asserted by Plaintiff and the Proposed Class against Defendant in the Litigation.   Similarly, Plaintiff and his counsel (on behalf of themselves and absent class members) desire to settle the Litigation on just and reasonable terms to benefit the proposed putative Class Members at this juncture rather than delay the resolution of this Litigation or risk a potentially adverse ruling. Counsel for the Parties have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

*LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As discussed herein, the proposed classes are ascertainable. See also, Dkt. 122, Pl's Memo. of Law, Section V-D (pp. 14-15).

23.     Finally, the Court must also find that the Parties have satisfied FRCP 23(b)(3) which states that "a class action may be maintained if ... (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b).[5]

24.     Further, before a court can approve a class settlement, it must determine whether "the class has been adequately represented during the settlement talks, a conclusion which will not follow automatically from a finding of adequacy for litigation purposes." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.21 (7th Cir. 1979) (quotation omitted).  As discussed below, the proposed settlement terms are adequate.

### VI. Settlement Terms

### A.     <u>The Proposed Settlement Satisfies the Elements of FRCP 23</u>

25.     As reflected herein and in Plaintiff's Memo. of Law, the terms of the proposed settlement satisfied the elements of numerosity, commonality and typicality as required by FRCP 23(a)(1)-(3).  Further, as explained below, in accordance with FRCP 23(a)(4), the Parties submit that Plaintiff is an adequate class representative and that attorney James C. Vlahakis should be appointed as class counsel.

### B.     The <u>Class Definition Satisfies Numerosity and Ascertainability</u>

26.     The Parties have identified a total of 1,419 potential class members where this figure represents 1,419 persons with unique Illinois based area codes who were

---

[5] Rule 23(b)(3) "was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

sent one or more pre-recorded messages by Defendant's vendor for the purposes of collecting a debt. Accordingly, Plaintiff contends (and FAMS does not oppose for the purpose of this Motion) the class is sufficiently numerous, and ascertainable. See FRCP 23(a)(1). See also, Dkt. 122, Pl's Memo. of Law, Section V-A-D, (pp. 10-15).

27. For purposes of effectuating this settlement, the Parties request that this Court preliminarily and conditionally certify a **TCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

28. The proposed Class Members are ascertainable where the combined records of Defendant and VoApps identify 16,352 "successfully" transmitted pre-recorded messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017. *Id.* at p. 13-14.

29. For purposes of effectuating this settlement, the Parties request that this Court preliminarily and conditionally certify a **FDCPA Settlement Class** consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

30. The Parties agreed that spreadsheets produced by Defendant and VoApps have been analyzed and that the spreadsheets identify 1,328 "successfully" transmitted pre-recorded messages sent to 364 distinct cellular phone numbers between December 4, 2016 and December 4, 2017. This figure has been duplicated to only show one message to each unique cellular telephone number. Excluded from the Proposed Classes

10

are: (a) Class members who timely exclude themselves from the Settlement Agreement; (b) employees of Defendant and its vendor VoApps, Inc.; (c) employees of the Court and the Clerk's Office; and (d) employees of the Administrator; (e) employees of proposed class counsel; (f) any person who is already subject to an existing release; and (g) any person who has filed for bankruptcy protection under Title 11 of the United States Code as of the date of the Conditional Certification Order.

### C.    Proposed Form of Notice to Potential Class Members

31.    The Court acts as a fiduciary of the class. *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002). *See also, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) ("It is clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice."). When a class is certified through settlement, due process and Federal Rule of Civil Procedure 23 require that the presiding court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012). Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).

32.    Fed. R. Civ. P. 23(c)(2)(B) provides that notice may take the form of "United States mail, electronic means, or other appropriate means." The Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018

Amendments to Rule 23(c)(2). The following Paragraphs describe the form of the Notice that will be provided by the Administrator to potential Class Members.

33.     There will be three (3) forms of notice: (a) post-card; (b) internet (involving a Long-Form notice); and (c) text based.

34.     ***Post Card Notice***. No later than thirty (30) days after the entry of the Conditional Certification Order, the Administrator mail a Post-Card based Notice to the Class Members at the most current address as determined by the Administrator. (Exhibit B-2). The Post-Card Notice will request address corrections. If any Post-Card Notice is returned with a new address, a new Post-Card Notice will be re-mailed to the new address. The Administrator will use its best efforts to provide prompt re-sending of any returned Post-Card Notices.

35.     ***Text Message Notice***. The Administrator will also send a short-form/Text-Based notice to the cellular telephone number of the identified Class Members where the Text Message Notice will states as follows:

> "You are receiving this court-approved text message because you may be entitled to receive settlement funds as part of a proposed class action settlement that has received preliminary approval from a court. Click on the www.FAMStextmessageclassaction.com to take you to a website that explains the details of the proposed settlement."[6]

36.     Each Text-Based Notice will refer to a dedicated website for more information and the website will display a link to a more detailed Long-Form Notice.

37.     Notice to potential class members by text messages is become commonplace as courts and attorneys respond to modern forms of communication. *Waller v. AFNI, Inc.*, 2020 U.S. Dist. LEXIS 212570, *15-*17, 2020 WL 6694298 (C.D.

---

[6] A similar text-based notice was approved by the Honorable Amy St. Eve in the case of *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 352 (N.D. Ill. 2010).

Ill. Nov. 13, 2020). "[M]any Americans use text messages as their primary contact and access text messages much more than they would email or regular mail. "The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly)." *Yates v. Checkers Drive-in Rest., Inc.*, 2020 U.S. Dist. LEXIS 205241, *9-*10, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020) (quoting *Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 U.S. Dist. LEXIS 74685, *12, 2020 WL 2042323 (S.D. Tex. Apr. 28, 2020)). Sending Text-Based notice to persons who received unsolicited text messages is entirely proper. As the court in *Yates* observed:

> The Class List of 1,890,005 unique cellular telephone numbers contains almost the entire universe of class members. Moreover, text messages are well-suited to notifying potential class members, since the alleged violations here arose out of Defendants' text messages in response to class members' texted request for a free hamburger. The potential class members are thus particularly comfortable communicating by text message and this form of communication may be more likely to effectuate notice than communicating by email.

*Yates*, 2020 U.S. Dist. LEXIS 205241 at *12-*13, *17.

38.     Courts that have approved text notice have recognized that cell phone are the "primary, point of contact for the majority of the U.S. population." *Vega v. Point Security, LLC*, 2017 U.S. Dist. LEXIS 148105, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017). Text message based notice comports with the realities of "modern society". *See also*, *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. Feb. 19, 2020) ("providing notice via text message in addition to other traditional notice methods will almost always be more appropriate in modern society.").[7]

---

[7] Another court recently described why text-based notice is more effective than e-mail notice:

39.     Notably, Rule 23(c)(2)(B) directs the Court to issue the best notice that is practicable under the circumstances, and the Notes of the Advisory Committee on the 2018 Amendments states that authorizes service by electronic means.[8]

40.     For the above reasons, the Court should approve of Text-Based notice.

41.     ***The Use of a Dedicated Website***.  Each post card and text based Notice will include a link to a dedicated website set up and maintained by the Administrator.

42.     As reflected above, the purpose of the dedicated website will ensure that potential Class Members receive access to a so-called "long form notice" which will

---

While e-mail is engrained in the fabric of our world's communication structure, there is no denying that it has become saturated and unwieldy. The cheery days of "You've got mail!" are long gone. Now, our virtual mailboxes are inundated with hundreds or thousands of messages. When it comes to our personal e-mail accounts, we have conditioned ourselves to tune the messages out, assuming they are unwanted advertisements, social-media notifications, unwelcome chain mail, a fake Nigerian prince seeking to transfer large sums of money out of the country, phishing scams, etc. The list goes on.

***

Unlike e-mail, text messages, at the very least, have eyes laid on them before being opened or ignored. And while one's e-mail account is quickly becoming inseparable from their cell phone—that is to say, most people own a smartphone on which they receive text messages and e-mails — a short vacation or busy workweek can result in literally hundreds of unread e-mails. The same cannot be said about text messages; people keep up with them. Maybe it is because texting is not as associated with work-related activities. Or maybe it is because texting is quickly becoming (if it has not already become) our primary method of communicating with friends and family. Whatever the reason, there is no denying that potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice, in addition to e-mail and mail.

*Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489-90 (S.D. Tex. Sept. 2, 2020).

[8] The Administrator will attempt to track successfully received and/or rejected text-based notices. In addition to text-based notice, a dedicated website will contain a so-called "long form notice". *See, e.g., Brashier v. Quincy Prop., LLC*, 2018 U.S. Dist. LEXIS 68948, at *19-*20, 2018 WL 1934069 (C.D. Ill. April 24, 2018) ("the notice by text message must, in addition to advising the individuals that they can seek additional information from Plaintiffs' attorney, direct them to a website with an electronic version of the class notice and consent documents. In addition, Plaintiffs' counsel must ensure that anyone who contacts him who only received the text message notice also receives the long form notice prior to submitting any consent form.").

describe opt-out rights, objection rights, and future court dates a hyper-link/claim form submission page for the purposes of submitting claims for damages

43.     If the Court preliminarily approves the proposed Settlement, a proposed dedicated website, provisionally entitled www.FAMStextmessageclassaction.com, will include: (i) a Long-Form class action notice (attached hereto as Exhibit B-1); and (ii) pdf copies of (1) the Class Action Complaint; (2) the Parties' Joint Motion For Preliminary Approval Of Class Certification; (3) the Parties' Settlement Agreement; (4) the Court's Preliminary Approval Order; and (5) the proposed Final Approval Order.

44.     The Parties further submit that the proposed forms of Class Notice gives fair notice to the class, the terms of the settlement, and the ways in which class members can participate (or not) in the settlement, thus satisfying the requirements of due process as embodied by Fed. R. Civ. P. 23(c)(1)-(2)(B).

**E.     Summary of Notice.**

45.     The Post-Card Notice and dedicated website will include instructions on how to submit an on-line, smart-phone or paper-based claim form. The text-based notice will alert recipients to clink on a link if they are entitled to claim settlement funds resulting from allegedly unlawful pre-recorded messages. As noted above, the link attached to the proposed text-based notice will refer consumers to the above mentioned website where the website will include (**a**) a Long Form Notice and (**b**) instructions on how to submit an on-line, smart-phone or paper-based claim form to obtain settlement funds reserved for persons who received unsolicited text messages from Defendant during the proposed class period.

46.     The claim forms will require putative Class Members to attest that they were the user or subscriber of a particular cellular number at the time that pre-recorded messages were sent to a particular cellular number.

F.  **Proposed Settlement Fund and Proposed Method of Distribution**.

46.     Defendant is prepared to fund a Class Settlement Fund of $385,000.00 (the "Proposed Settlement Fund"). As detailed below, subject to Court approval, the Parties proposed that the Proposed Settlement Fund will be used to (a) pay claims, (b) provide a service award to Plaintiff and (c) compensate Plaintiff's counsel for reasonable attorney's fees and costs. Defendant shall pay all costs associated with the notice under this Agreement and the costs of administering the Class Settlement.

47.     With the assistance of the Administrator, the Proposed Settlement Fund will provide compensation to Class Members who submit online and paper/mail-based claim forms. Distribution of the Settlement Fund shall be made on a claims-made basis, meaning that putative Class Members who wish to claim their share of the Settlement Fund must submit a claim in the form/format that will accompany the Class Notice as well as a claim form submission hosted on a dedicated website, www.FAMStextmessageclassaction.com

48.     Because the total number of "successfully" delivered pre-recorded messages have been accounted for by date and time, the Administrator will be able to allocate settlement proceeds to class members based upon the total number of "successfully" delivered pre-recorded messages to each designated Illinois based cellular telephone number. As to the proposed TCPA Settlement Class, each Class Member who successfully submits a claim form shall receive compensation for an equal figure for each pre-recorded messages that are allocated to each particular cellular number for any distinct time-period. Where two persons submit claim forms associated with the same telephone number, the Administrator will undertake efforts to identify when each Class Member is or was associated as the user, owner and/or subscriber of the subject telephone numbers. Administrator will ensure that there are no duplicate claim forms

16

except where records suggest that different users/subscribers/owners exist during the time-period that pre-recorded messages were sent by Defendant.[9]

49.     All distribution checks to the Class will expire after forty-five (45) days. The proceeds of any uncashed distribution checks shall be distributed to the Loyola University of Chicago Community Law Center ("LUCCLC")[10] unless the court prefers to have the sum of the uncashed checks be redistributed to class members on a pro-rata basis.

### G. Appointment of and Service Award to Plaintiff Richard Molinari.

50.     The Plaintiff proposes (and FAMS does not oppose for the purpose of this Motion) that the Court appoint Plaintiff to serve as the Class Represented. Plaintiff's counsel proposes (*without* opposition from Defendant for the purpose of this Motion) that Plaintiff should be awarded a service award of up to $14,500 as a result of his role in helping cause the Litigation to reach this phase. Plaintiff submits that he is entitled to the proposed Service Award given his role in: (a) answering written discovery; (b) producing his telephone and the pre-recorded messages at issue for inspection; (c) preparing for and attending his in-person deposition; (d), attending court-mandated

---

[9] For example, if "John Doe" is identified as a subscriber/owner during a particular time-period and "Jane Doe" is also identified as a subscriber/owner during a different time period, each person would be entitled to submit a claim form limited to when the particular cellular number was assigned to that specific number. If the Administrator identifies two individuals who are identified as a subscriber/owner during the same time period, this would likely result in the Administrator providing each person with ½ of the funds that would have been provided to a single cellular owner/subscriber.

[10] According to the website maintained by LUCCLC, it "serves clients whose main source of income is public assistance or Supplemental Security Income as well as those classified as the 'working poor,' who are people struggling to meet their obligations even though they have jobs." https://www.luc.edu/law/academics/clinical-programs/communitylawcenterclinic/ LUCCLC's website further explains that "[c]ases handled by the clinic focus on family issues, landlord-tenant conflicts and benefit questions. A typical case might involve conflicting claims for Social Security or grandparents seeking custody of their grandchildren." *Id.* "Since its founding, the clinic has represented more than 3000 individuals while providing students with the opportunity to serve real clients with real problems."

settlement conferences; and (e) by actively participating in this litigation with his counsel. As detailed in Plaintiff's separately filed Memo. of Law in Support, courts have approved up to $25,000 for a service award where class representatives who have served in a similar capacity.

### H. The Proposed Settlement Funds Are Appropriate.

51.     As noted above, the Proposed Settlement Fund is $385,000.00. "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). By way of a separate motion, Plaintiff's counsel proposes to receive (and Defendant will not oppose) up 33% of the Proposed Settlement Fund to compensate Plaintiff's counsel for his legal fees and costs. *See, e.g., Bridgeview Health Care Ctr., Ltd. v. Clark*, 2015 U.S. Dist. LEXIS 95918, *3, 2015 WL 4498741, *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action). If the Court were to authorize one-third of the Proposed Settlement Fund to compensate Plaintiff's counsel, this would reduce the Proposed Settlement Fund by $127,050, leaving $243,450 to distribute to Class Members within the TCPA Class and FDCPA Class - if the Court approves Plaintiff's proposed incentive award of $14,500.

52.     There are approximately 1,419 Class Members in the TCPA Class. Based on the TCPA Class fund, it is not possible to provide each Class Member with the full statutory award of $500 per call. If each class member submitted a claim, then each class member would recover $14.27 per call. However, each class member who submits an approved claim will be entitled to $500 per successfully delivered message unless the total of such payments would exceed the $233,500 cap on the fund total. If the cap is met, then TCPA class members with approved claims will be entitled to a *pro rata* share of the fund based on the number of successfully delivered messages they received.

Counsel, however, anticipate that not every Class Members will submit a claim form and that other cases suggest that less than 10% of class members will submit claims. Counsel estimate that the average number of "successfully" delivered pre-recorded messages to Class Members are six (6) messages. If 10% of Class Members (141 persons) submit valid claim forms, and they each received six (6) messages (846 messages) each Class Member who submits a valid claim form could theoretically receive up to $276 in compensation for each "successfully" delivered pre-recorded message.

53. The Parties agree that this potential recovery is fair considering it is possible that Defendant could prevail on liability, resulting in Class Members receiving no compensation. *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) (approving TCPA settlement of $30.00 per class member).

54. The FDCPA caps the recovery of statutory damages at "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector". 15 U.S.C. § 1692k(a)(2)(B). Further, Section 1692k(a)(3) provides that "in the case of any successful action to enforce the foregoing liability", a court is authorized to award the prevailing plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court."

55. Unlike the FDCPA, the TCPA has no cap on class action statutory damages. Rather, a court or jury is authorized by the TCPA to award at least $500 in statutory damages for each discrete violation of the TCPA's prohibitions of non-consensual pre-recorded messages to a recipient's cellular telephone number. 47 U.S. Code § 227(b)(3)(B).

19

56.    Defendant represents that the total FDCPA Settlement Fund ($10,000.00) is more than 1% of its net worth. Based upon this fact, the Parties believe that the Settlement Fund fair and reasonable settlement.

**I.  Appointment of Class Counsel.**

57.    Defendant does not oppose appointment of James C. Vlahakis as Class Counsel. As set forth in Plaintiff's separately filed Memorandum of Law, Mr. Vlahakis has diligently and zealously litigated the entirety of this case in a solo capacity. In relevant part, Mr. Vlahakis deposed two of FAMS's corporate representatives in Atlanta, Georgia, as well as the founder of VoApps who invented and patented VoApps' DDVM technology.

58.    Plaintiff submits that the determined efforts of his counsel have led to the formation of the proposed resolution of this hotly contested class action. In conformity with the requirements of FRCP 23(g)(1)(A)(i)-(iv) and 23(g)(1)(B)-(C), and consistent with the declarations submitted in support, the Plaintiff requests, and Defendant does not oppose, that the Court appoint James C. Vlahakis as counsel for the Class Members. As noted above, attorney Vlahakis will petition the Court to approve up to 33% of the proposed Settlement Fund to compensate attorney Vlahakis for his attorney's fees and costs incurred in prosecuting this litigation.

**J.  Compliance with the Class Action Fairness Act ("CAFA").**

59.    CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" *See*, 28 U.S.C. § 1715(a)-(b). Simultaneous with the filing of this Joint Motion, the Parties shall comply with Sections 1715(a) and (b) of CAFA.

**K. <u>Right of Class Members to Seek Exclusion and to Object</u>**.

60.     Class Members who wish to exclude themselves (opt out) of the proposed Settlement must submit an online or mail a written request for exclusion to the Administrator no later than thirty (30) days from the date of mailing of the Class Notice.

61.     Thereafter, the Administrator, within 7 days of the receipt of such request, forward copies to Class Counsel and Counsel for Defendants.

62.     Class Members shall be afforded an opportunity to object to the Settlement. Subject to approval of the Court, objectors shall be required to notify the Court, Class Counsel and counsel for Defendants, in writing, of their intent to object to one or more of the terms of this Agreement or the Final Order and Judgment.

63.     Class Members who object to the Settlement may also appear at the Fairness Hearing and express their objection to the Settlement without notice to the Court and Counsel if the Court finds that good cause exists for non-compliance with the requirements of this paragraph.

**L. <u>Schedule for Class Notice, Exclusions, and Objections</u>**.

64.     The Parties proposed the following dates relative to the provision of Class Notice and the deadlines for the submissions of claim forms, exclusions and objections:

a. Post-Card notice to be mailed by KCC to the best known addresses of the putative Class Members within 30 days of entry of the Preliminary Approval Order;

b. Text-Based notice will be issued by KCC within 30 days of entry of the Preliminary Approval Order;

c. Each Post-Card and Text-Based Notice will refer to a dedicated website for more information and the website will display a link to the Long-Form Notice; and

d. Class members shall have until 45 days after the initial mailing of the notice to complete and postmark a claim form, request for exclusion or objection to the proposed settlement.

65.     The Parties propose that the Court set a date for a Final Hearing on the fairness and reasonableness of the Agreement, whether the final approval shall be given to the Agreement, whether the Court will grant Plaintiff's proposed Service Award of $14,500 and whether the Court will grant Plaintiff's counsel's request for attorney's fees and expenses. The proposed date for the Final Hearing shall take place at least ninety (90) days from notice being to provide to putative Class Members.

**WHEREFORE**, pursuant to FED. R. CIV. P. 23(c)(2), the Parties respectfully request that the Court (**a**) conditionally approve the  terms of the Parties Settlement Agreement (Exhibit A), including the amount of the Proposed Settlement Fund as well as appointing Plaintiff Richard Molinari as a provisional Class Representative and appoint attorney James C. Vlahakis as provisional Class Counsel ; (**b**) approve and direct that the proposed Long-Form Notice (Exhibit B-1) be directed to the best known address of the putative Class Members; (**c**) approve and direct that the proposed Post-Card Notice (Exhibit B-2) and Text-Messages Notice be directed to the cellular telephone numbers identified in Defendant's records as having received "successfully" sent pre-recorded messages; (**d**) enter the proposed Preliminary Approval Order (Exhibit D) (where the Preliminary Approval Order adopts the terms of the proposed Settlement Agreement); (**e**) preliminarily approve awarding Plaintiff a service award of up to $14,500; (**f**) preliminarily approve awarding Class Counsel up to 1/3rd of the Settlement Fund for reasonably incurred fee's and costs  (or set a date by which Class Counsel should submit his fee petition); (**g**) set the following dates for (i) putative Class Members to opt-out, object, and/or return a claim forms and (ii) set a final approval hearing date.

22

Respectfully submitted,

For Plaintiff

/s/ James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 South Highland
Avenue, Suite 200
Lombard, Illinois 60148
630-575-8181
jvlahakis@sulaimanlaw.com

For Defendant

/s/ Jonathan K. Aust
Bedard Law Group, P.C.
4855 River Green
Pkwy, Suite 310
Duluth, GA 30096
(678) 253-1871
jaust@bedardlawgroup.com

23

# Exhibit D

## Proposed Conditional/Preliminary Certification Order

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, | 18-cv-01526 |
| Plaintiff, | Honorable Judge Sara L. Ellis |
| v. | |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

**[PROPOSED]**
**ORDER CONDITIONALLY CERTIFYING THE CLASS AND**
**GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

Having considered the Parties' Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement (the "Motion"), the Court hereby grants preliminary approval of the Settlement Agreement reached between the Parties:

**I. Summary of Relief Provided by this Preliminary Approval Order**

1.     The Parties have filed a Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement (the "Motion") seeking preliminary approval of a proposed Class Action Settlement Agreement.[1]

2.     The Court finds on a preliminary basis that the settlement memorialized in the Settlement Agreement filed with the Court is within the range of reasonableness and, therefore, meets the requirements for preliminary approval. The Court further finds, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3) are satisfied.

---

[1] Capitalized terms used in this Order that are not otherwise defined herein have the same meaning assigned to them as in the Settlement Agreement

1

3.  For purposes of effectuating the proposed Settlement, based upon data produced by Defendant in the form of spreadsheets of skip-traced telephone numbers and "successfully" sent pre-recorded messages – where "successfully" sent pre-recorded messages only took place in relation to cellular telephone numbers, the Court preliminarily certifies a *TCPA Settlement Class* consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

4.  Further, the Court preliminarily certifies a *FDCPA Settlement Class*:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

5.  For settlement purposes, the Court preliminarily appoints Plaintiff Richard Molinari as Class Representative and attorney James C. Vlahakis as Class Counsel.

6.  The Court finds that the Proposed Form of Class Notice to putative Class Member as set forth in the Agreement constitutes the best notice practicable under the circumstances, where Class Members' identities can be ascertainable by a proposed ministerial review of Defendant's records by a retained class action administrator KCC Class Action Services LLC ("KCC" and/or "Administrator"), satisfying the requirements of Due Process, and any other applicable law, such that the Agreement and Final Approval Order will be binding on all Class Members.

7.  In addition, the Court finds that no notice other than that specifically identified in the Agreement is necessary in this action. The Parties, by agreement, may

revise the Class Notice in ways that are not material, or in way that is appropriate to update those documents for purposes of accuracy or formatting for publication.

8. The Parties have reported that they are working with a class action administrator KCC Class Action Services LLC ("KCC") to assist them in identifying potential class members. See, e.g., Dkt. 108-09, 112. KCC is hereby appointed as Administrator to supervise and administer the notice process, as well as to oversee the administration of the Settlement, as more fully set forth in the Settlement Agreement. 10. The Settlement Administrator may proceed with the distribution of Notice as set forth in the Settlement Agreement.

## II. Summary of Claims

9. Plaintiff, a resident of this judicial district, filed a putative Class Action Complaint (the "Complaint") against FAMS pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA").

10. Plaintiff alleges that Defendant sent pre-recorded message to Plaintiff's personal cellular telephone number without his consent. Exhibit A, ¶¶ 31-33, 39, 44.

11. Defendant caused the following pre-recorded messages to be sent to Plaintiff's cellular phone in an attempt to collect a debt allegedly owed by Plaintiff's wife:

- Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

- Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Exhibit A, ¶¶ 40, 41. None of the messages included Defendant's full legal name. *Id.*

12.     The Complaint alleges that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by sending non-consensual pre-recorded messages to Plaintiff's cellular phone and the cellular numbers of associated with other Illinois residents.

13.     Count IV of the Complaint that FAMS violated Section 227(b)(1)(A)(iii) by sending the same or similar non-consensual pre-recorded messages to at least forty (40) cellular numbers assigned to Illinois based area codes. Exhibit A, Count IV, ¶¶ 97-98.[2]

14.     Just like with Plaintiff, none of the pre-recorded messages sent to putative class members included Defendant's full legal name.

15.     Discovery produced by Defendant documents that FAMS's vendor "successfully" delivered ten (10) pre-recorded messages to be sent to the voice mailbox of Plaintiff's cellular telephone number.  As detailed below, spreadsheets produced by Defendant (by and through its pre-recorded voice-mail vendor) demonstrate that well over forty persons with Illinois area codes were recipients of the same or similar non-consensual pre-recorded messages as were received by Plaintiff.

16.     Counts V and VI (brought as individual and class claims) assert that FAMS's phone calls and pre-recorded messages violated various provisions of the FDCPA. Plaintiff is seeking to certify Count VI on the basis that FAMS's pre-recorded messages did not identify its full legal name. Plaintiff contends that FAMS's use of its truncated name violates § 1692e(14) of the FDCPA. *See, e.g., Catencamp v. Cendant Timeshare Resort Grp. Cons. Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006) ("unsophisticated readers do not see through acronyms when the creditor's full name is

---

[2] The parties are not moving to certify Count II of the Complaint which alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used autodialer to call the cellular telephone numbers of putative class members without their consent. Similarly, Plaintiff is not seeking relief relative to Count I which similarly alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used autodialer to call Plaintiff's cellular telephone. Count III of the Complaint asserts individual claims for non-consensual pre-recorded messages.

missing."). Defendant denies that such actions states a claim for a violation of the FDCPA let alone violates the FDCPA.

### III.    Background Leading to the Parties' Proposed Motion to Certify

17.    FAMS filed an Answer, denying that it violated the TCPA and FDCPA. Dkt. 16. FAMS has also asserted various affirmative defenses. *Id.* Thereafter, the parties have engaged in written and oral discovery and class certification motion practice to stake out their respective positions. Dkts. 18-19, 25, 29, 31, 34-35, 39, 41, 50, 50-1, 52-53, 57, 68, 69, 75, 81.  The Parties attempted (unsuccessfully) to resolve the Litigation with the assistance of Magistrate Judge Jeffrey I. Cummings. Dkts. 36-37, 43.

18.    Plaintiff filed a motion to certify on October 19, 2019. Dkt. 50, 51. The Court denied Plaintiff's motion without prejudice. Dkt. 83, 84 (*Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020)).

19.    Thereafter, Plaintiff filed a *renewed* Motion for Class Certification on September 14, 2020. Dkt. 90. The proposed class is defined to include cellular telephone numbers associated with the Northern District of Illinois: 224, 312, 331, 630, 708, 773, 779, 815 and 847. Dkt. 93, p. 25. That motion was denied without prejudice on August 17, 2020.  Dkt. 114.

20.    Defendant filed and the Court granted extensions of time for Defendant to respond to Plaintiff's renewed certification motion. Dkts. 100, 102-03, 105. On November 11, 2019, the Parties moved to stay briefing to allow the Parties to negotiate a class based settlement and the Court granted the Parties' motion. Dkt. 97, 99.

21.    During the course of settlement discussions, parties expanded the proposed pre-recorded message class to include *all* Illinois area codes. In addition to the area codes noted in the above paragraph, the Parties expanded the proposed class to include area codes 309, 217 and 618. On March 22, 2021, the Parties alerted the Court

5

that they has reached a proposed class action settlement and the Court struck the remaining class certification deadlines. Dkts. 106, 107.

22.     The Parties have reported to the Court that in relation to their proposed TCPA Settlement Class that spreadsheets produced by Defendant and VoApps have been analyzed and the spreadsheets identify 16,352 "successfully" transmitted pre-recorded messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017.

23.     The Parties have also reported that the proposed FDCPA Settlement Class consists of 364 distinct cellular phone numbers who were successfully sent pre-recorded messages between December 4, 2016 and December 4, 2017, where the pre-recorded messages did not contain Defendant's full legal name.

### IV.     Summary of Relevant Facts

24.     The Court is familiar with the facts of this Litigation as set forth in the Court's prior Order, Dkt. 84, *Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020). In relevant part, the Court described this Litigation as involving the following facts:

> FAMS also used a third-party vendor, VoApps, Inc. ("VoApps"), to deliver several direct-to-voicemail messages to [Molinari's cellular telephone] number. Molinari contends that these actions, which FAMS undertook in an effort to collect on a student loan debt allegedly owed by Molinari's wife, violated the [TCPA]; [and] the [FDCPA].
>
> ***
>
> FAMS uses a third party, LexisNexis, to obtain potentially updated telephone numbers for debtors it is trying to reach.
>
> The process (simplified for purposes of this opinion) is as follows. FAMS sends a batch of debtors' demographic information to LexisNexis. Based on this information, LexisNexis identifies and collects telephone numbers for these debtors by "skip tracing," which is generally a process "whereby companies search credit histories and other public databases to obtain contact information for debtors listed on loan applications." LexisNexis then sells the telephone numbers to FAMS. LexisNexis categorizes a skip-traced phone number into one of two tiers based on its "confidence" that

the number is the identified debtor's phone number, with Tier 1 indicating a higher level of confidence than Tier 2. FAMS can determine whether it obtained a phone number via skip trace based on whether its records designate the number as "Tier 1" or "Tier 2."

FAMS believes that the Tier 1 and Tier 2 phone numbers it purchases from LexisNexis correspond to the debtors it wants to contact. Nonetheless, the system is not perfect: while speaking to the user of a phone number obtained from LexisNexis, an FAMS employee may discover that the user is not the debtor he or she is trying to reach. In this case, FAMS requires the employee on the call to designate or otherwise document the phone number as a "bad" number. When FAMS determines that a phone number is "bad," it redacts the first six digits of the phone number. This signals to someone who subsequently views the number that the number should not be used, and it ensures that FAMS' system does not reload the number again if the same number is later obtained from LexisNexis.

FAMS contacts the phone numbers it receives from LexisNexis [by] contract[ing] with VoApps for a service called DirectDROP Voicemail ("DDVM"), whereby VoApps delivers pre-recorded messages that terminate directly to a recipient's mobile voicemail service. VoApps' DDVM technology is intended to "drop" a pre-recorded message directly into a targeted individual's voicemail platform without "dialing the target's cell phone number or otherwise causing her handheld device to ring." Although the targeted individual "receive[s] a message-waiting notification as though she received a normal voicemail," VoApps delivers the message to the "target's cellular device without directly using the cellular network."

In March 2017, Navient placed a student loan debt for collection with FAMS. The debt belonged to Nicolette Campbell, which is the maiden name of Molinari's wife. LexisNexis performed a skip trace on "Nicolette E. Campbell" and identified a phone number ending in 8132 (the "8132 Number") as Campbell's number. FAMS obtained the 8132 Number (which LexisNexis had designated as "Tier 1") from LexisNexis, believing it to be Campbell's phone number.

On November 16, 2017, FAMS used the LiveVox HCI system to call the 8132 Number in an effort to collect payment from Campbell on her debt. The same day, VoApps sent a pre-recorded message using its DDVM technology to the 8132 Number's voicemail box.

***

Over the next two-plus months, FAMS called the 8132 Number 100 more times using the LiveVox HCI system. Meanwhile, VoApps continued to "drop" pre-recorded messages to the 8132 Number's voicemail box. On November 24 and December 4, 2017, VoApps sent the following message to the 8132 Number's voicemail box: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you." VoApps sent approximately seven other pre-recorded voicemail messages to the 8132 Number's

voicemail box, but the record does not show the content of these messages or the dates they were sent.

The 8132 Number, however, is not Campbell's telephone number; it is the cellular telephone number of Campbell's husband, Molinari, who does not owe a debt to Navient. Molinari testified that FAMS' calls and messages caused him to experience headaches, chest pains, anxiety, and marital problems; disrupted his daily life by distracting him while working, driving, and sleeping; and invaded his privacy. On or around February 6, 2018, Molinari spoke with a FAMS employee over the phone and told the employee to stop calling him. After that conversation, FAMS designated the 8132 Number as "bad" and stopped contacting it.

Molinari brought this lawsuit on February 28, 2018. The Court originally set the fact discovery deadline for October 1, 2018, but after several extensions, fact discovery closed on May 15, 2019. During discovery, FAMS produced spreadsheets that identified the phone numbers it obtained via LexisNexis' skip-trace process (the "FAMS Spreadsheets"). FAMS contends that these spreadsheets include not only cellular telephone numbers, but landline and VoIP phone numbers as well. FAMS also produced spreadsheets that it obtained from VoApps (the "VoApps Spreadsheets"). These spreadsheets show FAMS' pre-recorded message campaigns with VoApps and, particularly, whether VoApps successfully delivered its pre-recorded messages to certain [cellular] telephone numbers.

Dkt. 84, 2020 U.S. Dist. LEXIS 134045 at *1-*7 (internal citations and citations to cases omitted).[3]

25.     Thereafter, the Court examined the elements required by FRCP 23(a) and 23(b) and denied Plaintiff's certification motion (without prejudice), by finding that Plaintiff failed to sufficiently demonstrate numerosity, commonality and adequacy. *Id.* at *11-*23. The Parties have represented that their Joint Motion addresses the elements of numerosity, commonality and adequacy, in addition to identifying the remaining elements of Rule 23(a) and Rule 23(b).

26.     As a result of FAMS's use to pre-recorded messages, the Parties have informed this Court that they have reached a class action based settlement of this

---

[3] Plaintiff argues that it is possible to ascertain "successfully" transmitted pre-recorded messages to cellular telephone numbers that were obtained from skip-trace efforts – demonstrating – for the purposes of settlement, that consent was lacking.

Litigation. The Parties state that they have engaged in arms-length negotiations and submit that the proposed settlement terms satisfy all of the required elements of FRCP 23. The Parties seek to certify two distinct, but related, class definitions involving the class-based TCPA claim in Count IV and the class-based FDCPA claims in Count VI.

**V.    Standard of Review & Analysis**

27.    Federal Rule of Civil Procedure ("FRCP") 23(e) states that the "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "Federal courts naturally favor the settlement of class action litigation". *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In order to certify a class in accordance with Rule 23(a), a court must conduct a rigorous analysis by a preponderance of the evidence that the putative class meets the criteria set forth by FRCP 23(a)(1)-(4).

28.    The Court must also find that the Parties have satisfied FRCP 23(b)(3) which states that "a class action may be maintained if ... (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b).

29.    Additionally, the Court also preliminarily finds that the terms of the proposed Agreement appears to be fair, adequate and reasonable as to all potential Class Members, when balanced against the probable outcome of further litigation, particularly in light of the fact that Defendant has agreed to pay up to $385,000 (the "Proposed Settlement Fund") to fund two settlement classes, compensate Mr. Molinari for his role in serving as the putative Class Representative and compensate Attorney Vlahakis for his legal fees and costs in incurred as class counsel.

**A.  The Proposed Settlement Fund Appears to be Reasonable**

30.     The Court also recognizes that Defendant and/or Defendant's insurer shall pay for the costs of notice and administering the payment of the Proposed Settlement Fund. In particular, the Proposed Settlement Fund shall appear to result in Defendant paying <u>more than</u> a *de minimis* recovery to each Class Member who submits a claim form seeking compensation for statutory damages pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* resulting from Defendant's alleged use of pre-recorded messages.  Further, in light of Defendant's reportedly low net worth, it appears that eligible Class Members will likely more than the maximum statutory liability provided for by Section 1692k(a)(B) of the Fair Debt Collection Practices Act, which forms the basis for one of the settled claims, and limits Class Members in any FDCPA class action to no more than 1% of a debt collector's net worth or $500,000 whichever is greater.

31.     For purposes of effectuating the proposed Settlement, the Court preliminarily certifies a *TCPA Settlement Class* consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

32.     For purposes of effectuating the proposed Settlement, the Court preliminarily certifies a *FDCPA Settlement Class* consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

10

33.     Excluded from both classes are court personnel, individual employed by Class Counsel's office, employees of Defendant, employees of VoApps, Inc. (Defendant's third-party message vendor) and employees of the Administrator.

### B.  The Proposed Compensation to Plaintiff Appears to be Reasonable

34.     Additionally, the Court preliminarily approves the use of the proposed Settlement Fund to compensate Plaintiff with an award of $14,500 to compensate Plaintiff for his role as the proposed Class Representative. This provisional award tentatively recognizes upon his actions in assisting in the prosecution of this Litigation, by and through participating in a settlement conference, assisting in written discovery and as a result of sitting for his deposition. To the extent directed by this Court, Plaintiff shall submit a stand-alone motion for approval of Plaintiff's Service Award and request for statutory damages within 14 days of the entry of this Order or no later than 21 days before the Final Approval hearing.

### C.  Class Counsel's Requested Fees and Costs Appear to be Reasonable

35.     Finally, the Court preliminarily approves awarding up to 33 1/3 ($127,050) of the proposed Settlement Fund to compensate provisional Class Counsel for his reasonably incurred attorney's fees and costs that were incurred in this the hard-fought Litigation, subject to a formal motion for attorney's fees and costs being submitted by provisional Class Counsel within 21 days of the entry of this Order or no later than 21 days before the Final Approval hearing.

### VI.    Additional Relief Granted

36.     Having considered the Parties' Joint Motion and the Parties' supporting papers, and after conducting a hearing on December 2, 2021, the Court in addition to the relief granted and outlined in Section I of this Order, issues the following relief in

11

the form of a Conditional/Preliminary Certification Order, and in particular states as follows:

      a.     The Administrator may proceed with the distribution of Notice as set forth in the Settlement Agreement.

      b.     Class Members shall be bound by all determinations and orders pertaining to the Settlement, including with respect to Released Claims as set forth in the Settlement Agreement, whether favorable or unfavorable, unless such persons request exclusion from the Class in a timely and proper manner, as hereinafter provided.

      c.     Class Members who do not timely and validly request exclusion shall be so bound even if they have previously initiated other litigation or proceedings against Defendants or the Released Parties relating to the claims released under the terms of the Settlement Agreement.

      d.     Any Person within the Settlement Classes may request exclusion from the settlement by expressly stating his/her request in a written exclusion request. Such exclusion requests must be received by the Administrator at the address specified in the Notice in written form, by first class mail, postage prepaid, and postmarked, no later than the Objection/Exclusion Deadline: _____, 2021 [or January --, 2022].

      e.     In order to exercise the right to be excluded, a person within the Settlement Classes must timely send a written request for exclusion to the Administrator providing his/her name and address, a signature, the name and number of the Litigation, and a statement that he or she wishes to be excluded from the Settlement Classes.

      f.     Any request for exclusion submitted via first class mail must be personally signed by the person requesting exclusion. No person within the Settlement Classes, or any person acting on behalf of, in concert with, or in participation with that person within the Settlement Classes, may request exclusion from the Settlement Class of any other person within the Settlement Classes.

      g.     Any person in the Settlement Classes who elects to be excluded shall not: (i) be bound by any orders or the Final Approval Order; (ii) be entitled

to relief under the Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of the Agreement.

h.     Any Class Members who has not requested exclusion from the Settlement Class and who wishes to object to any aspect of the Agreement, including the amount of the attorneys' fees, costs, and expenses that Class Counsel intends to seek and the payment of the Service Award to the Class Representative, may do so, either personally or through an attorney, by filing a written objection, together with the supporting documentation set forth below in Paragraphs i-k of this Order, with the Clerk of the Court, and served upon Class Counsel, Defendant's Counsel, and the Administrator by ____2021 [or January --, 2022].

i.     Any Class Member who has not requested exclusion and who intends to object to the Agreement must state, in writing, all objections and the basis for any such objection(s), and must also state in writing: (i) his/her full name, address, telephone number, and email address; (ii) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (iii) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and (iv) the objector's signature.

j.     Objections not filed and served in accordance with this Order shall not be received or considered by the Court.

k.     Any Class Member who fails to timely file and serve a written objection in accordance with this Order shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, to the fairness, reasonableness, or adequacy of the Settlement, to the payment of attorneys' fees, costs, and expenses, to the payment of a Service Award, and to the Final Approval Order and the right to appeal same.

l.     A Class Member who has not requested exclusion from the Settlement Class and who has properly submitted a written objection in compliance with the Agreement, may appear at the Final Approval Hearing in person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to

13

the approval of the Settlement and/or Class Counsel's Fee Petition and/or the request for a Service Award to the Class Representatives are required to indicate in their written objection their intention to appear at the Final Approval Hearing on their own behalf or through counsel.

m.     For any Class Member who files a timely written objection and who indicates his/her intention to appear at the Final Approval Hearing on their own behalf or through counsel, such Class Member must also include in his/her written objection the identity of any witnesses he/she may call to testify, and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which shall be attached.

n.     No Class Member shall be entitled to be heard, and no objection shall be considered, unless the requirements set forth in this Order and in the Settlement Agreement are fully satisfied. Any Class Member who does not make his or her objection to the Settlement in the manner provided herein, or who does not also timely provide copies to Counsel for the Parties at the addresses set forth herein, shall be deemed to have waived any such objection by appeal, collateral attack, or otherwise, and shall be bound by the Agreement, the releases contained therein, and all aspects of the Final Approval Order.

37.     All papers in support of the Final Approval of the Settlement shall be filed no later than ten (10) days before the Final Approval Hearing.

38.     A hearing (the "Final Approval Hearing") shall be held before the Court on ____ 2022 at 10:00 a.m in Courtroom 1403 of the Dirksen U.S. Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 (or at such other time or location as the Court may without further notice direct) for the following purposes:

a.     to determine whether the Settlement is fair, reasonable and adequate, and should be approved by the Court;

b.     to determine whether the judgment as provided under the Settlement Agreement should be entered, including an order prohibiting Settlement Class Members from further pursuing Released Claims as set forth in the Settlement Agreement;

14

     c.     to consider the application for an award of attorneys' fees, costs and expenses of Class Counsel;

     d.     to consider the application for a Service Award to the Class Representative;

     e.     to consider the distribution of the Settlement Fund pursuant to the Agreement; and

     f.     to rule upon such other matters as the Court may deem appropriate.

39.     The Final Approval Hearing may be postponed, adjourned, transferred or continued by order of the Court without further notice to the Settlement Class. At or following the Final Approval Hearing, the Court may enter a judgment approving the Agreement and a Final Approval Order in accordance with the Agreement that adjudicates the rights of all Settlement Class Members.

40.     Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

41.     All discovery and other proceedings in the Litigation as between Plaintiff and Defendant are stayed and suspended until further order of the Court except such actions as may be necessary to implement the Settlement Agreement and this Order.

42.     For clarity, the deadlines set forth above and in the Agreement are as follows:

- Notice to be issued by: _____, 2021;
- Fee and Expense Application: ____, 2021;
- Objection/Exclusion Deadline: ____, 2021;
- Final Approval Submission: ____, 202__;
- Final Approval Hearing: _____ 2022 at 10:00 a.m.

**VII.   Preliminary Nature of this Order**

43.     This Order shall not be construed or deemed to be a finding by this Court or evidence of a presumption, implication, concession, or admission by Defendant

concerning (a) any alleged liability, fault, or wrongdoing by Defendant; (b) the appropriateness of any measure of alleged loss or damages; or (c) the appropriateness of class certification for any purposes other than settlement. If the Settlement Agreement is terminated pursuant to its terms, or if the settlement is not approved or consummated for any reason whatsoever, the settlement and all proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the parties to this action.

**IT IS SO ORDERED**.

Dated: November_____, 2021.

_____

The Honorable Sara L. Ellis
UNITED STATES DISTRICT JUDGE

# Exhibit E

## Proposed Final Order and Judgment

Molinari v. Financial Asset Management Systems, Inc.,

18-cv-01526 (N.D. IL.)

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICHARD MOLINARI, on behalf of himself
and a class of similarly situated
individuals,

      Plaintiff,

      v.

FINANCIAL ASSET MANAGEMENT
SYSTEMS, INC.,

      Defendant.

18-cv-01526

Honorable Judge Sara L. Ellis

**<span style="color:red">PROPOSED</span> FINAL ORDER AND JUDGMENT**

The above-captioned matter (the "Action") having come before the Court on the Parties' Joint Motion For Final Approval of Class Action Settlement, the Court grants the relief sought by the parties and enters a Final order and Judgment approving the Class Action Settlement Agreement and in support states the following:

**<u>Introduction</u>**

1.    The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties hereto. After arms-length negotiations, on or about November __, 2021, Plaintiff and Defendant signed a Class Action Settlement Agreement (hereinafter referred to as the "Agreement").

2.    Thereafter, on November 12, 2021, the Parties filed the Agreement, together with their Joint Motion for Preliminary Approval of Class Action Settlement Agreement (hereinafter referred to as the "Preliminary Approval Motion") and Plaintiff's Memorandum of Law in Support. Dkt. ___ & ____. Within ten days of filing the proposed settlement with the parties complied with the notice requirements of the Class Action Fairness Act. See, 28 U.S.C. § 1715.

3.      The Court entertained the Parties' Preliminary Approval Motion and on November ____, 2021, the Court entered an Order Conditionally Certifying Class and Granting Preliminary Approval of Settlement (hereinafter referred to as the "Conditional Certification Order") pursuant to FED. R. CIV. P. 23(b)(3). Dkt. ___.

4.      Pursuant to the Conditional Certification Order, the Court, among other things, (i) preliminarily certified (for settlement purposes only) a class of consumers (hereinafter referred to as the "Class Members") with respect to certain TCPA and FDCPA claims asserted in the Lawsuit; (ii) preliminarily approved the proposed settlement; (iii) appointed Plaintiff Richard Molinari as the Class Representative; (iv) appointed James C. Vlahakis as Class Counsel; (v) approved of the form of notice sent to putative class members; and (vi) set the date and time of the Final Fairness Hearing.

5.      The Parties now seek final approval of the proposed class action settlement.  The Court has read and considered the Agreement, Final Approval Motion, and the record. All capitalized terms used herein have the meanings defined herein and/or in the Agreement.

**Summary of Notice, Exclusions and Objections**

6.      Pursuant to FED. R. CIV. P. 23(b)(3), 23(c)(2)(B) and 23(e), the Court's Conditional Certification Order approved that Notice would be transmitted by a third-party claims administrator (the "Administrator") to Class Members by and through text message and postcard where both forms of notice contained a link to a long-form Notice. Class Members without access to the internet were informed that they could write to the Administrator to obtain a long-form Notice.

7.      The Court's Conditional Certification Order found that method and form of notice was appropriate and comported with due process.

8.      Notice was sent to _____ Class Members via text messages and by way of

direct mailing to _____ Class Members. A total of _____ text-based notices were returned as undeliverable. A total of _____ postcard based notices were returned as undeliverable and the Administrator re-issued Notice each of the impacted Class Members.

9.      _____ Class Members made valid and timely requests for exclusion. These individuals listed on the attached Exhibit A. The Court has been informed that number of exclusions is well below the number of exclusions which could triggered Defendant to back out of the Settlement.

10.      No Class Members objected to the settlement. OR _____ Class Members objected to the terms of the Agreement. [modify as necessary]

11.      After reviewing the objection(s), the Parties' responses, and after hearing oral argument as to the objection(s), the Court denies the objection(s) on the basis that terms of the Agreement satisfy the applicable prerequisites for class action treatment and that the Agreement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

A.      FINAL APPROVAL.      The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under FED. R. CIV. P. 23(a), and specifically finds that:

1.      the Class Members are so numerous that joinder of all of them in the Lawsuit is impracticable;

2.      there are questions of law and fact common to the Class Members, which predominate over any individual questions;

3.      the claims of the Plaintiffs are typical of the claims of the Class Members;

4.      the Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members;

5.      Class treatment of these claims will be efficient and manageable,

thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy;

6.    that terms and conditions set forth in the Agreement and as set forth herein, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class Members; the strength of the Plaintiff's alleged claims; the strength of Defendant's alleged defenses; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; and the fact that Defendant has agreed to pay statutory damages to Class Members resulting from alleged violations where the prospect of Class Members prevailing at trail was not assured.

B.    <u>RELIEF TO CLASS MEMBERS AND RELEASE OF CLAIMS</u>.  The Agreement is fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class in light of complexity, expense, and duration of the litigation and the risks involved in establishing liability and damages in maintaining the class action through trial and appeal.  The Court finds that Notice was appropriate and enters this Final Approval Order certifying as a class action on behalf of the following two classes:

**TCPA Class**
All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

and

**FDCPA Class**
All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

4

C.     The Court has considered and rejected the objections that were submitted by certain Class members. [include if necessary, see Para. 10]

D.     This order is binding on all Class Members, except those individuals who validly excluded themselves from the Class.

E.     Upon the Effective Date of the Agreement, Plaintiff and Settlement Class Members by operation of this Final Judgement shall be fully bound by the release set forth in the Parties' Agreement and are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any Released Claim under the Parties' Agreement.

F.     This Order, the Agreement, and the existence and nature of the Settlement are not, and shall not be construed as, an admission by Defendants of any liability or wrongdoing in this or in any other proceeding.

G.     RELIEF TO CLASS REPRESENTATIVE RICHARD MOLINARI AND CLASS COUNSEL.  Consistent with the Court's Conditional Certification Order, and as authorized by FED. R. CIV. P. 23(a)(4), 23(c) and 23(e), the Court finds that Richard Molinari has adequately served as Class Representative and awards Mr. Molinari an incentive award of $14,500 for his services as Class Representative. Mr. Molinari's service aware shall be paid out of the Settlement Fund set forth by the terms of the Agreement.

H.     Consistent with the Court's Conditional Certification Order, the Court grants final approval to the appointment of James C. Vlahakis as class counsel. The Court further finds that Mr. Vlahakis is entitled to $ ____,_____ for reasonably incurred legal fees and $_____ in recoverable costs. In total, the fees and costs awarded to Mr. Vlahakis amount to approximately 33% of the Settlement Funds and shall be paid out of the Settlement Fund set forth by the terms of the Agreement.

      I.    <u>DISMISSAL WITH PREJUDICE</u>. This Action is dismissed with prejudice as to all other issues and as to all parties and claims. Without affecting the finality of this Final Judgment for purposes of appeal, the Court retains jurisdiction as to all matters related to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and this Final Judgment, and or any other necessary purpose.


      IT IS SO ORDERED.

      Dated: _____, 2022.


                              _____
                              HON. SARA L. ELLIS
                              UNITED STATES DISTRICT JUDGE