**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD MOLINARI, on behalf of himself and a class of similarly situated individuals, | 18-cv-01526 |
| Plaintiff, | Honorable Judge Sara L. Ellis |
| v. | |
| FINANCIAL ASSET MANAGEMENT SYSTEMS, INC., | |
| Defendant. | |

**ORDER CONDITIONALLY CERTIFYING THE CLASS AND**
**GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

Having considered the Parties' Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement (the "Motion"), the Court hereby grants preliminary approval of the Settlement Agreement reached between the Parties:

**I. Summary of Relief Provided by this Preliminary Approval Order**

1. The Parties filed a Joint Motion for Preliminary Approval of Class Certification and Proposed Settlement (the "Motion") seeking preliminary approval of a proposed Class Action Settlement Agreement.[1] See ECF Dkt. 125 and supporting exhibits. See, e.g., Dkts. 125-1 (Class Action Settlement Agreement), 125-2 (Long-Form Notice), 125-3 (Post-Form Notice) and 125-5 (Proposed Conditional/Preliminary Certification Order). See also, Plaintiff's Memorandum in Support and supporting exhibits. Dkts. 126, 126-1, 126-2, 126-3, 126-4 and 126-5. The Parties' Motion was presented to the Court on November 16, 2021.

---

[1] Capitalized terms used in this Order that are not otherwise defined herein have the same meaning assigned to them as in the Settlement Agreement

2.      The Court finds on a preliminary basis that the settlement memorialized in the Settlement Agreement filed with the Court is within the range of reasonableness and, therefore, meets the requirements for preliminary approval. The Court further finds, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3) are satisfied.

3.      For purposes of effectuating the proposed Settlement, based upon data produced by Defendant in the form of spreadsheets of skip-traced telephone numbers and "successfully" sent pre-recorded messages – where "successfully" sent pre-recorded messages only took place in relation to cellular telephone numbers, the Court preliminarily certifies a *TCPA Settlement Class* consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

4.      Further, the Court preliminarily certifies a *FDCPA Settlement Class*:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

5.      For settlement purposes, the Court preliminarily appoints Plaintiff Richard Molinari as Class Representative and attorney James C. Vlahakis as Class Counsel.

6.      The Court finds that the Proposed Form of Class Notice to putative Class Member as set forth in the Agreement constitutes the best notice practicable under the circumstances, where Class Members' identities can be ascertainable by a proposed ministerial review of Defendant's records by a retained class action administrator KCC Class Action Services LLC ("KCC" and/or "Administrator"), satisfying the requirements

2

of Due Process, and any other applicable law, such that the Agreement and Final Approval Order will be binding on all Class Members.

7.    In addition, the Court finds that no notice other than that specifically identified in the Agreement is necessary in this action. The Parties, by agreement, may revise the Class Notice in ways that are not material, or in way that is appropriate to update those documents for purposes of accuracy or formatting for publication.

8.    The Parties have reported that they are working with KCC to assist them in identifying potential class members. See, e.g., Dkt. 108-09, 112. Consistent with Paragraph 6, KCC is hereby appointed as Administrator to supervise and administer the notice process, as well as to oversee the administration of the Settlement, as more fully set forth in the Settlement Agreement. 10. The Administrator may proceed with the distribution of Notice as set forth in the Settlement Agreement and shall issue Notice no later than December 16, 2021.

## II.  Summary of Claims

9.    Plaintiff, a resident of this judicial district, filed a putative Class Action Complaint (the "Complaint") against FAMS pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.* ("FDCPA").

10.    Plaintiff alleges that Defendant sent pre-recorded message to Plaintiff's personal cellular telephone number without his consent. Exhibit A, ¶¶ 31-33, 39, 44.

11.    Defendant caused the following pre-recorded messages to be sent to Plaintiff's cellular phone in an attempt to collect a debt allegedly owed by Plaintiff's wife:

- Hello, this is FAMS, a debt collector. This is an attempt to collect a debt. Our records indicate that we have not yet received one or more payments necessary to continue the reduced interest program. We are happy to assist with any questions you may have in this process. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

3

- Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you.

Exhibit A, ¶¶ 40, 41. None of the messages included Defendant's full legal name. *Id.*

12. The Complaint alleges that Defendant violated § 227(b)(1)(A)(iii) of the TCPA by sending non-consensual pre-recorded messages to Plaintiff's cellular phone and the cellular numbers of associated with other Illinois residents.

13. Count IV of the Complaint that FAMS violated Section 227(b)(1)(A)(iii) by sending the same or similar non-consensual pre-recorded messages to at least forty (40) cellular numbers assigned to Illinois based area codes. Exhibit A, Count IV, ¶¶ 97-98.[2]

14. Just like with Plaintiff, none of the pre-recorded messages sent to putative class members included Defendant's full legal name.

15. Discovery produced by Defendant documents that FAMS's vendor "successfully" delivered ten (10) pre-recorded messages to be sent to the voice mailbox of Plaintiff's cellular telephone number. As detailed below, spreadsheets produced by Defendant (by and through its pre-recorded voice-mail vendor) demonstrate that well over forty persons with Illinois area codes were recipients of the same or similar non-consensual pre-recorded messages as were received by Plaintiff.

16. Counts V and VI (brought as individual and class claims) assert that FAMS's phone calls and pre-recorded messages violated various provisions of the FDCPA. Plaintiff is seeking to certify Count VI on the basis that FAMS's pre-recorded messages did not identify its full legal name. Plaintiff contends that FAMS's use of its

---

[2] The parties are not moving to certify Count II of the Complaint which alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used autodialer to call the cellular telephone numbers of putative class members without their consent. Similarly, Plaintiff is not seeking relief relative to Count I which similarly alleges that FAMS violated Section 227(b)(1)(A)(iii) of the TCPA when it allegedly used autodialer to call Plaintiff's cellular telephone. Count III of the Complaint asserts individual claims for non-consensual pre-recorded messages.

4

truncated name violates § 1692e(14) of the FDCPA. *See, e.g., Catencamp v. Cendant Timeshare Resort Grp. Cons. Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006) ("unsophisticated readers do not see through acronyms when the creditor's full name is missing."). Defendant denies that such actions states a claim for a violation of the FDCPA let alone violates the FDCPA.

### III.    Background Leading to the Parties' Proposed Motion to Certify

17.    FAMS filed an Answer, denying that it violated the TCPA and FDCPA. Dkt. 16. FAMS has also asserted various affirmative defenses. *Id.* Thereafter, the parties have engaged in written and oral discovery and class certification motion practice to stake out their respective positions. Dkts. 18-19, 25, 29, 31, 34-35, 39, 41, 50, 50-1, 52-53, 57, 68, 69, 75, 81.  The Parties attempted (unsuccessfully) to resolve the Litigation with the assistance of Magistrate Judge Jeffrey I. Cummings. Dkts. 36-37, 43.

18.    Plaintiff filed a motion to certify on October 19, 2019. Dkt. 50, 51. The Court denied Plaintiff's motion without prejudice. Dkt. 83, 84 (*Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020)).

19.    Thereafter, Plaintiff filed a *renewed* Motion for Class Certification on September 14, 2020. Dkt. 90. The proposed class is defined to include cellular telephone numbers associated with the Northern District of Illinois: 224, 312, 331, 630, 708, 773, 779, 815 and 847. Dkt. 93, p. 25. That motion was denied without prejudice on August 17, 2020.  Dkt. 114.

20.    Defendant filed and the Court granted extensions of time for Defendant to respond to Plaintiff's renewed certification motion. Dkts. 100, 102-03, 105. On November 11, 2019, the Parties moved to stay briefing to allow the Parties to negotiate a class based settlement and the Court granted the Parties' motion. Dkt. 97, 99.

21.     During the course of settlement discussions, parties expanded the proposed pre-recorded message class to include *all* Illinois area codes. In addition to the area codes noted in the above paragraph, the Parties expanded the proposed class to include area codes 309, 217 and 618. On March 22, 2021, the Parties alerted the Court that they has reached a proposed class action settlement and the Court struck the remaining class certification deadlines. Dkts. 106, 107.

22.     The Parties have reported to the Court that in relation to their proposed TCPA Settlement Class that spreadsheets produced by Defendant and VoApps have been analyzed and the spreadsheets identify 16,352 "successfully" transmitted pre-recorded messages sent to 1,419 distinct cellular phone numbers between November 17, 2015 and December 4, 2017.

23.     The Parties have also reported that the proposed FDCPA Settlement Class consists of 364 distinct cellular phone numbers who were successfully sent pre-recorded messages between December 4, 2016 and December 4, 2017, where the pre-recorded messages did not contain Defendant's full legal name.

**IV.     Summary of Relevant Facts**

24.     The Court is familiar with the facts of this Litigation as set forth in the Court's prior Order, Dkt. 84, *Molinari v. Fin. Asset Mgmt. Sys.*, 2020 U.S. Dist. LEXIS 134045, 2020 WL 4345418 (N.D. Ill. July 29, 2020). In relevant part, the Court described this Litigation as involving the following facts:

> FAMS also used a third-party vendor, VoApps, Inc. ("VoApps"), to deliver several direct-to-voicemail messages to [Molinari's cellular telephone] number. Molinari contends that these actions, which FAMS undertook in an effort to collect on a student loan debt allegedly owed by Molinari's wife, violated the [TCPA]; [and] the [FDCPA].
>
> ***
>
> FAMS uses a third party, LexisNexis, to obtain potentially updated telephone numbers for debtors it is trying to reach.

6

The process (simplified for purposes of this opinion) is as follows. FAMS sends a batch of debtors' demographic information to LexisNexis. Based on this information, LexisNexis identifies and collects telephone numbers for these debtors by "skip tracing," which is generally a process "whereby companies search credit histories and other public databases to obtain contact information for debtors listed on loan applications." LexisNexis then sells the telephone numbers to FAMS. LexisNexis categorizes a skip-traced phone number into one of two tiers based on its "confidence" that the number is the identified debtor's phone number, with Tier 1 indicating a higher level of confidence than Tier 2. FAMS can determine whether it obtained a phone number via skip trace based on whether its records designate the number as "Tier 1" or "Tier 2."

FAMS believes that the Tier 1 and Tier 2 phone numbers it purchases from LexisNexis correspond to the debtors it wants to contact. Nonetheless, the system is not perfect: while speaking to the user of a phone number obtained from LexisNexis, an FAMS employee may discover that the user is not the debtor he or she is trying to reach. In this case, FAMS requires the employee on the call to designate or otherwise document the phone number as a "bad" number. When FAMS determines that a phone number is "bad," it redacts the first six digits of the phone number. This signals to someone who subsequently views the number that the number should not be used, and it ensures that FAMS' system does not reload the number again if the same number is later obtained from LexisNexis.

FAMS contacts the phone numbers it receives from LexisNexis [by] contract[ing] with VoApps for a service called DirectDROP Voicemail ("DDVM"), whereby VoApps delivers pre-recorded messages that terminate directly to a recipient's mobile voicemail service. VoApps' DDVM technology is intended to "drop" a pre-recorded message directly into a targeted individual's voicemail platform without "dialing the target's cell phone number or otherwise causing her handheld device to ring." Although the targeted individual "receive[s] a message-waiting notification as though she received a normal voicemail," VoApps delivers the message to the "target's cellular device without directly using the cellular network."

In March 2017, Navient placed a student loan debt for collection with FAMS. The debt belonged to Nicolette Campbell, which is the maiden name of Molinari's wife. LexisNexis performed a skip trace on "Nicolette E. Campbell" and identified a phone number ending in 8132 (the "8132 Number") as Campbell's number. FAMS obtained the 8132 Number (which LexisNexis had designated as "Tier 1") from LexisNexis, believing it to be Campbell's phone number.

On November 16, 2017, FAMS used the LiveVox HCI system to call the 8132 Number in an effort to collect payment from Campbell on her debt. The same day, VoApps sent a pre-recorded message using its DDVM technology to the 8132 Number's voicemail box.

***

Over the next two-plus months, FAMS called the 8132 Number 100 more times using the LiveVox HCI system. Meanwhile, VoApps continued to "drop" pre-recorded messages to the 8132 Number's voicemail box. On November 24 and December 4, 2017, VoApps sent the following message to the 8132 Number's voicemail box: "Hello this is FAMS, a debt collector, this is an attempt to collect a debt. Please call us at 866-330-2703. Again that number is 866-330-2703. Thank you." VoApps sent approximately seven other pre-recorded voicemail messages to the 8132 Number's voicemail box, but the record does not show the content of these messages or the dates they were sent.

The 8132 Number, however, is not Campbell's telephone number; it is the cellular telephone number of Campbell's husband, Molinari, who does not owe a debt to Navient. Molinari testified that FAMS' calls and messages caused him to experience headaches, chest pains, anxiety, and marital problems; disrupted his daily life by distracting him while working, driving, and sleeping; and invaded his privacy. On or around February 6, 2018, Molinari spoke with a FAMS employee over the phone and told the employee to stop calling him. After that conversation, FAMS designated the 8132 Number as "bad" and stopped contacting it.

Molinari brought this lawsuit on February 28, 2018. The Court originally set the fact discovery deadline for October 1, 2018, but after several extensions, fact discovery closed on May 15, 2019. During discovery, FAMS produced spreadsheets that identified the phone numbers it obtained via LexisNexis' skip-trace process (the "FAMS Spreadsheets"). FAMS contends that these spreadsheets include not only cellular telephone numbers, but landline and VoIP phone numbers as well. FAMS also produced spreadsheets that it obtained from VoApps (the "VoApps Spreadsheets"). These spreadsheets show FAMS' pre-recorded message campaigns with VoApps and, particularly, whether VoApps successfully delivered its pre-recorded messages to certain [cellular] telephone numbers.

Dkt. 84, 2020 U.S. Dist. LEXIS 134045 at *1-*7 (internal citations and citations to cases omitted).[3]

25.     Thereafter, the Court examined the elements required by FRCP 23(a) and 23(b) and denied Plaintiff's certification motion (without prejudice), by finding that Plaintiff failed to sufficiently demonstrate numerosity, commonality and adequacy. *Id.* at *11-*23. The Parties have represented that their Joint Motion addresses the elements

---

[3] Plaintiff argues that it is possible to ascertain "successfully" transmitted pre-recorded messages to cellular telephone numbers that were obtained from skip-trace efforts – demonstrating – for the purposes of settlement, that consent was lacking.

of numerosity, commonality and adequacy, in addition to identifying the remaining elements of Rule 23(a) and Rule 23(b).

26.     As a result of FAMS's use to pre-recorded messages, the Parties have informed this Court that they have reached a class action based settlement of this Litigation. The Parties state that they have engaged in arms-length negotiations and submit that the proposed settlement terms satisfy all of the required elements of FRCP 23. The Parties seek to certify two distinct, but related, class definitions involving the class-based TCPA claim in Count IV and the class-based FDCPA claims in Count VI.

**V.     Standard of Review & Analysis**

27.     Federal Rule of Civil Procedure ("FRCP") 23(e) states that the "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "Federal courts naturally favor the settlement of class action litigation". *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In order to certify a class in accordance with Rule 23(a), a court must conduct a rigorous analysis by a preponderance of the evidence that the putative class meets the criteria set forth by FRCP 23(a)(1)-(4).

28.     The Court must also find that the Parties have satisfied FRCP 23(b)(3) which states that "a class action may be maintained if ... (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b).

29.     Additionally, the Court also preliminarily finds that the terms of the proposed Agreement appears to be fair, adequate and reasonable as to all potential Class Members, when balanced against the probable outcome of further litigation, particularly in light of the fact that Defendant has agreed to pay up to $385,000 (the "Proposed Settlement Fund") to fund two settlement classes, compensate Mr. Molinari

for his role in serving as the putative Class Representative and compensate Attorney Vlahakis for his legal fees and costs in incurred as class counsel.

### A. The Proposed Settlement Fund Appears to be Reasonable

30.     The Court also recognizes that Defendant and/or Defendant's insurer shall pay for the costs of notice[4] and administering the payment of the Proposed Settlement Fund. In particular, the Proposed Settlement Fund ($233,500 for the proposed TCPA Settlement Class and $10,000 for the proposed FDCPA Settlement Class) appears to result in Defendant paying <u>more than</u> a *de minimis* recovery to each Class Member who submits a claim form seeking compensation for statutory damages pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* resulting from Defendant's alleged use of pre-recorded messages. Further, in light of Defendant's reportedly low net worth, it appears that eligible Class Members will likely more than the maximum statutory liability provided for by Section 1692k(a)(B) of the Fair Debt Collection Practices Act, which forms the basis for one of the settled claims, and limits Class Members in any FDCPA class action to no more than 1% of a debt collector's net worth or $500,000 whichever is greater.

31.     For purposes of effectuating the proposed Settlement, the Court preliminarily certifies a *TCPA Settlement Class* consisting of:

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between November 17, 2015 and December 4, 2017) where the pre-recorded messages were "successfully" delivered in an attempt to collect a consumer debt.

32.     For purposes of effectuating the proposed Settlement, the Court preliminarily certifies a *FDCPA Settlement Class* consisting of:

---

[4] Plaintiff is granted leave of Court to utilize the Administrator to issue Notice by text-message where the cost of text-based notice shall be borne by Plaintiff's counsel.

> All persons who were sent pre-recorded messages to Illinois based cellular telephone numbers according to the records maintained by Defendant and its Vendor VoApps, Inc. (between December 4, 2016 and December 4, 2017) where the pre-recorded messages were "successfully" sent in an attempt to collect a consumer debt where the pre-recorded messages utilized Defendant's truncated name, "FAMS" rather than its full legal name.

33.     Excluded from both classes are court personnel, individual employed by Class Counsel's office, employees of Defendant, employees of VoApps, Inc. (Defendant's third-party message vendor) and employees of the Administrator.

### B. The Proposed Compensation to Plaintiff Appears to be Reasonable

34.     Additionally, the Court preliminarily approves the use of the proposed Settlement Fund to compensate Plaintiff with an award of $14,500 to compensate Plaintiff for his role as the proposed Class Representative. This provisional award tentatively recognizes upon his actions in assisting in the prosecution of this Litigation, by and through participating in a settlement conference, assisting in written discovery and as a result of sitting for his deposition.

### C. Class Counsel's Requested Fees and Costs Appear to be Reasonable

35.     Finally, the Court preliminarily approves awarding up to 33 1/3 ($127,050) of the proposed Settlement Fund to compensate provisional Class Counsel for his reasonably incurred attorney's fees and costs that were incurred in this the hard-fought Litigation, subject to a formal motion for attorney's fees and costs being submitted by provisional Class Counsel on or before January 28, 2022.

### VI.     Additional Relief Granted

36.     Having considered the Parties' Joint Motion and the Parties' supporting papers, and after conducting a hearing on November 16, 2021, the Court in addition to the relief granted and outlined in Section I of this Order, issues the following relief in

the form of a Conditional/Preliminary Certification Order, and in particular states as follows:

> a.    The Administrator may proceed with the mailing of Notice as set forth in the Settlement Agreement on or before December 16, 2021.

> b.    Class Members shall be bound by all determinations and orders pertaining to the Settlement, including with respect to Released Claims as set forth in the Settlement Agreement, whether favorable or unfavorable, unless such persons request exclusion from the Class in a timely and proper manner, as hereinafter provided.

> c.    Class Members who do not timely and validly request exclusion shall be so bound even if they have previously initiated other litigation or proceedings against Defendants or the Released Parties relating to the claims released under the terms of the Settlement Agreement.

> d.    Any Person within the Settlement Classes may request exclusion from the settlement by expressly stating his/her request in a written exclusion request. Such exclusion requests must be received by the Administrator at the address specified in the Notice in written form, by first class mail, postage prepaid, and postmarked, no later than the Objection/Exclusion Deadline: January 28, 2022.

> e.    In order to exercise the right to be excluded, a person within the Settlement Classes must timely send a written request for exclusion to the Administrator providing his/her name and address, a signature, the name and number of the Litigation, and a statement that he or she wishes to be excluded from the Settlement Classes.

> f.    Any request for exclusion submitted via first class mail must be personally signed by the person requesting exclusion. No person within the Settlement Classes, or any person acting on behalf of, in concert with, or in participation with that person within the Settlement Classes, may request exclusion from the Settlement Class of any other person within the Settlement Classes.

g.      Any person in the Settlement Classes who elects to be excluded shall not: (i) be bound by any orders or the Final Approval Order; (ii) be entitled to relief under the Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of the Agreement.

h.      Any Class Members who has not requested exclusion from the Settlement Class and who wishes to object to any aspect of the Agreement, including the amount of the attorneys' fees, costs, and expenses that Class Counsel intends to seek and the payment of the Service Award to the Class Representative, may do so, either personally or through an attorney, by filing a written objection, together with the supporting documentation set forth below in Paragraphs i-k of this Order, with the Clerk of the Court, and served upon Class Counsel, Defendant's Counsel, and the Administrator by January 28, 2022].

i.      Any Class Member who has not requested exclusion and who intends to object to the Agreement must state, in writing, all objections and the basis for any such objection(s), and must also state in writing: (i) his/her full name, address, telephone number, and email address; (ii) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (iii) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last four years; and (iv) the objector's signature.

j.      Objections not filed and served in accordance with this Order shall not be received or considered by the Court.

k.      Any Class Member who fails to timely file and serve a written objection in accordance with this Order shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, to the fairness, reasonableness, or adequacy of the Settlement, to the payment of attorneys' fees, costs, and expenses, to the payment of a Service Award, and to the Final Approval Order and the right to appeal same.

l.      A Class Member who has not requested exclusion from the Settlement Class and who has properly submitted a written objection in compliance with the Agreement, may appear at the Final Approval Hearing in

13

person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the Settlement and/or Class Counsel's Fee Petition and/or the request for a Service Award to the Class Representatives are required to indicate in their written objection their intention to appear at the Final Approval Hearing on their own behalf or through counsel.

m. For any Class Member who files a timely written objection and who indicates his/her intention to appear at the Final Approval Hearing on their own behalf or through counsel, such Class Member must also include in his/her written objection the identity of any witnesses he/she may call to testify, and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which shall be attached.

n. No Class Member shall be entitled to be heard, and no objection shall be considered, unless the requirements set forth in this Order and in the Settlement Agreement are fully satisfied. Any Class Member who does not make his or her objection to the Settlement in the manner provided herein, or who does not also timely provide copies to Counsel for the Parties at the addresses set forth herein, shall be deemed to have waived any such objection by appeal, collateral attack, or otherwise, and shall be bound by the Agreement, the releases contained therein, and all aspects of the Final Approval Order.

37. All papers in support of the Final Approval of the Settlement shall be filed no later than ten (10) days before the Final Approval Hearing.

38. A hearing (the "Final Approval Hearing") shall be held before the Court on March 16, 2022 at 9:45 a.m. in Courtroom 1403 of the Dirksen U.S. Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 (or at such other time or location as the Court may without further notice direct) for the following purposes:

a. to determine whether the Settlement is fair, reasonable and adequate, and should be approved by the Court;

14

b.     to determine whether the judgment as provided under the Settlement Agreement should be entered, including an order prohibiting Settlement Class Members from further pursuing Released Claims as set forth in the Settlement Agreement;

c.     to consider the application for an award of attorneys' fees, costs and expenses of Class Counsel;

d.     to consider the application for a Service Award to the Class Representative;

e.     to consider the distribution of the Settlement Fund pursuant to the Agreement; and

f.     to rule upon such other matters as the Court may deem appropriate.

39.     The Final Approval Hearing may be postponed, adjourned, transferred or continued by order of the Court without further notice to the Settlement Class. At or following the Final Approval Hearing, the Court may enter a judgment approving the Agreement and a Final Approval Order in accordance with the Agreement that adjudicates the rights of all Settlement Class Members.

40.     Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

41.     All discovery and other proceedings in the Litigation as between Plaintiff and Defendant are stayed and suspended until further order of the Court except such actions as may be necessary to implement the Settlement Agreement and this Order.

42.     For clarity, the deadlines set forth above and in the Agreement are as follows:

- Notice to be issued by: December 16, 2021;

- Attorney's Fee and Expense Application: January 28, 2022;

- Objection/Exclusion Deadline: January 28, 2022;

- Submission of papers supporting Final Approval: March 4, 2022 (pursuant to Paragraph 39 of this Order);

- Final Approval Hearing: March 18, 2022 at 10:00 a.m.

**VII. Preliminary Nature of this Order**

43. This Order shall not be construed or deemed to be a finding by this Court or evidence of a presumption, implication, concession, or admission by Defendant concerning (a) any alleged liability, fault, or wrongdoing by Defendant; (b) the appropriateness of any measure of alleged loss or damages; or (c) the appropriateness of class certification for any purposes other than settlement. If the Settlement Agreement is terminated pursuant to its terms, or if the settlement is not approved or consummated for any reason whatsoever, the settlement and all proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the parties to this action.

**IT IS SO ORDERED**.

Dated: November _22__, 2021.

_____
The Honorable Sara L. Ellis
UNITED STATES DISTRICT JUDGE

16